**LeClairRyan**
A Professional Corporation
1037 Raymond Boulevard, Sixteenth Floor
Newark, NJ 07102
Telephone: 973.491.3600
Attorneys for Plaintiff, Ramada Worldwide Inc., f/k/a Ramada Franchise Systems, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE INC., formerly known as RAMADA FRANCHISE SYSTEMS, INC., a Delaware Corporation, | : |
| Plaintiff, | :    Civil Action No. 14- |
| v. | : |
| | :    **VERIFIED COMPLAINT** |
| YOUNG BROTHERS PROPERTIES, INC., a South Carolina corporation; HAROLD G. COKER, an individual; and EDWARD L. YOUNG, an individual, | : |
| Defendants. | : |

Plaintiff Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc., by its attorneys, LeClairRyan, complaining of defendants Young Brothers Properties, Inc., Harold G. Coker and Edward L. Young, says:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc. ("RWI"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2.    Defendant Young Brothers Properties, Inc. ("Young Brothers"), on information and belief, is a corporation organized and existing under the laws of the State of South Carolina, with its principal place of business at 3339 Meadors Road, Florence, South Carolina 29501.

RWI #15122-80144-01

3.      Defendant Harold G. Coker ("Coker"), on information and belief, is a shareholder of Young Brothers and a citizen of the State of South Carolina, residing at 3339 Meadors Road, Florence, South Carolina 29501.

4.      Defendant Edward L. Young ("Young"), on information and belief, is a shareholder of Young Brothers and a citizen of the State of South Carolina, residing at 3339 Meadors Road, Florence, South Carolina 29501.

5.      The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Young Brothers by virtue of, among other things, section 17.6.3 of the August 10, 2004 license agreement by and between Young Brothers and RWI (the "License Agreement"), described in more detail below, pursuant to which Young Brothers has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

8.      This Court has personal jurisdiction over Coker and Young by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which Coker and Young acknowledged that they were personally bound by section 17 of the License Agreement.

9.     Venue is proper in this District pursuant to section 17.6.3 of the License Agreement, inasmuch as that provision contains an express waiver by Young Brothers of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Ramada® Marks

10.     RWI is one of the largest guest lodging facility License systems in the United States, and is widely known as a provider of guest lodging facility services.

11.     RWI owns and has the exclusive right to license the use of the service mark RAMADA and various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Ramada® Marks"), as well as the distinctive Ramada® System, which provides guest lodging services to the public under the Ramada® name and certain services to its Licensees, including a centralized reservation system, advertising, publicity, and training services.

12.     RWI or its predecessors first used the RAMADA INN mark in 1958 and the Ramada® Marks are in full force and effect.  Certain of the registered Ramada® Marks are incontestable pursuant to 15 U.S.C. § 1065.

13.     RWI has given notice to the public of the registration of the Ramada® Marks as provided in 15 U.S.C. § 1111.

14.     RWI uses or has used the words "Ramada," "Ramada Plaza Hotel," "Ramada Inn," and "Ramada Limited," among others, as abbreviations of its brand name.

15.     Through its License system, RWI markets, promotes, and provides services to its guest lodging Licensees throughout the United States.  In order to identify the origin of their guest lodging services, RWI allows its Licensees to utilize the Ramada® Marks and to promote the Ramada® brand name.

16.     RWI has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Ramada® Marks as distinctly designating RWI guest lodging services as originating with RWI.

17.     The value of the goodwill developed in the Ramada Marks® does not admit of precise monetary calculation, but because RWI is one of the largest guest lodging facility License systems in the United States and is widely known as a provider of guest lodging facility services, the value of RWI's goodwill exceeds hundreds of millions of dollars.

18.     The Ramada® Marks are indisputably among the most famous in the United States.

<u>The Agreements Between The Parties</u>

19.     On or about August 10, 2004, RWI entered into the License Agreement with Young Brothers for the operation of a 120-room guest lodging facility located at 3339 Meadors Road, Florence, South Carolina 29501, Site No. 15122-80144-01 (the "Facility").  A true copy of the License Agreement is attached hereto as <u>Exhibit A</u>.

20.     Pursuant to section 5 of the License Agreement, Young Brothers was obligated to operate a Ramada® guest lodging facility for a fifteen-year term, during which time Young

- 4 -

Brothers was permitted to use the Ramada® Marks in association with the operation and use of the Facility as part of RWI's License system.

21.     Pursuant to section 7, section 18.4 and Schedule C of the License Agreement, Young Brothers was required to make certain periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

22.     Pursuant to section 7.3 of the License Agreement, Young Brothers agreed that interest is payable "on any past due amount payable to [RWI] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

23.     Pursuant to section 3.8 of the License Agreement, Young Brothers was required to prepare and submit monthly reports to RWI disclosing, among other things, the amount of gross room revenue earned by Young Brothers at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RWI.

24.     Pursuant to section 3.8 of the License Agreement, Young Brothers agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the License Agreement, Young Brothers agreed to allow RWI to examine, audit, and make copies of the entries in these books, records, and accounts.

25.     Pursuant to section 11.2 of the License Agreement, RWI could terminate the License Agreement, with notice to Young Brothers, for various reasons, including Young

Brothers' (a) failure to pay any amount due RWI under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the License Agreement, and/or (c) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

26.     Pursuant to sections 12.1 and 18.1 of the License Agreement, Young Brothers agreed that, in the event of a termination of the License Agreement pursuant to section 11.2, it would pay liquidated damages to RWI in accordance with a formula specified in the License Agreement.

27.     Section 13 of the License Agreement specified Young Brothers' obligations in the event of a termination of the License Agreement, including its obligation to immediately cease using all of the Ramada® Marks.

28.     Pursuant to section 17.4 of the License Agreement, Young Brothers agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

29.     Effective as of the date of the License Agreement, Coker and Young provided RWI with a Guaranty of Young Brothers' obligations under the License Agreement. A true copy of the Guaranty is attached hereto as Exhibit B.

30.     Pursuant to the terms of the Guaranty, Coker and Young agreed, among other things, that upon a default under the License Agreement, they would "immediately make each

payment and perform or cause [Young Brothers] to perform, each unpaid or unperformed obligation under the [License] Agreement."

31.    Pursuant to the terms of the Guaranty, Coker and Young agreed to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the Guaranty or the License Agreement.

<u>The Defendants' Defaults and Termination</u>

32.    Beginning in 2013, Young Brothers repeatedly failed to meet its financial obligations under the License Agreement.

33.    By letter dated January 15, 2013, a true copy of which is attached hereto as <u>Exhibit C</u>, RWI advised Young Brothers that (a) it was in breach of the License Agreement because it owed RWI approximately $72,301.62 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default in accordance with Section 11.1 of the License Agreement, and (c) if the default was not cured, then the License Agreement might be subject to termination.

34.    By letter dated February 15, 2013, a true copy of which is attached hereto as <u>Exhibit D</u>, RWI advised Young Brothers that (a) it was in breach of the License Agreement because it owed RWI approximately $76,353.43 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default in accordance with Section 11.1 of the License Agreement, and (c) if the default was not cured, then the License Agreement might be subject to termination.

- 7 -

35.    By letter dated June 17, 2013, a true copy of which is attached hereto as <u>Exhibit E</u>, RWI advised Young Brothers that (a) it was in breach of the License Agreement because it owed RWI approximately $106,011.94 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default in accordance with Section 11.1 of the License Agreement, and (c) if the default was not cured, then the License Agreement might be subject to termination.

36.    By letter dated September 16, 2013, a true copy of which is attached as <u>Exhibit F</u>, RWI terminated the License Agreement, effective September 16, 2013, due to Young Brothers' continued failure to meet its financial obligations under the License Agreement, and advised Young Brothers that upon the date of termination (a) it was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as part of the Ramada® System, and to discontinue the use of other materials on the premises effectively to distinguish the same from its former appearance as a Ramada®, (b) all items bearing the Ramada® Marks had to be removed, (c) all signs and any listings in directories and similar guides in which the Facility was identified as a Ramada® had to be changed, (d) it was required to pay to RWI as liquidated damages for premature termination the sum of $120,000.00 as required under the License Agreement, (e) it had to de-identify the Facility within 10 days from the date of termination, and (f) it must pay all outstanding Recurring Fees through the date of termination.

37.    The termination of the License Agreement precludes Young Brothers from any further use of the Ramada® Marks in or around the Facility.

38.    The termination of the License Agreement precludes Young Brothers from any further use of the Ramada® Marks to induce the traveling public to use the Facility in any way.

39.     Since the termination of the License Agreement, Young Brothers has continued to use the Ramada® Marks to induce the traveling public to rent guest rooms at the Facility.

40.     Young Brothers has continued to misuse the Ramada® Marks despite receiving notification from RWI to cease and desist from the misuse of the Ramada® Marks.

41.     By letter dated April 24, 2014, a true copy of which is attached hereto as <u>Exhibit G</u>, RWI demanded that Young Brothers cease and desist the misuse and infringement of the Ramada® Marks and offered Young Brothers a final opportunity to resolve this matter prior to the institution of legal proceedings.

## FIRST COUNT

42.     RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 41 of the Verified Complaint.

43.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

44.     Young Brothers marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Ramada® Marks,

and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

45.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods and/or services . . . shall be liable in a civil action . . . ."

46.     The acts of Young Brothers in marketing, promoting, and renting rooms at the Facility, through and with the Ramada® Marks, constitute:

    (a)     a false designation of origin;

    (b)     a false and misleading description of fact; and

    (c)     a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Young Brothers' Facility with RWI, and to cause confusion, or to cause mistake, or deception, to the effect that RWI sponsors or approves of the guest lodging services that Young Brothers provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

47.     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial

use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

48.     Young Brothers' use of the Ramada® Marks in connection with goods and services at the Facility, after the Ramada® Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the Ramada® Marks, and lessened and will continue to lessen the capacity of the Ramada® Marks to identify and distinguish the goods and services of RWI, all in violation of Section 43(c) of the Lanham Act.

49.     Young Brothers' on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

50.     Young Brothers' on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on RWI.

51.     RWI has no adequate remedy at law.

52.     No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), RWI demands judgment against Young Brothers:

(a)     Preliminarily and permanently restraining and enjoining Young Brothers, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act

in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Facility through and with the Ramada® Marks; and

(b)     Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

53.     RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 52 of the Verified Complaint.

54.     Pursuant to sections 3.8 and 4.8 of the License Agreement, Young Brothers agreed to allow RWI to examine, audit, and make copies of Young Brothers' financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

55.     Young Brothers has engaged in acts and practices, as described, which amount to infringement of the Ramada® Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

56.     As a result, Young Brothers owes restitution and the disgorgement of profits, in an amount unknown to RWI, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Young Brothers.

**WHEREFORE**, RWI demands judgment ordering that Young Brothers account to RWI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Ramada® Marks.

## THIRD COUNT

57.     RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 56 of the Verified Complaint.

58.     By letter dated September 16, 2013, RWI terminated the License Agreement, effective September 16, 2013, due to Young Brothers' failure to meet its financial obligations under the License Agreement.

59.     Sections 12.1 and 18.1 of the License Agreement provide that, in the event of termination of the License Agreement due to action of the Licensee, Young Brothers shall pay liquidated damages to RWI within 30 days of termination.

60.     As a result of the termination of the License Agreement, Young Brothers is obligated to pay RWI liquidated damages in the amount of $120,000.00, as calculated pursuant to sections 12.1 and 18.1 of the License Agreement.

61.     Notwithstanding RWI's demand for payment, Young Brothers has failed to pay RWI the liquidated damages as required in sections 12.1 and 18.1 of the License Agreement.

62.     RWI has been damaged by Young Brothers' failure to pay liquidated damages.

**WHEREFORE**, RWI demands judgment against Young Brothers for liquidated damages in the amount of $120,000.00, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

63.     RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 62 of the Verified Complaint.

64.     By virtue of the premature termination of the License Agreement, RWI sustained a loss of future revenue over the remainder of the fifteen-year term of the License Agreement.

65.     If the Court determines that Young Brothers is not liable to pay RWI liquidated damages as required by sections 12.1 and 18.1 of the License Agreement then, in the alternative, Young Brothers is liable to RWI for actual damages for the premature termination of the License Agreement.

66.     RWI has been damaged by Young Brothers' breach of its obligation to operate a Ramada® guest lodging facility for the remaining term of the License Agreement.

**WHEREFORE**, RWI demands judgment against Young Brothers for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT

67.     RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 66 of the Verified Complaint.

68.     Pursuant to section 7, section 18.4 and Schedule C of the License Agreement, Young Brothers was obligated to remit Recurring Fees to RWI.

69.     Despite its obligation to do so, Young Brothers failed to remit certain of the Recurring Fees due and owing under the License Agreement, in the current amount of $135,946.25.

70.     Young Brothers' failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged RWI.

**WHEREFORE**, RWI demands judgment against Young Brothers for the Recurring Fees due and owing under the License Agreement, in the current amount of $135,946.25, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

71.     RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 70 of the Verified Complaint.

72.     At the time of the termination of the License Agreement, Young Brothers was obligated to pay RWI Recurring Fees.

73.     Despite its obligation to do so, Young Brothers failed to pay certain of the Recurring Fees due and owing under the License Agreement, in the current amount of $135,946.25.

74.     In addition, Young Brothers benefited from its wrongful use of the Ramada® Marks after termination of the License Agreement and paid no royalty or other Recurring Fees to RWI in return for that benefit.

75.     Young Brothers' failure to compensate RWI constitutes unjust enrichment and has damaged RWI.

WHEREFORE, RWI demands judgment against Young Brothers for the Recurring Fees due and owing under the License Agreement, in the current amount of $135,946.25, together with interest, attorneys' fees, and costs of suit, and all royalties and other Recurring Fees that should be paid to compensate RWI for the period during which Young Brothers misused the Ramada® Marks and was thereby unjustly enriched, together with interest and costs of suit.

## SEVENTH COUNT

76.     RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 75 of the Verified Complaint.

77.     Pursuant to the terms of the Guaranty, Coker and Young agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of Young Brothers under the License Agreement.

78.     Despite his obligation to do so, Coker and Young have failed to make any payments or perform or cause Young Brothers to perform each obligation required under the License Agreement.

79.     Pursuant to the Guaranty, Coker and Young are liable to RWI for Young Brothers' liquidated damages in the amount of $120,000.00, or actual damages in an amount to be determined at trial, and Young Brothers' Recurring Fees due and owing under the License Agreement, in the current amount of $135,946.25, and for those additional Recurring Fees attributable to the period during which Young Brothers has misused the Ramada® Marks.

- 16 -

**WHEREFORE**, RWI demands judgment against Coker and Young for damages in the amount of:

(a)     All liquidated damages or actual damages and Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, and costs of suit; and

(b)     All profits, royalties, and other Recurring Fees that should be paid to compensate RWI for the period during which Young Brothers misused the Ramada® Marks and was thereby unjustly enriched, together with interest, attorneys' fees, and costs of suit.

## EIGHTH COUNT

80.     RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 79 of the Verified Complaint.

81.     By letter dated September 16, 2013, RWI terminated the License Agreement, effective September 16, 2013, due to Young Brothers' failure to timely meet its financial obligations in accordance with the License Agreement.

82.     Section 13.2 of the License Agreement provides that, when the License Agreement is terminated, RWI has the right to "without prior notice enter the Facility, and any other parcels, . . . and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that [Young Brothers] [has] not removed or obliterated within five days after termination."

83.     Young Brothers continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Ramada® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers.

84.     Young Brothers' unauthorized use of the Ramada® Marks has inflicted and continues to inflict irreparable harm on RWI.

**WHEREFORE**, RWI demands judgment declaring that RWI, or its authorized agent, has the right, without prior notice to Young Brothers, to enter the property at the Facility and remove any and all exterior signage, exterior items and other exterior materials displaying the Ramada® Marks.

**LECLAIRRYAN**
Attorneys for Plaintiff,
Ramada Worldwide Inc., f/k/a Ramada Franchise
Systems Inc.

By: _____
              **BRYAN P. COUCH**

Dated: 5|12|14

<u>**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**</u>

I certify that, to the best of my knowledge, this matter is not the subject of any other action

pending in any court or of any pending arbitration or administrative proceeding.

**LECLAIRRYAN**
Attorneys for Plaintiff,
Ramada Worldwide Inc., f/k/a Ramada Franchise
Systems Inc.

By: _____
**BRYAN P. COUCH**

Dated: 5|12|14

## VERIFICATION

STATE OF NEW JERSEY       )
                                 ) ss:

COUNTY OF MORRIS        )

Suzanne Fenimore, of full age, being duly sworn according to law, upon her oath, deposes and says:

I am the Senior Director of Contracts Compliance for Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc., which is plaintiff in this action.

I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, the records of RWI, and/or information available through employees of RWI.

_____
SUZANNE FENIMORE

Sworn and subscribed to before
me this 5 day of MAY , 2014

_____
NOTARY PUBLIC

CLAUDIA N. BUDRIS
Notary Public - State of New Jersey
Commission # 2314696
My Comm. Expires May 15, 2014

- 20 -

# EXHIBIT A

(Page 1 of 46)

Location: **FLORENCE, SC**
Entity No.
Unit No.: *15122*

# RAMADA FRANCHISE SYSTEMS, INC.
## LICENSE AGREEMENT

THIS LICENSE AGREEMENT ("Agreement"), dated *Aug. 10*, 200 *4*, is between RAMADA FRANCHISE SYSTEMS, INC., a Delaware corporation ("we", "our" or "us"), and **YOUNG BROTHERS PROPERTIES INC.**, a *SC* **corporation** ("you"). The definitions of capitalized terms are found in Appendix A. In consideration of the following mutual promises, the parties agree as follows:

**1. License.** We acquired from Franchise Systems Holdings, Inc. ("FSH") pursuant to the Master License Agreements the right to use and to sublicense certain trade names, trademarks and service marks including the Marks and the distinctive Ramada System for providing transient guest lodging services to the public under the "RAMADA" name and certain services to its licensees, including the Reservation System, advertising, marketing and training services. We have the exclusive right to license and franchise to you the distinctive "Ramada" System for providing transient guest lodging services. We grant to you and you accept the License, effective and commencing on the Opening Date and ending on the earliest to occur of the Term's expiration or a Termination. You will call the Facility a **"Ramada Inn ."** You may adopt additional or secondary designations for the Facility with our prior written consent, which we may withhold, condition, or withdraw on written notice in our sole discretion. You shall not affiliate or identify the Facility with another franchise system, reservation system, brand, cooperative or registered mark during the Term.

**2. Ramada Inns National Association.**

**2.1 Membership.** You automatically become a member of the Ramada Inns National Association ("RINA"), an unincorporated association. Other Chain licensees are also members of RINA. RINA may consider and discuss common issues relating to advertising and operation of facilities in the System and, through its Executive Committee, make recommendations to us regarding such issues and other matters.

**2.2 RINA Conference.** You or your representative will attend each RINA Conference when it is held. You will pay not less than one "Conference Registration Fee" for each Facility you own. Additional Facility representatives may attend subject to conference policies and after payment of an additional Conference Registration Fee for each such additional attendee. You will pay the costs of transportation, lodging and meals (except those we provide as part of the Conference) for your attendees.

**3. Your Improvement and Operating Obligations.** Your obligations to improve, operate and maintain the Facility are:

**3.1 Improvements.** You must select and acquire the Location and acquire, equip and supply the Facility in accordance with System Standards. You must provide us with proof that you own or lease the Facility before or within 30 days after the Effective Date. You must begin renovation

1

RAMEXCI
:50506 1/04

(Page 2 of 46)

of the Facility no later than thirty (30) days after the Effective Date. The deadline for completing the pre-opening phase of conversion and renovation, when the Facility must either (a) score at least 435 points under our quality assurance inspection system (or equivalent score under a successor quality assurance scoring system we employ), or (b) have demonstrated sufficient progress and commitment toward completion of the Punch List, in our sole discretion, so that a passing opening score is likely to be achieved within a reasonable period of time, and be ready to open for business under the System, is ninety (90) days after the Effective Date. All renovations will comply with System Standards, any Approved Plans, Schedule B and any Punch List attached to this Agreement. Your general contractor or you must carry the insurance required under this Agreement during renovation. You must complete the pre-opening renovation specified on the Punch List and the Facility must pass its pre-opening inspection quality assurance inspection with a score of at least 435 points (or equivalent score under a successor quality assurance scoring system we employ), or qualify to open under the standard set forth above before we consider the Facility to be ready to open under the System. You must continue renovation and improvement of the Facility after the Opening Date as the Punch List requires so that the Facility scores at least 455 points (or equivalent score under a successor quality assurance scoring system we employ), on a quality assurance inspection within nine (9) months after the Opening Date. We may, in our sole discretion, terminate this Agreement by giving written notice to you (subject to applicable law) if (1) you do not commence or complete the pre-opening or post-opening improvements of the Facility by the dates specified in this Section, or (2) you prematurely identify the Facility as a Chain Facility or begin operation under the System name described in Schedule B in violation of Section 3.3 and you fail to either complete the pre-opening Improvement Obligation or cease operating and/or identifying the Facility under the Marks and System within five days after we send you written notice of default. Time is of the essence for the Improvement Obligation. We may, however, in our sole discretion, grant one or more extensions of time to perform any phase of the Improvement Obligation. You will pay us a non-refundable extension fee of $2.00 per room for each day of any extension of the deadline for completing pre-opening improvements. This fee will be payable to us after each 30 days of the extension. You will pay us the balance of the extension fee outstanding when the Facility opens under the System 10 days after the Opening Date. The grant of an extension will not waive any other default existing at the time the extension is granted.

3.2  **Improvement Plans.** You will create plans and specifications for the work described in Section 3.1 (based upon the System Standards and this Agreement) if we so request and submit them for our approval before starting improvement of the Location. We will not unreasonably withhold or delay our approval, which is intended only to test compliance with System Standards, and not to detect errors or omissions in the work of your architects, engineers, contractors or the like. Our review does not cover technical, architectural or engineering factors, or compliance with federal, state or local laws, regulations or code requirements. We will not be liable to your lenders, contractors, employees, guests, others or you on account of our review or approval of your plans, drawings or specifications, or our inspection of the Facility before, during or after renovation or construction. Any material variation from the Approved Plans requires our prior written approval. You will promptly provide us with copies of permits, job progress reports, and other information as we may reasonably request. We may inspect the work while in progress without prior notice.

3.3  **Pre-Opening.** You may identify the Facility as a Chain Facility prior to the Opening Date, or commence operation of the Facility under a Mark and using the System, only after first obtaining our approval or as permitted under and strictly in accordance with the System

2

Standards Manual. If you identify the Facility as a Chain Facility or operate the Facility under a Mark before the Opening Date without our express written consent, then in addition to our remedies under Sections 3.1 and 11.2, you will begin paying the Royalty to us, as specified in Section 7.1, from the date you identify or operate the Facility using the Mark. We may delay the Opening Date until you pay the Royalty accruing under this Section.

3.4 **Operation.** You will operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility (including those specified on Schedule B) to the public in compliance with the law and System Standards. You will keep the Facility in a clean, neat, and sanitary condition. You will clean, repair, replace, renovate, refurbish, paint, and redecorate the Facility and its FF&E as and when needed to comply with System Standards. The Facility will be managed by either a management company or an individual manager with significant training and experience in general management of similar lodging facilities. The Facility will accept payment from guests by all credit and debit cards we designate in the System Standards Manual. You may add to or discontinue the amenities, services and facilities described in Schedule B, or lease or subcontract any service or portion of the Facility, only with our prior written consent which we will not unreasonably withhold or delay. Your front desk operation, telephone system, parking lot, swimming pool and other guest service facilities may not be shared with or used by guests of another lodging or housing facility.

3.5 **Training.** You (or a person with executive authority if you are an entity) and the Facility's general manager (or other representative who exercises day to day operational authority) will attend the training programs described in Section 4.1 we designate as mandatory for licensees or general managers, respectively. You will train or cause the training of all Facility personnel as and when required by System Standards and this Agreement. You will pay for all travel, lodging, meals and compensation expenses of the people you send for training programs, the cost of training materials and other reasonable charges we may impose for training under Section 4.1, and all travel, lodging, meal and facility and equipment rental expenses of our representatives if training is provided at the Facility.

3.6 **Marketing.** You will participate in System marketing programs, including the Directory and the Reservation System. You will obtain and maintain the computer and communications service and equipment we specify to participate in the Reservation System. You will comply with our rules and standards for participation, and will honor reservations and commitments to guests and travel industry participants. You authorize us to offer and sell reservations for rooms and services at the Facility according to the rules of participation and System Standards. You may implement, at your option and expense, your own local advertising. Your advertising materials must use the Marks correctly, and must comply with System Standards or be approved in writing by us prior to publication. You will stop using any non-conforming, out-dated or misleading advertising materials if we so request.

3.6.1 You will participate in any regional marketing, training or management alliance or cooperative of Chain licensees formed to serve the Chain Facilities in your area. We may assist the cooperative collect contributions. You may be excluded from cooperative programs and benefits if you don't participate in all cooperative programs according to their terms, including making payments and contributions when due.

3.6.2  The Facility must participate in our Chain-wide Internet marketing activities like other marketing programs, including arrangements we make with third party distribution channels. You will discontinue any Internet marketing that conflicts, in our reasonable discretion, with Chain-wide Internet marketing activities.  You must honor the terms of any participation agreement you sign for Internet marketing.  You shall pay when due any fees, commissions, charges and reimbursements relating to Internet marketing activities (i) in which you agree to participate, or (ii) that we designate as mandatory on a Chain-wide basis, provided that the activities carry aggregate fees per transaction of not more than the sum of the full agent commission specified on Schedule C for sales agents, plus 10% of the Chain's reported average daily rate for the preceding calendar year.  We may suspend the Facility's participation in Internet marketing activity if you default under this Agreement.

3.7  **Governmental Matters.**  You will obtain as and when needed all governmental permits, licenses and consents required by law to construct, acquire, renovate, operate and maintain the Facility and to offer all services you advertise or promote.  You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings.  You will comply with all applicable federal, state and local laws, regulations and orders applicable to you and/or the Facility, including those combating terrorism such as the USA Patriot Act and Executive Order 13224.

3.8  **Financial Books & Records; Audits.**

3.8.1  The Facility's transactions must be timely and accurately recorded in accounting books and records prepared on an accrual basis compliant with generally accepted accounting principles of the United States ("GAAP") and consistent with the most recent edition of the Uniform System of Accounts for the Lodging Industry published by the American Hotel & Motel Association, as modified by this Agreement and System Standards.  You acknowledge that your accurate accounting for and reporting of Gross Room Revenues is a material obligation you accept under this Agreement.

3.8.2  We may notify you of a date on which we propose to audit the Facility's books and records.  You will be deemed to confirm our proposed date unless you follow the instructions with the audit notice for changing the date.  You need to inform us where the books and records will be produced. You need to produce for our auditors at the confirmed time and place for the audit the books, records, tax returns and financial statements relating to the Facility for the applicable accounting periods we require under this Agreement and System Standards.  If our auditors must return to your location after the first date we confirm for the audit because you violate this Section 3.8.2 or refuse to cooperate with the reasonable requests of our auditors, you must pay us the Audit Fee under Section 4.8 when invoiced.  We may also perform an audit of the Facility's books and records without advance notice.  Your staff must cooperate with and assist our auditors to perform any audit we conduct.

3.8.3  We will notify you in writing if you default under this Agreement because (i) you do not cure a violation of Section 3.8.2 within 30 days after the date of the initial audit, (ii) you cancel 2 or more previously scheduled audits, (iii) you refuse to admit our auditors for an audit during normal business hours at the place where you maintain the Facility's books and records, or refuse to produce the books and records required under this Agreement and System Standards for the

applicable accounting periods, (iv) our audit determines that the books and records you produced are incomplete or show evidence of tampering or violation of generally accepted internal control procedures, or (v) our audit determines that that you have reported to us less than 97% of the Facility's Gross Room Revenues for any fiscal year preceding the audit. Our notice of default may include, in our sole discretion and as part of your performance needed to cure the default under this Section 3.8, an "Accounting Procedure Notice." You must also pay any deficiency in Recurring Fees or other charges we identify and invoice as a result of the audit. The Accounting Procedure Notice requires that you obtain and deliver to us, within 90 days after the end of each of your next three fiscal years ending after the Accounting Procedure Notice, an audit opinion signed by an independent certified public accountant who is a member of the American Institute of Certified Public Accountants addressed to us that the Facility's Gross Room Revenues you reported to us during the fiscal year fairly present the Gross Room Revenues of the Facility computed in accordance with this Agreement for the fiscal year.

3.9 **Inspections.** You acknowledge that the Facility's participation in our quality assurance inspection program (including unannounced inspections) is a material obligation you accept under this Agreement. You will permit our representatives to perform quality assurance inspections of the Facility at any time with or without advance notice. The inspections will commence during normal business hours although we may observe Facility operation at any time. You and the Facility staff will cooperate with the inspector performing the inspection. If the Facility fails an inspection, you refuse to cooperate with our inspector, or you refuse to comply with our published inspection System Standards, then you will pay us when invoiced for any reinspection fee specified in System Standards Manuals (which will not exceed $750) plus the reasonable travel, lodging and meal costs our inspector incurs for a reinspection. We may also conduct paper and electronic customer satisfaction surveys of your guests and include the results in your final quality assurance score. We may publish and disclose the results of quality assurance inspections and guest surveys.

3.10 **Insurance.** You will obtain and maintain during the Term of this Agreement the insurance coverage required under the System Standards Manual from insurers meeting the standards established in the Manual. Unless we instruct you otherwise, your liability insurance policies will name Ramada Franchise Systems, Inc., Cendant Hotel Group, Inc. and Cendant Corporation, their successors and assigns as additional insureds.

3.11 **Conferences.** You or your representative will attend each annual RINA conference and pay the Conference Registration Fee described in Section 2.2. Mandatory recurrent training for licensees and general managers described in Section 4.1.3 may be held at a RINA conference. The Fee will be the same for all Chain Facilities that we license in the United States. You will receive reasonable notice of a Chain conference.

3.12 **Purchasing.** You will purchase or obtain certain items we designate as proprietary or that bear Marks, such as signage, only from suppliers we approve. You may purchase any other items for the Facility from any competent source you select, so long as the items meet or exceed System Standards.

3.13 **Good Will.** You will use reasonable efforts to protect, maintain and promote the name "Ramada" and its distinguishing characteristics, and the other Marks. You will not permit or allow your officers, directors, principals, employees, representatives, or guests of the Facility to engage in conduct which is unlawful or damaging to the good will or public image of the Chain

(Page 6 of 46)

or System. You will participate in Chain-wide guest service and satisfaction guaranty programs we require in good faith for all Chain Facilities. You will follow System Standards for identification of the Facility and for you to avoid confusion on the part of guests, creditors, lenders, investors and the public as to your ownership and operation of the Facility, and the identity of your owners.

3.14 **Facility Modifications.** You may materially modify, diminish or expand the Facility (or change its interior design, layout, FF&E, or facilities) only after you receive our prior written consent, which we will not unreasonably withhold or delay. You will pay our Rooms Addition Fee then in effect for each guest room you add to the Facility. If we so request, you will obtain our prior written approval of the plans and specifications for any material modification, which we will not unreasonably withhold or delay. You will not open to the public any material modification until we inspect it for compliance with the Approved Plans and System Standards.

3.15 **Courtesy Lodging.** You will provide lodging at the "Employee Rate" established in the System Standards Manual from time to time (but only to the extent that adequate room vacancies exist) to our representatives traveling on business, but not more than three standard guest rooms at the same time.

3.16 **Minor Renovations.** Beginning three years after the Opening Date, we may issue a "Minor Renovation Notice" to you that will specify reasonable Facility upgrading and renovation requirements (a "Minor Renovation") to be commenced no sooner than 60 days after the notice is issued, having an aggregate cost for labor, FF&E and materials estimated by us to be not more than the Minor Renovation Ceiling Amount. You will perform the Minor Renovations as and when the Minor Renovation Notice requires. We will not issue a Minor Renovation Notice within three years after the date of a prior Minor Renovation Notice, or if the three most recent quality assurance inspection scores of the Facility averaged at least 455 points and the most recent quality assurance inspection score for the Facility was at least 435 points (or equivalent scores under a successor quality assurance scoring system we employ), when the Facility is otherwise eligible for a Minor Renovation.

**4. Our Operating and Service Obligations.** We will provide you with the following services and assistance:

4.1 **Training.** We will offer (directly or indirectly by subcontracting with an affiliate or a third party) general manager and owner orientation training, on-site opening training, remedial training and supplemental training.

4.1.1 **General Manager Orientation Training.** We will offer at a location in the United States we designate a general manager orientation training program. The program will not exceed two weeks in duration and will cover such topics as System Standards, services available from us, and operating a Chain Facility. Your initial general manager (or other representative who exercises day to day operational authority) for the Facility must complete this program to our satisfaction no later than 90 days after he/she assumes the position or 90 days after the Opening Date, whichever occurs first. If we do not offer a place in general manager orientation within that time frame, your general manager must attend the next program held at which we offer a place. Any replacement general manager must complete general manager orientation within 90 days after he/she assumes the position or the next program available, whichever comes later. Your general manager for the Facility must complete general manager orientation even if you employ managers at other Chain

Facilities who have already received this training. We charge you tuition of $995 for your first general manager if you open the Facility with our approval and your general manager completes general manager orientation within the time period established under this Agreement. You must pay the tuition then in effect as disclosed in our latest Uniform Franchise Offering Circular ("UFOC"), but not more than $3,000, if you do not meet these deadlines. For any supplemental or replacement general manager, you must pay the tuition in effect for the program when your manager attends the program. You must also pay for your manager's travel, lodging, meals, incidental expenses, compensation and benefits.

**4.1.2 Owner Orientation Training.**  We will offer an owner orientation training program to familiarize you with the System, the Chain, and our services.  If this is your first System license, you (or a person with executive authority if you are an entity) must attend owner orientation preferably before, but not later than 90 days after the Opening Date. If we do not offer owner orientation training within this time period, you must attend the next program offered. Financial institutions and real estate mortgage investment conduits are exempt from the obligation to attend owner orientation, but may choose to do so at their option. Owner orientation will be no longer than five days. We charge you tuition of $825 if you open the Facility with our approval and attend owner orientation within the time periods established under this Agreement. If you do not open the Facility and attend orientation by such deadlines, you must pay the tuition then in effect for this program as disclosed in our latest UFOC, but not more than $3,000. You must also pay your travel, lodging, meal and incidental expenses.

**4.1.3 On-Site Opening Training.** We will provide at the Facility or another agreed location, and your staff must attend, on-site opening training (at our discretion as to length and scheduling) to assist you in opening the Facility. There is currently no charge for the initial training program. You will pay the cost of any site used if the Facility is not available and the rent for any equipment we need. You must provide lodging for our trainers at your expense. You must also pay, at our request, the reasonable travel, meal and out-of-pocket expenses incurred by our trainers for on-site opening training.

**4.1.4 Remedial Training.** We may require you, your general manager and/or your staff to participate in on-site remedial training if the Facility fails multiple quality assurance inspections and/or experiences significant complaints to our guest services department, as a condition to avoiding termination or to resumption of reservation service. You must pay the tuition in effect for this program when it is offered to you, and you must provide lodging for our trainers. As of March 31, 2003, tuition for remedial on-site training is $450 per day, which must be paid before the training commences. We may increase the tuition charge in the future. The length of the remedial training could be up to five days, depending on the severity of the quality assurance and/or customer service issues.

**4.1.5 Supplemental Training.** We may offer other mandatory or optional training programs for reasonable tuition or without charge. This training could be held in our U.S. training center or other locations.  You will pay for your representative's travel, lodging, meals, incidental expenses, compensation and benefits and any tuition charge we establish for this training.  This training may be held in conjunction with a Chain Lodging conference. We may offer, rent or sell to you video tapes, computer discs or other on-site training aids and materials, or require you to buy them at reasonable prices. We may also offer Internet-based training via the Chain's intranet website.

7

(Page 8 of 46)

**4.1.6 Cancellation Fees.** We will charge you a cancellation fee of 50% of the tuition for a program if you cancel your participation less than 15 days before it is scheduled to be held. If you fail to attend a training program as scheduled without notifying us in advance, your cancellation fee will be 100% of the tuition for the program. These fees are non-refundable and you will also be charged the full tuition in effect for the program when you reschedule your training.

**4.2 Reservation System.** We will operate and maintain (directly or by subcontracting with an affiliate or one or more third parties), with funds allocated from the collections of the RINA Services Assessment Fees, a computerized Reservation System or such technological substitute(s) as we determine, in our discretion. We will use the allocated RINA Services Assessment Fees for the acquisition, development, support, equipping, maintenance, improvement and operation of the Reservation System. We will provide software maintenance for the software we license to you to connect to the Reservation System if your Recurring Fee payments are up to date. The Facility will participate in the Reservation System, commencing with the Opening Date for the balance of the Term. We have the right to provide reservation services to lodging facilities other than Chain Facilities or to other parties. We will not offer callers to our general consumer toll free reservation telephone number in the United States the opportunity to make reservations for other lodging chains.

**4.3 Marketing.**

4.3.1 We will promote public awareness and usage of Chain Facilities with funds allocated from collections of the RINA Services Assessment Fees by implementing advertising, promotion, publicity, market research and other marketing programs, training programs and related activities, and the production and distribution of Chain publications and directories of hotels. We will determine in our discretion: (i) The nature and type of media placement; (ii) The allocation (if any) among international, national, regional and local markets; and (iii) The nature and type of advertising copy, other materials and programs. We or an affiliate may be reimbursed from RINA Services Assessment Fees for the reasonable direct and indirect costs, overhead or other expenses of providing marketing services. We are not obligated to supplement or advance funds available from collections of the RINA Services Assessment Fees to pay for marketing activities. We do not promise that the Facility or you will benefit directly or proportionately from marketing activities.

4.3.2 We may, at our discretion, implement special international, national, regional or local promotional programs (which may or may not include the Facility) and may make available to you (to use at your option) media advertising copy and other marketing materials for prices which reasonably cover the materials' direct and indirect costs.

4.3.3 We will publish the Chain Directory. We will include the Facility in the Chain Directory after it opens if you submit the information we request on time, and you are not in default under this Agreement at the time we must arrange for publication. We will supply Directories to you for display at locations specified in the System Standards Manual or policy statements. We may assess you a reasonable charge for the direct and indirect expenses (including overhead) of producing and delivering the Directories.

**4.4 Purchasing.** We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for

8

AUG-05-04 10:02   FROM:FRANCHISE ADMIO      973-496-5360       TO:18436627682        PAGE:002/004

consistent service or obtain volume discounts.  We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

4.5  **The System.**  We will control and establish requirements for all aspects of the System.  We may, in our discretion, change, delete from or add to the System, including any of the Marks or System Standards, in response to changing market conditions.  We may, in our discretion, permit deviations from System Standards, based on local conditions and our assessment of the circumstances.

4.6  **Consultations and Standards Compliance.**  We will assist you to understand your obligations under System Standards by telephone, mail, during quality assurance inspections, through the System Standards Manual, at training sessions and during conferences and meetings we conduct.  We will provide telephone and mail consultation on Facility operation and marketing through our representatives.  We will offer you access to any Internet website we may maintain to provide Chain licensees with information and services, subject to any rules, policies and procedures we establish for its use and access and to this Agreement.  We may limit or deny access to any such website while you are in default under this Agreement.

4.7  **System Standards Manual and Other Publications.**  We will specify System Standards in the System Standards Manual, policy statements or other publications.  We will lend you one copy of the System Standards Manual promptly after we sign this Agreement.  We will send you any System Standards Manual revisions and/or supplements as and when issued.  We will send you all other publications for Chain licensees and all separate policy statements in effect from time to time.

4.8  **Inspections and Audits.**  We have the unlimited right to conduct unannounced quality assurance inspections of the Facility and its operations, records and Mark usage to test the Facility's compliance with System Standards and this Agreement, and the audits described in Section 3.9.  We have the unlimited right to reinspect if the Facility does not achieve the score required on an inspection.  We may impose a reinspection fee and will charge you for our costs as provided in Section 3.8.  You will pay us an "Audit Fee" of $300.00 when we invoice you for an Audit Fee under Section 3.8.  We may increase the Audit Fee on a Chain-wide basis to cover any increases in our audit costs to not more than $500.00, effective any time after December 31, 2005.  Our inspections are solely for the purposes of checking compliance with System Standards.

5.  **Term.**  The Term begins on the Effective Date and expires at the end of the fifteenth License Year.  Some of your duties and obligations will survive termination or expiration of this Agreement.  NEITHER PARTY HAS RENEWAL RIGHTS OR OPTIONS.

6.  **Application and Initial Fees.**  We should receive from you a non-refundable Application Fee of $1,000.00.  You will pay us a non-refundable Initial Fee in the amount of **$17,500.00 as follows: $4,375.00 is due when you sign this Agreement and $13,125.00** when you sign this Agreement, which is fully earned when we sign this Agreement.

7.  **Recurring Fees, Taxes and Interest.**

7.1 You will pay us certain "Recurring Fees" in U.S. dollars (or such other currency as we may direct if the Facility is outside the United States) fifteen days after the month in which they accrue, without billing or demand. Recurring Fees include the following:

7.1.1 A "Royalty" equal to four percent (4.0%) of Gross Room Revenues of the Facility accruing during the calendar month, accrues from the earlier of the Opening Date or the date you identify the Facility as a Chain Facility or operate it under a Mark until the end of the Term.

7.1.2 A "RINA Services Assessment Fee" as set forth in Schedule C for advertising, marketing, training, the Reservation System and other related services and programs, accrues from the Opening Date until the end of the Term, including during suspension periods. On behalf of RINA, we collect and deposit the Fees from licensees, then disburse and administer the funds collected by means of a separate account or accounts. The RINA Services Assessment Fee is subject to change for all Chain Facilities, and new fees and charges may be assessed for new services, by substituting a new Schedule C or otherwise, but only upon the recommendation of the RINA Executive Committee and after our approval. You will also pay or reimburse us for travel and other agent commissions paid for certain reservations at the Facility and a "GDS Fee" levied to pay for reservations for the Facility originated or processed through the Global Distribution System, the Internet and other reservation systems and networks. We may charge a reasonable service fee for this service. We may charge Facilities using the Reservation System outside the United States for reservation service using a different formula. We may use the RINA Services Assessment Fees we collect, in whole or in part, to reimburse our reasonable direct and indirect costs, overhead or other expenses of providing marketing, training and reservation services.

7.2 You will pay to us "Taxes" equal to any federal, state or local sales, gross receipts, use, value added, excise or similar taxes assessed against us on the Recurring Fees by the jurisdictions where the Facility is located, but not including any income tax, franchise or other tax for the privilege of doing business by us in your State. You will pay Taxes to us when due.

7.3 "Interest" is payable when you receive our invoice on any past due amount payable to us under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid.

7.4 If a transfer occurs, your transferee or you will pay us our then current Application Fee and a "Relicense Fee" equal to the Initial Fee we would then charge a new licensee for the Facility.

## 8. Indemnifications.

8.1 Independent of your obligation to procure and maintain insurance, you will indemnify, defend and hold the Indemnitees harmless, to the fullest extent permitted by law, from and against all Losses and Expenses, incurred by any Indemnitee for any investigation, claim, action, suit, demand, administrative or alternative dispute resolution proceeding, relating to or arising out of any transaction, occurrence or service at, or involving the operation of, the Facility, any payment you make or fail to make to us, any breach or violation of any contract or any law, regulation or ruling by, or any act, error or omission (active or passive) of, you, any party associated or affiliated with you or any of the owners, officers, directors, employees, agents or contractors of you or your affiliates, including when you are alleged or held to be the actual, apparent or ostensible agent of the Indemnitee, or the active or passive negligence of any

RAMEXC1
150506 3/04

Indemnitee is alleged or proven. You have no obligation to indemnify an Indemnitee for damages to compensate for property damage or personal injury if a court of competent jurisdiction makes a final decision not subject to further appeal that the Indemnitee engaged in willful misconduct or intentionally caused such property damage or bodily injury. This exclusion from the obligation to indemnify shall not, however, apply if the property damage or bodily injury resulted from the use of reasonable force by the Indemnitee to protect persons or property.

8.2 You will respond promptly to any matter described in the preceding paragraph, and defend the Indemnitee. You will reimburse the Indemnitee for all costs of defending the matter, including reasonable attorneys' fees, incurred by the Indemnitee if your insurer or you do not assume defense of the Indemnitee promptly when requested, or separate counsel is appropriate, in our discretion, because of actual or potential conflicts of interest. We must approve any resolution or course of action in a matter that could directly or indirectly have any adverse effect on us or the Chain, or could serve as a precedent for other matters.

8.3 We will indemnify, defend and hold you harmless, to the fullest extent permitted by law, from and against all Losses and Expenses incurred by you in any action or claim arising from your proper use of the System alleging that your use of the System and any property we license to you is an infringement of a third party's rights to any trade secret, patent, copyright, trademark, service mark or trade name. You will promptly notify us in writing when you become aware of any alleged infringement or an action is filed against you. You will cooperate with our defense and resolution of the claim. We may resolve the matter by obtaining a license of the property for you at our expense, or by requiring that you discontinue using the infringing property or modify your use to avoid infringing the rights of others.

## 9. Your Assignments, Transfers and Conveyances.

9.1 **Transfer of the Facility.** This Agreement is personal to you (and your owners if you are an entity). We are relying on your experience, skill and financial resources (and that of your owners and the guarantors, if any) to sign this Agreement with you. You may finance the Facility and grant a lien, security interest or encumbrance on it without notice to us or our consent. If a Transfer is to occur, the transferee or you must comply with Section 9.3. Your License is subject to termination when the Transfer occurs. The License is not transferable to your transferee, who has no right or authorization to use the System and the Marks when you transfer ownership or possession of the Facility. The transferee may not operate the Facility under the System, and you are responsible for performing the post-termination obligations in Section 13. You and your owners may, only with our prior written consent and after you comply with Sections 9.3 and 9.6, assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise. Transactions involving Equity Interests that are not Equity Transfers do not require our consent and are not Transfers.

9.2 **Public Offerings and Registered Securities.** You may engage in the first registered public offering of your Equity Interests only after you pay us a public offering fee equal to $15,000. Your Equity Interests (or those of a person, parent, subsidiary, sibling or affiliate entity, directly or indirectly effectively controlling you), are freely transferable without the application of this Section if they are, on the Effective Date, or after the public offering fee is paid, they become, registered under the federal Securities Act of 1933, as amended, or a class of securities registered under the Securities Exchange Act of 1934, as amended, or listed for trading on a national securities exchange or the automated quotation system of the National Association of Securities

11

Dealers, Inc. (or any successor system), provided that any tender offer for at least a majority of your Equity Interests will be an Equity Transfer subject to Section 9.1.

**9.3 Conditions.** We may, to the extent permitted by applicable law, condition and withhold our consent to a Transfer when required under this Section 9 until the transferee and you meet certain conditions. If a Transfer is to occur, the transferee (or you, if an Equity Transfer is involved) must first complete and submit our Application, qualify to be a licensee in our sole discretion, given the circumstances of the proposed Transfer, provide the same supporting documents as a new license applicant, pay the Application and Relicense Fees then in effect, sign the form of License Agreement we then offer in conversion transactions and agree to renovate the Facility as if it were an existing facility of similar age and condition converting to the System, as we reasonably determine. We will provide a Punch List of improvements we will require after the transferee's Application is submitted to us. We must also receive general releases from you and each of your owners, and payment of all amounts then owed to us and our affiliates by you, your owners, your affiliates, the transferee, its owners and affiliates, under this Agreement or otherwise. Our consent to the transaction will not be effective until these conditions are satisfied.

**9.4 Permitted Transferee Transactions.** You may transfer an Equity Interest or effect an Equity Transfer to a Permitted Transferee without obtaining our consent, renovating the Facility or paying a Relicense Fee or Application Fee. No Transfer will be deemed to occur. You also must not be in default and you must comply with the application and notice procedures specified in Sections 9.3 and 9.6. Each Permitted Transferee must first agree in writing to be bound by this Agreement, or at our option, execute the License Agreement form then offered prospective licensees. No transfer to a Permitted Transferee shall release a living transferor from liability under this Agreement or any guarantor under any Guaranty of this Agreement. You must comply with this Section if you transfer the Facility to a Permitted Transferee. A transfer resulting from a death may occur even if you are in default under this Agreement.

**9.5 Attempted Transfers.** Any transaction requiring our consent under this Section 9 in which our consent is not first obtained shall be void, as between you and us. You will continue to be liable for payment and performance of your obligations under this Agreement until we terminate this Agreement, all your financial obligations to us are paid and all System identification is removed from the Facility.

**9.6 Notice of Transfers.** You will give us at least 30 days prior written notice of any proposed Transfer or Permitted Transferee transaction. You will notify us when you sign a contract to Transfer the Facility and 10 days before you intend to close on the transfer of the Facility. We will respond to all requests for our consent and notices of Permitted Transferee transactions within a reasonable time not to exceed 30 days. You will notify us in writing within 30 days after a change in ownership of 25% or more of your Equity Interests that are not publicly held or that is not an Equity Transfer, or a change in the ownership of the Facility if you are not its owner. You will provide us with lists of the names, addresses, and ownership percentages of your owner(s) at our request.

**10. Our Assignments.** We may assign, delegate or subcontract all or any part of our rights and duties under this Agreement, including by operation of law, without notice and without your consent. We will have no obligations to you after you are notified that our transferee has assumed our obligations under this Agreement except those that arose before we assign this Agreement.

## 11. Default and Termination.

11.1  **Default.**  In addition to the matters identified in Sections 3.1 and 3.8, you will be in default under this Agreement if (a) you do not pay us when a payment is due, (b) you do not perform any of your other obligations when this Agreement and the System Standards Manual require, or (c) if you otherwise breach this Agreement.  If your default is not cured within ten days after you receive written notice from us that you have not filed your monthly report, paid us any amount that is due or breached your obligations regarding Confidential Information, or within 30 days after you receive written notice from us of any other default (except as noted below), then we may terminate this Agreement by written notice to you, under Section 11.2.  We will not exercise our right to terminate if you have completely cured your default, or until any waiting period required by law has elapsed.  In the case of quality assurance default, if you have acted diligently to cure the default but cannot do so and have entered into a written improvement agreement with us within 30 days after the failing inspection, you may cure the default within 90 days after the failing inspection.  We may terminate the License if you do not perform that improvement agreement.

11.2  **Termination.**  We may terminate the License, or this Agreement if the Opening Date has not occurred, effective when we send written notice to you or such later date as required by law or as stated in the default notice, when (1) you do not cure a default as provided in Section 11.1 or we are authorized to terminate under Section 3.1, (2) you discontinue operating the Facility as a "Ramada", (3) you do or perform, directly or indirectly, any act or failure to act that in our reasonable judgment is or could be injurious or prejudicial to the goodwill associated with the Marks or the System, (4) you lose possession or the right to possession of the Facility, (5) you (or any guarantor) suffer the termination of another license or License Agreement with us or one of our affiliates, (6) you intentionally maintain false books and records or submit a materially false report to us, (7) you (or any guarantor) generally fail to pay debts as they come due in the ordinary course of business, (8) you, any guarantor or any of your owners or agents misstated to us or omitted to tell us a material fact to obtain or maintain this Agreement with us, (9) you receive two or more notices of default from us in any one year period (whether or not you cure the defaults), (10) a violation of Section 9 occurs, or a Transfer occurs before the relicensing process is completed, (11) you or any of your Equity Interest owners contest in court the ownership or right to franchise or license all or any part of the System or the validity of any of the Marks, (12) you, any guarantor or the Facility is subject to any voluntary or involuntary bankruptcy, liquidation, dissolution, receivership, assignment, reorganization, moratorium, composition or a similar action or proceeding that is not dismissed within 60 days after its filing, or (13) you maintain or operate the Facility in a manner that endangers the health or safety of the Facility's guests.

## 11.3  Casualty and Condemnation.

11.3.1  You will notify us promptly after the Facility suffers a Casualty that prevents you from operating in the normal course of business, with less than 75% of guest rooms available.  You will give us information on the availability of guest rooms and the Facility's ability to honor advance reservations.  You will tell us in writing within 60 days after the Casualty whether or not you will restore, rebuild and refurbish the Facility to conform to System Standards and its condition prior to the Casualty.  This restoration will be completed within 180 days after the Casualty.  You may decide within the 60 days after the Casualty, and if we do not hear from you,

we will assume that you have decided, to terminate this Agreement, effective as of the date of your notice or 60 days after the Casualty, whichever comes first. If this Agreement so terminates, you will pay all amounts accrued prior to termination and follow the post-termination requirements in Section 13. You will not be obligated to pay Liquidated Damages if the Facility will no longer be used as an extended stay or transient lodging facility after the Casualty.

11.3.2   You will notify us in writing within 10 days after you receive notice of any proposed Condemnation of the Facility, and within 10 days after receiving notice of the Condemnation date. This Agreement will terminate on the date the Facility or a substantial portion is conveyed to or taken over by the condemning authority.

11.4   **Our Other Remedies.** We may suspend the Facility from the Reservation System for any default or failure to pay or perform under this Agreement or any other written agreement with us relating to the Facility, discontinue Reservation System referrals to the Facility for the duration of such suspension, and may divert previously made reservations to other Chain Facilities after giving notice of non-performance, non-payment or default. All RINA Services Assessment Fees and related Reservation System user fees accrue during the suspension period. We may deduct points under our quality assurance inspection program for your failure to comply with this Agreement or System Standards. Reservation service will be restored after you have fully cured any and all defaults and failures to pay and perform. We may omit the Facility from the Directory if you are in default on the date we must determine which Chain Facilities are included in the Directory. You recognize that any use of the System not in accord with this Agreement will cause us irreparable harm for which there is no adequate remedy at law, entitling us to injunctive and other relief. We may litigate to collect amounts due under this Agreement without first issuing a default or termination notice. Our consent or approval may be withheld if needed while you are in default under this Agreement or may be conditioned on the cure of all your defaults.

11.5   **Your Remedies.** If we fail to issue our approval or consent as and when required under this Agreement within a reasonable time of not less than 30 days after we receive all of the information we request, and you believe our refusal to approve or consent is wrongful, you may bring a legal action against us to compel us to issue our approval or consent to the obligation. To the extent permitted by applicable law, this action shall be your exclusive remedy. We shall not be responsible for direct, indirect, special, consequential or exemplary damages, including, but not limited to, lost profits or revenues.

## 12. Liquidated Damages.

12.1   **Generally.** If we terminate the License under Section 11.2, or you terminate this Agreement (except under Section 11.3 or as a result of our default which we do not cure within a reasonable time after written notice), you will pay us within 30 days following the date of termination, as Liquidated Damages, an amount equal to the sum of accrued Royalties and RINA Services Assessment Fees during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term (the "Ending Period") at the date of termination, whichever is less). If the Facility has been open for fewer than 24 months, then the amount shall be the average monthly Royalties and RINA Services Assessment Fees since the Opening Date multiplied by 24. You will also pay any applicable Taxes assessed on such payment and Interest calculated under Section 7.3 accruing from 30 days after the date of termination. Before the Ending Period, Liquidated Damages will not be less than the product of

14

$2,000 multiplied by the number of guest rooms you are then authorized to operate under Schedule B of this Agreement, as amended. If we terminate this Agreement under Section 3 before the Opening Date, you will pay us within 10 days after you receive our notice of termination Liquidated Damages equal to one-half the amount payable for termination under Section 11.2. Liquidated Damages are paid in place of our claims for lost future Recurring Fees under this Agreement. Our right to receive other amounts due under this Agreement is not affected.

**12.2 Condemnation Payments.** In the event a Condemnation is to occur, you will pay us the fees set forth in Section 7 for a period of one year after we receive the initial notice of condemnation described in Section 11.3.2, or until the Condemnation occurs, whichever is longer. You will pay us Liquidated Damages equal to the average daily Royalties and RINA Services Assessment Fees for the one year period preceding the date of your condemnation notice to us multiplied by the number of days remaining in the one year notice period if the Condemnation is completed before the one year notice period expires. This payment will be made within 30 days after Condemnation is completed (when you close the Facility or you deliver it to the condemning authority). You will pay no Liquidated Damages if the Condemnation is completed after the one year notice period expires, but the fees set forth in Section 7 must be paid when due until Condemnation is completed.

**13. Your Duties At and After Termination.** When the License or this Agreement terminates for any reason whatsoever:

**13.1 System Usage Ceases.** You will immediately stop using the System to operate and identify the Facility. You will remove all signage and other items bearing any Marks and follow the other steps detailed in the System Standards Manual for changing the identification of the Facility. You will promptly paint over or remove the Facility's distinctive System trade dress, color schemes and architectural features. You shall not identify the Facility with a confusingly similar mark or name, or use the same colors as the System trade dress for signage, printed materials and painted surfaces. You will cease all Internet marketing using any Marks to identify the Facility.

**13.2 Other Duties.** You will pay all amounts owed to us under this Agreement within 10 days after termination. You will owe us Recurring Fees on Gross Room Revenues accruing while the Facility is identified as a "Ramada", including the RINA Services Assessment Fees for so long as the Facility receives service from the Reservation System. We may immediately remove the Facility from the Reservation System and divert reservations as authorized in Section 11.4. We may notify third parties that the Facility is no longer associated with the Chain. We may also, to the extent permitted by applicable law, and without prior notice enter the Facility and any other parcels, remove software (including archive and back-up copies) for accessing the Reservation System, all copies of the System Standards Manual, Confidential Information, equipment and all other personal property of ours, and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that you have not removed or obliterated within five days after termination. You will promptly pay or reimburse us for our cost of removing such items, net of the $10.00 purchase price for signage. We will exercise reasonable care in removing or painting over signage. We will have no obligation or liability to restore the Facility to its condition prior to removing the signage. We shall have the right, but not the obligation, to purchase some or all of the Facility's Mark-bearing FF&E and supplies at the lower of their cost

15

or net book value, with the right to set off their aggregate purchase price against any sums then owed us by you.

13.3 **Advance Reservations.** The Facility will honor any advance reservations, including group bookings, made for the Facility prior to termination at the rates and on the terms established when the reservations are made and pay when due all related travel agent commissions.

13.4 **Survival of Certain Provisions.** Sections 3.8 (as to audits, for 2 years after termination), 3.13, 7 (as to amounts accruing through termination), 8, 11.4, 12, 13, 15, 16 and 17 survive termination of the License and this Agreement, whether termination is initiated by you or us, even if termination is wrongful.

14. **Your Representations and Warranties.** You expressly represent and warrant to us as follows:

14.1 **Quiet Enjoyment and Financing.** You own, or will own prior to commencing improvement, or lease, the Location and the Facility. You will be entitled to possession of the Location and the Facility during the entire Term without restrictions that would interfere with your performance under this Agreement, subject to the reasonable requirements of any financing secured by the Facility. You have, when you sign this Agreement, and will maintain during the Term, adequate financial liquidity and financial resources to perform your obligations under this Agreement.

14.2 **This Transaction.** You and the persons signing this Agreement for you have full power and authority and have been duly authorized, to enter into and perform or cause performance of your obligations under this Agreement. You have obtained all necessary approvals of your owners, Board of Directors and lenders. No executory franchise, license, or affiliation agreement for the Facility exists other than this Agreement. Your execution, delivery and performance of this Agreement will not violate, create a default under or breach of any charter, bylaws, agreement or other contract, license, permit, indebtedness, certificate, order, decree or security instrument to which you or any of your principal owners is a party or is subject or to which the Facility is subject. Neither you nor the Facility is the subject of any current or pending merger, sale, dissolution, receivership, bankruptcy, foreclosure, reorganization, insolvency, or similar action or proceeding on the date you execute this Agreement and was not within the three years preceding such date, except as disclosed in the Application. You will submit to us the documents about the Facility, you, your owners and your finances that we request in the License Application (or after our review of your initial submissions) before or within 30 days after you sign this Agreement. To the best of your knowledge, neither you, your owners (if you are an entity), your officers, directors or employees or anyone else affiliated or associated with you, whether by common ownership, by contract, or otherwise, has been designated as, or is, a terrorist, a "Specially Designated National" or a "Blocked Person" under U.S. Executive Order 13224, in lists published by the U.S. Department of the Treasury's Office of Foreign Assets Control, or otherwise.

14.3 **No Misrepresentations or Implied Covenants.** All written information you submit to us about the Facility, you, your owners, any guarantor, or the finances of any such person or entity, was or will be at the time delivered and when you sign this Agreement, true, accurate and complete, and such information contains no misrepresentation of a material fact, and does not omit any material fact necessary to make the information disclosed not misleading under the

16

circumstances. There are no express or implied covenants or warranties, oral or written, between we and you except as expressly stated in this Agreement.

### 15. Proprietary Rights.

15.1 **Marks and System.** You will not acquire any interest in or right to use the System or Marks except under this Agreement. You will not apply for governmental registration of the Marks, or use the Marks or our corporate name in your legal name, but you may use a Mark for an assumed business or trade name filing.

15.2 **Inurements.** All present and future distinguishing characteristics, improvements and additions to or associated with the System by us, you or others, and all present and future service marks, trademarks, copyrights, service mark and trademark registrations used and to be used as part of the System, and the associated good will, shall be our property and will inure to our benefit. No good will shall attach to any secondary designator that you use.

15.3 **Other Locations and Systems.** We and our affiliates each reserve the right to own, in whole or in part, and manage, operate, use, lease, finance, sublease, franchise, license (as licensor or licensee), provide services to or joint venture (i) distinctive separate lodging or food and beverage marks and other intellectual property which are not part of the System, and to enter into separate agreements with you or others (for separate charges) for use of any such other marks or proprietary rights, (ii) other lodging, food and beverage facilities, or businesses, under the System utilizing modified System Standards, and (iii) a Chain Facility at or for any location outside the Protected Territory defined in Section 17.8. There are no territorial rights or agreements between the parties. You acknowledge that we are affiliated with or in the future may become affiliated with other lodging providers or franchise systems that operate under names or marks other than the Marks. We and our affiliates may use or benefit from common hardware, software, communications equipment and services and administrative systems for reservations, franchise application procedures or committees, marketing and advertising programs, personnel, central purchasing, approved supplier lists, franchise sales personnel (or independent franchise sales representatives), etc.

15.4 **Confidential Information.** You will take all appropriate actions to preserve the confidentiality of all Confidential Information. Access to Confidential Information should be limited to persons who need the Confidential Information to perform their jobs and are subject to your general policy on maintaining confidentiality as a condition of employment or who have first signed a confidentiality agreement. You will not permit copying of Confidential Information (including, as to computer software, any translation, decompiling, decoding, modification or other alteration of the source code of such software). You will use Confidential Information only for the Facility and to perform under this Agreement. Upon termination (or earlier, as we may request), you shall return to us all originals and copies of the System Standards Manual, policy statements and Confidential Information "fixed in any tangible medium of expression," within the meaning of the U.S. Copyright Act, as amended. Your obligations under this subsection commence when you sign this Agreement and continue for trade secrets (including computer software we license to you) as long as they remain secret and for other Confidential Information, for as long as we continue to use the information in confidence, even if edited or revised, plus three years. We will respond promptly and in good faith to your inquiry about continued protection of any Confidential Information.

17

15.5 **Litigation.** You will promptly notify us of (i) any adverse or infringing uses of the Marks (or names or symbols confusingly similar), Confidential Information or other System intellectual property, and (ii) or any threatened or pending litigation related to the System against (or naming as a party) you or us of which you become aware. We alone handle disputes with third parties concerning use of all or any part of the System. You will cooperate with our efforts to resolve these disputes. We need not initiate suit against imitators or infringers who do not have a material adverse impact on the Facility, or any other suit or proceeding to enforce or protect the System in a matter we do not believe to be material.

15.6 **The Internet.** You may use the Internet to market the Facility subject to this Agreement and System Standards. You shall not use, license or register any domain name, universal resource locator, or other means of identifying you or the Facility that uses a mark or any image or language confusingly similar to a Mark without our consent. You will assign to us any such identification at our request without compensation or consideration. You must make available through the Reservation System and the Chain website all rates you offer to the general public via Internet marketing arrangements with third parties. You must participate in the Chain's best available rate on the Internet guarantee or successor program. The content you provide us or use yourself for any Internet marketing must be true, correct and accurate, and you will notify us in writing promptly when any correction to the content becomes necessary. You shall promptly modify at our request the content of any Internet marketing material for the Facility you use, authorize, display or provide to conform to System Standards. Any use of the Marks and other elements of the System on the Internet inures to our benefit under Section 15.2.

16. **Relationship of Parties.**

16.1 **Independence.** You are an independent contractor. You are not our legal representative or agent, and you have no power to obligate us for any purpose whatsoever. We and you have a business relationship based entirely on and circumscribed by this Agreement. No partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this Agreement. You will exercise full and complete control over and have full responsibility for your contracts, daily operations, labor relations, employment practices and policies, including, but not limited to, the recruitment, selection, hiring, disciplining, firing, compensation, work rules and schedules of your employees.

16.2 **Joint Status.** If you comprise two or more persons or entities (notwithstanding any agreement, arrangement or understanding between or among such persons or entities) the rights, privileges and benefits of this Agreement may only be exercised and enjoyed jointly. The liabilities and responsibilities under this Agreement will be the joint and several obligations of all such persons or entities.

16.3 **FSH Rights.** In the event our rights to (i) any of the Marks or the Ramada System shall be terminated pursuant to the Master License Agreements (other than as a result of a purchase option we exercise as set forth therein), or (ii) we liquidate, dissolve or otherwise cease to do business, then FSH or its assignee shall have the right to succeed to all of our rights in, to and under this Agreement and any other agreements between you and us entered into pursuant to this Agreement, and in such event FSH or its assignee shall be obligated to perform our duties and assume all of our obligations under any such agreements.

17. **Legal Matters.**

18

**17.1 Partial Invalidity.** If all or any part of a provision of this Agreement violates the law of your state (if it applies), such provision or part will not be given effect. If all or any part of a provision of this Agreement is declared invalid or unenforceable, for any reason, or is not given effect by reason of the prior sentence, the remainder of the Agreement shall not be affected. However, if in our judgment the invalidity or ineffectiveness of such provision or part substantially impairs the value of this Agreement to us, then we may at any time terminate this Agreement by written notice to you without penalty or compensation owed by either party.

**17.2 Waivers, Modifications and Approvals.** If we allow you to deviate from this Agreement, we may insist on strict compliance at any time after written notice. Our silence or inaction will not be or establish a waiver, consent, course of dealing, implied modification or estoppel. All modifications, waivers, approvals and consents of or under this Agreement by us must be in writing and signed by our authorized representative to be effective. We may unilaterally revise Schedule C when this Agreement so permits.

**17.3 Notices.** Notices will be effective if in writing and delivered (i) by facsimile transmission with confirmation original sent by first class mail, postage prepaid, (ii) by delivery service, with proof of delivery, or (iii) by first class, prepaid certified or registered mail, return receipt requested, to the appropriate party (x) at its address stated below or as it may otherwise designate by notice, or (y) by such other means as to result in actual or constructive receipt by the person or office holder designated below. The parties may also communicate via electronic mail between addresses to be established by notice. You consent to receive electronic mail from us. Notices shall be deemed given on the date delivered or date of attempted delivery, if refused.

Ramada Franchise Systems, Inc.:
Our address: 1 Sylvan Way, P.O. Box 278, Parsippany, New Jersey 07054-0278
Attention: Vice President-Franchise Administration;
Fax No. (973) 496-5359

Your name: **YOUNG BROTHERS PROPERTIES, INC.,**
Your address: **3339 Meadors Road, Florence, South Carolina 29501,**
Attention: **Hal Coker;**
Your fax No.: **(843) 662-7682.**

**17.4 Remedies.** Remedies specified in this Agreement are cumulative and do not exclude any remedies available at law or in equity. The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement.

**17.5 Miscellaneous.** This Agreement is exclusively for the benefit of the parties. There are no third party beneficiaries. No agreement between us and anyone else is for your benefit. The section headings in this Agreement are for convenience of reference only.

**17.6 Choice of Law; Venue; Dispute Resolution.**

RAMEXC1
150506 3/04

17.6.1  This Agreement will be governed by and construed under the laws of the State of New Jersey, except for its conflicts of law principles.  The New Jersey Franchise Practices Act will not apply to any Facility located outside the State of New Jersey.

17.6.2  The parties shall attempt in good faith to resolve any dispute concerning this Agreement or the parties' relationship promptly through negotiation between authorized representatives.  If these efforts are not successful, either party may attempt to resolve the dispute through non-binding mediation.  Either party may request mediation through the National Franchise Mediation Program, using the procedures employed by the CPR Institute for Dispute Resolution, Inc.  We will provide you with the contact address for that organization.  The mediation will be conducted by a mutually acceptable and neutral third party.  If the parties cannot resolve the dispute through negotiation or mediation, or choose not to negotiate or mediate, either party may pursue litigation.

17.6.3  You consent and waive your objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we and you.

**17.6.4  WAIVER OF JURY TRIAL.  THE PARTIES WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION RELATED TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE LICENSOR, THE LICENSEE, ANY GUARANTOR, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS.**

**17.7  Special Acknowledgments.  You acknowledge the following statements to be true and correct as of the date you sign this Agreement, and to be binding on you.**

**17.7.1  You received our Uniform Franchise Offering Circular ("UFOC") for prospective licensees at least 10 business days before, and a copy of this Agreement and all other agreements we are asking you to sign at least 5 business days before, signing this Agreement and paying the Initial Fee to us.  You have received our UFOC at least 10 business days before you paid any fee to us or signed any contract with us.**

**17.7.2  Neither we nor any person acting on our behalf has made any oral or written representation or promise to you on which you are relying to enter into this Agreement that is not written in this Agreement.  You release any claim against us or our agents based on any oral or written representation or promise not stated in this Agreement.**

**17.7.3  This Agreement, together with the exhibits and schedules attached, is the entire agreement superseding all previous oral and written representations, agreements and understandings of the parties about the Facility and the License.**

**17.7.4  You acknowledge that no salesperson has made any promise or provided any information to you about projected sales, revenues, income, profits or expenses from the Facility except as stated in Item 19 of the UFOC or in a writing that is attached to this Agreement.**

**17.7.5  You understand that the franchise relationship is an arms' length, commercial business relationship in which each party acts in its own interest.**

17.8 **Protected Territory.** We will not own, operate, lease, manage, or license any party but you to operate a Chain Facility in the "Protected Territory", defined below, while this Agreement is in effect. We may own, operate, lease, manage, franchise or license anyone to operate any Chain Facility located anywhere outside the Protected Territory without any restriction or obligation to you. We may grant Protected Territories for other Chain Facilities that overlap your Protected Territory. While this Agreement is in effect, neither you nor your officers, directors, general partners or owners of 25% or more of your Equity Interests, may own, operate, lease, manage or franchise any guest lodging facility other than the Facility in the Protected Territory unless we or our affiliate licenses the facility. You will use any information obtained through the Reservation System to refer guests, directly or indirectly, only to Chain Facilities. This Section does not apply to any Chain Facility located in the Protected Territory on the Effective Date, which we may renew, relicense, allow to expand, or replace with a replacement Facility located within the same trading area having not more than 120% of the guest rooms of the replaced Chain Facility if its license with us terminates or is not renewed. The Protected Territory fairly represents the Facility's trading area, and you acknowledge that. There are no express or implied territorial rights or agreements between the parties except as stated in this Section. By electing to include this section in your Agreement, you irrevocably waive any right to seek or obtain the benefits of any policy we now follow or may in the future follow to notify you about proposed Chain Facilities in the general area of the Facility, solicit information about the effect of the proposed Chain Facility on the revenue or occupancy of the Facility or decide whether to add the proposed Chain Facility to the Chain based on the potential effect of the proposed Chain Facility on the Facility or its performance. The covenants in this Section are mutually dependent; if you breach this Section, your Protected Territory will be the Location only. The Protected Territory means **one mile of either side of the centerline of I-95 commencing at exit 160 proceeding in a southerly direction up to and including exit 146.**

**18.   Special Stipulations.**   The following special stipulations apply to this Agreement and supersede any inconsistent or conflicting provisions. These are personal to you and are not transferable or assignable except to a Permitted Transferee.

18.1 **Liquidated Damages.**   Liquidated Damages payable under Section 12.1 for a Termination that occurs before the last two License Years will be One Thousand Dollars ($1,000.00) for each guest room of the Facility you are authorized to operate at the time of Termination.

18.2 **Your Additional Termination Right.** You may terminate the License without cause or penalty effective only on the fifth or tenth anniversary of the Opening Date provided you give us at least six (6) months prior written notice of termination and you are not in default under this Agreement at the time notice must be given or at the effective date of termination. You will pay no Liquidated Damages if you satisfy the conditions of the preceding sentence and you perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination. Your rights under this Section will automatically terminate without notice if and as of the date (i) a Termination occurs, (ii) you fail to cure any default under this Agreement within the time permitted, if any, in the notice of default we send you, or (iii) after the Facility satisfies the Improvement Obligation, the Facility scores less than 455 (or its then equivalent) on a quality assurance inspection and then fails to achieve a score of at least 455 (or its then equivalent) in a reinspection to be performed no sooner than 30 days after the initial inspection. You will not exercise this right if the Facility is then financed under a program in which the

21

United States Small Business Administration ("SBA") guarantees the financing or its repayment unless you first obtain SBA's consent.

**18.3 Our Additional Termination Right.** We may terminate the License without cause or penalty effective only on the fifthor tenth anniversary of the Opening Date provided we give you at least six (6) months prior written notice of termination. You will perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination. You will pay no Liquidated Damages if we terminate the License under this Section and you perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination. We will not exercise this right if you notify us that the Facility is then financed under a program in which the United States Small Business Administration ("SBA") guarantees the financing or its repayment unless we first obtain SBA's consent.

**18.4 Special Combined Fees.** Notwithstanding Section 7.1, you will pay the "Combined Fee," consisting of the Royalty and the RINA Services Assessment Fee (excluding agent and property to property commissions, Internet fees, guest reward and affinity program fees, service fees and charges, guest complaint assessments, and GDS Fees), to us at the rates set forth in this Section, **provided that the Facility opens in accordance with the deadline established by the terms of this Agreement:**

18.4.1  The Combined Fee shall be seven and one half percent (7.5%) of Gross Room Revenues accruing during the first License Year; and

18.4.2  The Combined Fee shall be six and one half percent (6.5%) of Gross Room Revenues accruing during the second License Year; and

18.4.3  The Combined Fee shall be seven and one half percent (7.5%) of Gross Room Revenues accruing during the third License Year; and

18.4.4  The Royalty and RINA Services Assessment Fees shall be computed and paid at the rates specified in Section 7.1 on Gross Room Revenues accruing after the third License Year.

18.4.5  The rate changes set forth in this Section automatically terminate without notice or opportunity to cure, and the Combined Fee shall reset to the rates specified in Section 7, if and as of the date (i) a Termination occurs, or we send you a notice of default and you fail to cure the default within the time specified, if any, in the notice of default, or (ii) after you satisfy the Improvement Obligation, the Facility receives a quality assurance inspection score of less than 455 (or its then equivalent) and the Facility fails to achieve a quality assurance inspection score of at least 455 in a reinspection to be performed not less than 30 days after the initial inspection.

Balance of page intentionally blank

(Page 23 of 46)

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first stated above.

**WE:**
**RAMADA FRANCHISE SYSTEMS, INC.:**

By:_____          Attest:_____
　　　　　Vice President                              Assistant Secretary

**YOU,** as licensee:
**YOUNG BROTHERS PROPERTIES INC.**

By:_____          Attest:_____
　　(Vice) President

RAMEXC1
150506 3/04

## APPENDIX A

### DEFINITIONS

Agreement means this License Agreement.

Application Fee means the fee you pay when you submit your Application under Section 6.

Approved Plans means your plans and specifications for constructing or improving the Facility initially or after opening, as approved by us under Section 3.

Casualty means destruction or significant damage to the Facility by act of God or other event beyond your reasonable anticipation and control.

Chain means the network of Chain Facilities.

Chain Facility means a lodging facility we own, lease, manage, operate or authorize another party to operate using the System and identified by the Marks.

Condemnation means the taking of the Facility for public use by a government or public agency legally authorized to do so, permanently or temporarily, or the taking of such a substantial portion of the Facility that continued operation in accordance with the System Standards, or with adequate parking facilities, is commercially impractical, or if the Facility or a substantial portion is sold to the condemning authority in lieu of condemnation.

Conference Registration Fee means the fee charged for attendance at the annual RINA conference.

Confidential Information means any trade secrets we own or protect and other proprietary information not generally known to the lodging industry including confidential portions of the System Standards Manual or information we otherwise impart to you and your representatives in confidence. Confidential Information includes the "Standards of Operation and Design Manual" and all other System Standards manuals and documentation, including those on the subjects of employee relations, finance and administration, field operation, purchasing and marketing, the Reservation System software and applications software.

Design Standards mean standards specified in the System Standards Manual from time to time for design, construction, renovation, modification and improvement of new or existing Chain Facilities, including all aspects of facility design, number of rooms, rooms mix and configuration, construction materials, workmanship, finishes, electrical, mechanical, structural, plumbing, HVAC, utilities, access, life safety, parking, systems, landscaping, amenities, interior design and decor and the like for a Chain Facility.

Directory means the general purpose directory we publish listing the names and addresses of Chain Facilities, and at our discretion, other Ramada facilities located outside the United States, Canada and Mexico.

Effective Date means the date we insert in the Preamble of this Agreement after we sign it.

24

Equity Interests shall include, without limitation, all forms of equity ownership of you, including voting stock interests, partnership interests, limited liability company membership or ownership interests, joint and tenancy interests, the proprietorship interest, trust beneficiary interests and all options, warrants, and instruments convertible into such other equity interests.

Equity Transfer means any transaction in which your owners or you sell, assign, transfer, convey, pledge, or suffer or permit the transfer or assignment of, any percentage of your Equity Interests that will result in a change in control of you to persons other than those disclosed on Schedule B, as in effect prior to the transaction. Unless there are contractual modifications to your owners' rights, an Equity Transfer of a corporation or limited liability company occurs when either majority voting rights or beneficial ownership of more than 50% of the Equity Interests changes. An Equity Transfer of a partnership occurs when a newly admitted partner will be the managing, sole or controlling general partner, directly or indirectly through a change in control of the Equity Interests of an entity general partner. An Equity Transfer of a trust occurs when either a new trustee with sole investment power is substituted for an existing trustee, or a majority of the beneficiaries convey their beneficial interests to persons other than the beneficiaries existing on the Effective Date. An Equity Transfer does not occur when the Equity Interest ownership among the owners of Equity Interests on the Effective Date changes without the admission of new Equity Interest owners. An Equity Transfer occurs when you merge, consolidate or issue additional Equity Interests in a transaction which would have the effect of diluting the voting rights or beneficial ownership of your owners' combined Equity Interests in the surviving entity to less than a majority.

Facility means the Location, together with all improvements, buildings, common areas, structures, appurtenances, facilities, entry/exit rights, parking, amenities, FF&E and related rights, privileges and properties existing at the Location on the Effective Date or afterwards.

FF&E means furniture, fixtures and equipment.

FF&E Standards means standards specified in the System Standards Manual for FF&E and supplies to be utilized in a Chain Facility.

Food and Beverage means any restaurant, catering, bar/lounge, entertainment, room service, retail food or beverage operation, continental breakfast, food or beverage concessions and similar services offered at the Facility.

Gross Room Revenues means gross revenues attributable to or payable for rentals of guest rooms at the Facility, including all credit transactions, whether or not collected, but excluding separate charges to guests for Food and Beverage, room service, telephone charges, key forfeitures and entertainment; vending machine receipts; and federal, state and local sales, occupancy and use taxes.

Improvement Obligation means your obligation to either (i) renovate and upgrade the Facility, or (ii) construct and complete the Facility, in accordance with the Approved Plans and System Standards, as described in Section 3.

Indemnitees means us, our direct and indirect parent, subsidiary and sister corporations, and the respective officers, directors, shareholders, employees, agents and contractors, and the successors, assigns, personal representatives, heirs and legatees of all such persons or entities.

25

Initial Fee means the fee you are to pay for signing this Agreement as stated in Section 6.

License means the non-exclusive license to operate the type of Chain Facility described in Schedule B only at the Location, using the System and the Mark we designate in Section 1.

License Year means:

(i) *If the Opening Date occurs on the first day of a month:* the period beginning on the Opening Date and ending on the day immediately preceding the first anniversary of the Opening Date, and each subsequent one year period; or

(ii) *If the Opening Date does not occur on the first day of a month:* the period beginning on the Opening Date and ending on the first anniversary of the last day of the month in which the Opening Date occurs, and each subsequent one year period.

Liquidated Damages means the amounts payable under Section 12, set by the parties because actual damages will be difficult or impossible to ascertain on the Effective Date and the amount is a reasonable pre-estimate of the damages that will be incurred and is not a penalty.

Location means the parcel of land situated at **3339 Meadors Road, Florence, South Carolina,** as more fully described in Schedule A.

Losses and Expenses means (x) all payments or obligations to make payments either (i) to or for third party claimants by any and all Indemnitees, including guest refunds, or (ii) incurred by any and all Indemnitees to investigate, respond to or defend a matter, including without limitation investigation and trial charges, costs and expenses, attorneys' fees, experts' fees, court costs, settlement amounts, judgments and costs of collection; and (y) the "Returned Check Fee" we then specify in the System Standards Manual ($20.00 on the Effective Date) if the drawee dishonors any check that you submit to us.

Maintenance Standards means the standards specified from time to time in the System Standards Manual for repair, refurbishment and replacement of FF&E, finishes, decor, and other capital items and design materials in Chain Facilities.

Marks means, collectively (i) the service marks associated with the System published in the System Standards Manual from time to time including, but not limited to, the name, design and logo for "Ramada" and other marks (U.S. Reg. Nos. 849,591 and 1,191,422) and (ii) trademarks, trade names, trade dress, logos and derivations, and associated good will and related intellectual property interests.

Marks Standards means standards specified in the System Standards Manual for interior and exterior Mark-bearing signage, advertising materials, china, linens, utensils, glassware, uniforms, stationery, supplies, and other items, and the use of such items at the Facility or elsewhere.

Minor Renovation means the repairs, refurbishing, repainting, and other redecorating of the interior, exterior, guest rooms, public areas and grounds of the Facility and replacements of FF&E we may require you to perform under Section 3.16.

26

Minor Renovation Ceiling Amount means $3,000.00 per guest room.

Minor Renovation Notice means the written notice from us to you specifying the Minor Renovation to be performed and the dates for commencement and completion given under Section 3.16.

Opening Date means the date on which we authorize you to open the Facility for business identified by the Marks and using the System.

Operations Standards means standards specified in the System Standards Manual for cleanliness, housekeeping, general maintenance, repairs, concession types, food and beverage service, vending machines, uniforms, staffing, employee training, guest services, guest comfort and other aspects of lodging operations.

Permitted Transferee means (i) any entity, natural person(s) or trust receiving from the personal representative of an owner any or all of the owner's Equity Interests upon the death of the owner, if no consideration is paid by the transferee or (ii) the spouse or adult issue of the transferor, if the Equity Interest transfer is accomplished without consideration or payment, or (iii) any natural person or trust receiving an Equity Interest if the transfer is from a guardian or conservator appointed for an incapacitated or incompetent transferor.

Punch List means the list of upgrades and improvements attached as part of Schedule B, which you are required to complete under Section 3.

Recurring Fees means fees paid to us on a periodic basis, including without limitation, Royalties, RINA Services Assessment Fees, and other reservation fees and charges as stated in Section 7.

Relicense Fee means the fee your transferee or you pay to us under Section 7 when a Transfer occurs.

Reservation System or "Central Reservation System" means the system for offering to interested parties, booking and communicating guest room reservations for Chain Facilities described in Section 4.2.

RINA means the Ramada Inns National Association.

RINA Services Assessment Fees means the assessments charged as set forth in Section 7.1.2.

Rooms Addition Fee means the fee we charge you for adding guest rooms to the Facility.

Royalty means the monthly fee you pay to us for use of the System under Section 7.1.1. "Royalties" means the aggregate of all amounts owed as a Royalty.

System means the comprehensive system for providing guest lodging facility services under the Marks as we specify which at present includes only the following:  (a) the Marks; (b) other intellectual property, including Confidential Information, System Standards Manual and know-how; (c) marketing, advertising, publicity and other promotional materials and programs; (d) System Standards; (e) training programs and materials; (f) quality assurance inspection and scoring programs; and (g) the Reservation System.

System Standards means the standards for the participating in the System published in the System Standards Manual, including but not limited to Design Standards, FF&E Standards, Marks Standards, Operations Standards, Technology Standards and Maintenance Standards and any other standards, policies, rules and procedures we promulgate about System operation and usage.

System Standards Manual means the Standards of Operation and Design Manual and any other manual we publish or distribute specifying the System Standards.

Taxes means the amounts payable under Section 7.2 of this Agreement.

Technology Standards means standards specified in the System Standards Manual for local and long distance telephone communications services, telephone, telecopy and other communications systems, point of sale terminals and computer hardware and software for various applications, including, but not limited to, front desk, rooms management, records maintenance, marketing data, accounting, budgeting and interfaces with the Reservation System to be maintained at the Chain Facilities.

Term means the period of time during which this Agreement shall be in effect, as stated in Section 5.

Termination means a termination of the License under Sections 11.1 or 11.2 or your termination of the License or this Agreement.

Transfer means (1) an Equity Transfer, (2) you assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise without our consent as specified in Section 9, (3) you assign (other than as collateral security for financing the Facility) your leasehold interest in (if any), lease or sublease all or any part of the Facility to any third party, (4) you engage in the sale, conveyance, transfer, or donation of your right, title and interest in and to the Facility, (5) your lender or secured party forecloses on or takes possession of your interest in the Facility, directly or indirectly, or (6) a receiver or trustee is appointed for the Facility or your assets, including the Facility. A Transfer does not occur when you pledge or encumber the Facility to finance its acquisition or improvement, you refinance it, or you engage in a Permitted Transferee transaction.

"You" and "Your" means and refers to the party named as licensee identified in the first paragraph of this Agreement and its Permitted Transferees.

"We", "Our" and "Us" means and refers to Ramada Franchise Systems, Inc., a Delaware corporation, its successors and assigns.

# SCHEDULE A

## (Legal Description of Facility)



(Page 31 of 46)



ship, by Deed dated March 21, 1966, and recorded in Deed Book ___,
Page 142.

ALSO: All machinery and equipment, furniture, furnishings and ___
supplies, franchise rights, and generally all properties belong to and/or used
operation of Sheraton Inn, Florence, South Carolina.

II.  All that certain piece, parcel or lot of land, with improvements thereon,
lying and being in the County of Florence, State of South Carolina, approximately five
(5) miles West of the City of Florence, and lying on the North side of U. S. Highway
No. 76, and being more fully described as follows: Beginning at a point, which point is
feet east of the intersection of the eastern right-of-way of Interstate 95 and the
northern right-of-way of U. S. Highway No. 76 (said point presently designated by the
South Carolina Highway Department as Station No. 129 and 66); and from said point
beginning running North 20° 01' West along an unnamed road having a right-of-way width
of 66 feet a distance of 245 feet to a point of intersection, with another unnamed road
having a right-of-way width of 30 feet; thence running North 69° 59' East a distance of
280 feet to a point; thence running South 20° 01' East a distance of 245 feet to a point
on the northern right-of-way line of U. S. Highway No. 76; thence running South 69° 59'
West along the northern right-of-way line of U. S. Highway No. 76 a distance of 280
feet to the point of beginning.  Said property is bounded on the North and West by the
named roads; on the East by property of James E. Young; and on the South by the right-
of-way line of U. S. Highway No. 76.

The above described property was conveyed to Young Brothers by deed of James E. Young
recorded on September 21, 1966, in Deed Book A35 at page 33, in the office of the Clerk
of Court for Florence County.

The assets hereby conveyed are transferred subject to the existing liabilities of
the grantors in the Sheraton Inn operation.


TOGETHER with all and singular, the rights, members, hereditaments and appurtenances to the said

premises belonging or in anywise incident or appertaining.

   TO HAVE AND TO HOLD all and singular the premises before mentioned unto the said

Young Brothers Sheraton Inn, Inc., its successors


Heirs and Assigns forever.

   And    we      do hereby bind      ourselves and our           Heirs, Executors

and Administrators, to warrant and forever defend all and singular the said premises unto the said

Young Brothers Sheraton Inn, Inc., its successors


Heirs and Assigns, against    us        and    our        Heirs and against every

person whomsoever lawfully claiming, or to claim, the same or any part thereof.

   WITNESS  our   Hand s and Seal s this         1st          day of   November,

   in the year our Lord one thousand nine hundred and       Eighty

   and in the  two  hundred and       fifth         year of the Sovereignty

and Independence of the United States of America.

Signed, Sealed and Delivered
in the Presence of                              _____ (Seal)
_____                         EDWARD L. YOUNG
_____                         _____ (Seal)
                                                JOHN F. YOUNG

(Page 32 of 46)

## SCHEDULE B

PART I:      YOUR OWNERS:

| Name | Ownership Percentage | Type of Equity Interest |
|---|---|---|
| Edward L. Young | 20.34% | common stock |
| Harold G. Coker | 10% | common stock |
| Dr. James N. Young | 10.61% | common stock |
| Others | 19.24% | common stock |

PART II:         THE FACILITY:

Primary designation of Facility: **Ramada Inn**

Number of approved guest rooms: **120**

Parking facilities (number of spaces, description): **At least 120**

Other amenities, services and facilities:

PART III:    DESCRIPTION AND SCHEDULE OF RENOVATIONS TO BE
COMPLETED AS THE IMPROVEMENT OBLIGATION:

**[Punch List to be attached.]**

RAMEXC1
150506 3/04

30

### RAMADA FRANCHISE SYSTEMS, INC.
### SCHEDULE C
#### April 2004

A.    RINA Services Assessment Fee

The RINA Services Assessment Fee is equal to 4.5% of Gross Room Revenues. The RINA Services Assessment Fee is subject to change for all Chain Facilities, and new fees and charges may be assessed for new services, but only upon the recommendation of the Executive Committee of RINA and our approval.

B.    GDS and Internet Booking Fees

We will charge you under our Central Commission Payment Program either a GDS Fee or an Internet Booking Fee for reservations processed through the global distribution systems ("GDS"), including any operated by an affiliate, or the Internet for your Facility. The GDS Fee described in Section 7 is $4.50 per reservation processed through any GDS or through any Internet website powered by a GDS. Internet-originated reservations carry fees of $3.50 per reservation booked through sources other than GDS powered websites or our Chain website. GDS and Internet-originated reservations may also carry a commission if the originator qualifies. If a guest cancels a GDS or Internet-originated reservation using the same source as was used to originate the reservation, you will not be charged the applicable fee.

C.    Additional Reservation System Charges

Agency and other commissions are typically 10% of the Gross Room Revenues generated by each reservation booked by an agency or other qualifying originator, plus our service charge of $.35 per commissionable reservation. The general sales agent commission (also known as the international sales office commission) is 15% of the Gross Room Revenues generated by each reservation originated in an area served by a general sales agent/international sales office and includes the agency commission.

We may assess you for additional fees or commissions charged us by distribution channels, travel intermediaries and retailers or for performing other services. By accepting reservations from the GDS, Internet, travel agencies and other intermediaries, you agree to participate in our Central Commission Payment Program and to reimburse us for any fees or commissions we pay to them on your behalf.

You must (i) make available through the Central Reservation System and the Chain website room rates equivalent to those offered to the general public by third parties that you authorize to offer and sell reservations for the Facility's guest rooms and (ii) participate in the Chain's Best Available Rate Guarantee Program according to its published requirements. Beginning May 1, 2004 if a guest finds a lower publicly available rate on the Internet than the "Best Available Rate" you offer through the Chain website or the Central Reservation System for the same date and accommodations and the guest meets all Program requirements, you must provide the first room night to the guest without a room charge. You may collect standard incidental fees, charges and taxes. We will also charge you a Processing Fee of $25 to reimburse us for our administrative charges of handling the complaint.

31

We will offer you the opportunity to participate in certain Internet distribution channel marketing and reservation activity with third parties including our affiliates. Under one type of arrangement, you will offer rooms for sale through an electronic distribution channel on which you will be paid a net, non-commissionable rate if and when the rooms are sold by the distribution channel at its marked-up rate. For providing and managing this activity we may receive commissions from the Internet distribution channels based upon the mark-up or room rates that they receive for renting your rooms. The net rate you receive, not the mark-up retained by the channel, should be included in Gross Room Revenues. We will allocate these commissions to Royalties and RINA Services Assessment Fees in equal proportions. Under another type of arrangement, you will offer rooms for sale through an electronic distribution channel at your best commissionable rate. The distribution channel will not mark-up these rates but will charge you a commission of up to 15% on consumed room nights.

We or an affiliate may charge you a sales agent commission of up to 10% of the Gross Room Revenues generated from consumed reservations booked by members of affinity groups and organizations participating in our Member Benefits sales program. We or our affiliate usually pays a portion of this commission to the affinity group or organization in exchange for promoting the Member Benefits program to its members.

D.   Special Marketing Assessment

We charge a Special Marketing Assessment for your participation in the TripRewards® or successor guest loyalty program. Under TripRewards, program members staying at qualifying rates at Chain Facilities earn their choice of TripRewards points, airline miles or other program currency. TripRewards points are redeemable for free stays at Chain Facilities and for travel, merchandise, entertainment and other awards. The Special Marketing Assessment is up to 5% of the Gross Room Revenues accruing from each qualifying stay at the Facility. You will be billed monthly in arrears for qualifying stays by program members during the preceding month.

E.   Guest Services Assessment

We will contact you if we receive any guest complaint about you or the Facility, and you will be responsible for resolving the complaint to the satisfaction of the guest. If you do not respond to any complaint within 7 business days after we refer it to you and the guest contacts us again to seek resolution, we will charge you a "Guest Services Assessment" of $75.00, plus the costs we incur to settle the matter with the guest. In addition, if the number of guest complaints per 1,000 occupied roomnights about you or the Facility in a calendar year exceed the "Annual Facility Allotment" we establish with the approval of the RINA Executive Committee, we will charge you a "Processing Fee" of $25.00 for each additional complaint we receive during that year, regardless of whether you are able to resolve it to the guest's satisfaction. We may change or eliminate the Guest Services Assessment, the Processing Fee, the Annual Facility Allotment and/or the time for responding to and resolving a guest complaint on a Chain-wide basis at any time upon 30 days advance notice, with the approval of the RINA Executive Committee. The Guest Services Assessment and the Processing Fee are intended only to reimburse us for the costs of complaint handling and are not intended as penalties or liquidated damages. All guest complaints remain subject to indemnification under this Agreement.



**RAMADA LIMITEDS • INNS • PLAZA HOTELS**

## FRANCHISOR: RAMADA FRANCHISE SYSTEMS, INC.

### "SCHEDULE B, PART III"
### PUNCHLIST FOR CONVERSION
### MARCH 31, 2004

| **FACILITY** | **TIER** | **GUEST ROOMS** |
|---|---|---|
| Young's Plantation Inn | Inn | 120 |
| 3339 Meadors Road | | |
| Florence, SC 29501 | | |

| **OWNER/APPLICANT** | **SALESPERSON** |
|---|---|
| Edward Young | Steve Forsberg |
| (843) 669-2900 | (404) 240-0518 |

**Q.A. REPRESENTATIVE**
Phil Osborne

### PROPERTY CONDITION SUMMARY

This is a 32 year old property that consists of 2 buildings. The commercial building is single-story and contains the lobby/front desk a restaurant that is open for all meal periods, a lounge and 2 meeting rooms. The guestroom building is a 2-story, L-shaped structure containing 120 double-loaded, exterior corridor guestrooms. Renovation of the building exteriors, public areas and guestrooms is required to comply with Company standards. Landscaping is acceptable.

The property is located on I-95, 7 miles south of the downtown area. Clientele includes transient interstate traffic, leisure, commercial and group golf package business.

| | **EXISTING** | **STANDARD** |
|---|---|---|
| Lobby Dimensions: | 1200 SF | 800 SF |
| Guest Room Dimensions: | 288 SF | 288 SF |

### COMPLETION TIME

All items listed in this punchlist must be completed before opening as a Ramada.

2

Young's Plantation Inn
Florence, SC

---

*All Ramada properties are required to be in compliance with all items outlined in the Standards of Operations and Design Manual. Following is a partial, but by no means complete, listing.*

---

- Ramada Inn exterior signage per Company specifications.
- All new Ramada Owners and General Managers are required to complete orientation.
- Dumpster enclosure to conceal from guests' view.
- Safe deposit boxes: 1 per 20 guestrooms, minimum of 6.
- One sanitary dispensing ice machine per 60 rooms.
- Facilities to assist the handicapped in accordance with local, state and federal codes, regulations and ordinances.
- Electronic locks on all guestroom entrance doors per Company specifications.
- Electronic key cards must include the Ramada logo with the 800 number to central reservations and WWW.Ramada.com.
- A self-closing device on all interior guestroom entrance doors.
- A one-way viewer in all guestroom entrance doors.
- Secondary entrance locks (chain or u-bar) on guestroom doors.
- Hardwired smoke detectors with a backup system. This system may be a battery within the unit or a generator system that is capable of restoring electrical service in case of an outage.
- A one-way, doorknob latch set and a separate, non-keyed, 1" deadbolt lock on all connecting room doors. Operating knobs must be located on room side only with flush plates on inside of doors.
- A minimum of two framed pictures with glass fronts, (24" x 30" minimum), and/or one large picture with glass front (30" x 30" minimum).
- Night-lights are required in all guestrooms. Suggested placement for these night-lights include bathroom, vanity or entrance door area.
- A full-length mirror (minimum 14" x 54") in each guestroom.
- Removable wooden hook style hangers, 5 coat and 3 skirt.
- UL approved fire resistant wastebaskets.
- AM/FM clock radio in each guestroom.
- A minimum of 50% of guestrooms must be prepared and designated as non-smoking rooms.
- A UL rated coffee maker with automatic shut off and the required supplies in each room.
- All guestrooms must be equipped with a full size ironing board and a steam iron with automatic shut off feature.
- Minimum 25" remote control televisions are required.
- A GFI outlet (Ground Fault Intruders) in all vanity areas.
- A wall-mounted hairdryer is required in each room.
- Same day laundry/valet service Monday thru Friday.

3

Young's Plantation Inn
Florence, SC

*All Ramada properties are required to be in compliance with all items outlined in the Standards of Operations and Design Manual. Following is a partial, but by no means complete, listing.*

- Company requires that all properties maintain housekeeping at the highest levels.
- Logo supplies must be available at the entry inspection but may not be placed in the guestrooms until official opening.

4

Young's Plantation Inn
Florence, SC

## PROPERTY SIGNAGE

Signage must be purchased from a vendor approved in advance by the Franchisor, and may not be installed without prior written approval from the Property Openings Department. **Your License Agreement controls your use of signage and timing of installation.** All existing signage (building, high-rise, channel letters, billboards, etc.) must be removed. Modification of the existing signage or face replacement is prohibited.

## PROPERTY EXTERIOR

1.  **The Design and Development Department must approve all exterior renovation plans prior to commencement of work. Written approval must be obtained from the Design and Development Department for all exterior renovation plans prior to the commencement of work. These plans must be provided by the architect or general contractor. The Company reserves the right to require additional renovations prior to opening if written approval of renovation plans was not obtained or the actual renovations vary materially from the approved plans. For assistance with design concepts, contact the Design/Development Department at (973) 496-2525. Renovate to include:**

    a.  The enhancement of the roofline around the perimeter of the commercial and guestroom buildings is required to improve the property's curb appeal. Replace cedar shake shingles on the commercial building with a metal mansard style roof. Install either a parapet roofline or a standing seam mansard roof on the guestroom building to match or complement the commercial building. Incorporate Company design features.

    b.  Incorporate a Company design feature into the existing porte cochere.

    c.  Construct staircase towers on guestroom section B and incorporate Company design features.

    d.  Repair/replace damaged areas of vinyl siding and pressure wash siding to eliminate stains.

    e.  Paint building exteriors (doors, fascia bands, soffits, storefronts, stairwells and trim work). Contact the Design and Development Department for assistance.

    f.  Replace bent or damaged HVAC grills. Clean balance of grills to eliminate discoloration.

    g.  Replace jalousie transoms with insulated metal storefront panels.

5

Young's Plantation Inn
Florence, SC

## PROPERTY EXTERIOR CONTINUED

    h.    Replace all walkway/building lights with upgraded fixtures that complement the new building exterior.

    i.    Pressure wash/repaint/refinish walkways and stair steps. Refinish cracked or damaged areas.

    j.    Painted block in breezeways is acceptable if maintained in good condition.

2.    Replace railings. In no event should the new vertical railings allow the passage of a 4" sphere at any point and/or a 2" sphere at the base of railings. The top rail must rise a minimum of 42" from the walkway floor. All railings must match and provide a uniform appearance throughout the property.

3.    Hotpatch, reseal and stripe parking lot. Resurface badly cracked and damaged areas. Paint curbing.

4.    Upgrade swimming pool, whirlpool and kiddie pool to include the following:

    a.    Repair/refinish deck where cracked or damaged. Pressure wash/paint to eliminate stains.

    b.    The existing pool fence is acceptable if it complies with all city, state and Jurisdictional codes.

    c.    Install "FT" and Depth markings on the vertical coping of the whirlpool and kiddie pool. Install "FT" markings on the vertical coping of the main pool.

    d.    Provide additional matching furniture. A minimum of 4 umbrella tables, 16 chairs and 10 chaise lounges are required.

## PUBLIC AREAS

1.    Upgrade Lobby/Front Desk area to include the following:

    a.    All furniture, finishes and fixtures must coordinate with other lobby furnishings.

    b.    Replace ceiling tiles to eliminate any that are worn, stained, damaged or discolored. Ensure all replacements match existing tiles in style, color and texture. If replacements do not match total replacement will be required.

    c.    Professionally clean carpet however, if carpet grades a "C/Moderate" on the opening evaluation, carpet must be replaced. Minimum of 32-ounce wall-to-wall carpet with padding is required.

2.    Provide a phone system that will offer a voice mail system, computer data ports and automated wake-up calls with a greeting message.

6

Young's Plantation Inn
Florence, SC

## PUBLIC AREAS CONTINUED

3.     Upgrade public restrooms to include the following:
   a.     Replace carpet in the women's room vanity area with ceramic tiles to match or
          complement the existing 4" tile flooring.  Minimum 4" tiles are required.  Carpet is
          not acceptable.
   b.     Refinish doors.


## PROPERTY MANAGEMENT SYSTEM REQUIREMENTS

1.     A Company approved Property Management System (PMS) is required. Requirements are
       below, or as specified in your License Agreement.
   a.     Dot matrix printers will require a paper hole for the bottom feed of forms.
   b.     A space for the file server must be made in the front desk area or in an area which
          is accessible 24-hours a day including the ability for the night auditor to utilize it.
   c.     Space must be located near the file server for any interface equipment that will be
          needed, i.e.: call accounting and Point of Sale (POS) terminals.  When considering
          the placement of this equipment remember that it will need electrical outlets and
          that the interface vendor will need to run cable from the interface equipment to the
          Property Management System (PMS).

2.     Hardware power requirements are as follows:
   a.     Proper electrical connections must be in place or the Property Management
          System will not be installed.  Refer to the Installation Guide for specifications.
   b.     One Uninterrupted Power Supply (UPS) unit will be supplied with the package.
          The UPS must be placed at least three feet from the file server.
   c.     The file server and its monitor will plug into the UPS using 2 of its power outlets.
   d.     Each workstation will require 2 power outlets.
   e.     Each printer and modem will require 1 power outlet each.
   f.     The UPS will require 1 dedicated power outlet on its own dedicated circuit
          breaker.

3.     Telephone line requirements are as follows:
   a.     Two dedicated telephone lines with their own phone numbers are required. Three
          are recommended.  No other modems, fax machines, etc are to be connected to
          these phone lines.  For the third phone line, used for Internet access, we will allow
          a line to run through your phone switch.
   b.     Two modems will be supplied with the package.

7

Young's Plantation Inn
Florence, SC

## PROPERTY MANAGEMENT SYSTEM REQUIREMENTS CONTINUED

4.  Interface vendors must be contacted in advance to insure that they will meet the requirements. The franchisee is responsible for arranging any required interface upgrades that may be necessary and for the testing of these upgrades.

5.  All cable must be from a Company approved vendor. Refer to the Installation Guide for specifications.

## FOOD AND BEVERAGE FACILITIES

1.  Ramada Inns are designed to be full service properties. They are required to have a full menu service restaurant with 3 meal periods, a lounge and meeting room facilities. Prior to opening, these areas must be fully operational and comply with all specifications as outlined in the Ramada Standards of Operations and Design Manual. Currently the restaurant and lounge meet these requirements.

2.  Upgrade restaurant to include the following:
    a.  Replace ceiling tiles to eliminate any that are worn, stained, damaged or discolored. Ensure all replacements match existing tiles in style, color and texture. If replacements do not match total replacement will be required.
    b.  Professionally clean carpet however, if carpet grades a "C/Moderate" on the opening evaluation, carpet must be replaced. Minimum of 32-ounce wall-to-wall carpet with padding is required.
    c.  Eliminate banquet chairs temporarily located in the restaurant.

3.  Upgrade lounge to include the following:
    a.  Replace ceiling tiles to eliminate any that are worn, stained, damaged or discolored. Ensure all replacements match existing tiles in style, color and texture. If replacements do not match total replacement will be required.
    b.  Professionally clean carpet however, if carpet grades a "C/Moderate" on the opening evaluation, carpet must be replaced. Minimum of 32-ounce wall-to-wall carpet with padding is required.
    c.  Replace/reupholster permanent bar stools located at the bar. Replace wood bar stools. Replace banquet chairs with traditional style seating. Chairs and stools must be commercial grade and fabric upholstered. Bar stools are required to have safety backing.
    d.  Replace broken mirrors on walls.

8

Young's Plantation Inn
Florence, SC

---

## FOOD AND BEVERAGE FACILITIES CONTINUED

4.     Upgrade meeting rooms to include the following:
    a.    Replace ceiling tiles to eliminate any that are worn, stained, damaged or discolored. Ensure all replacements match existing tiles in style, color and texture. If replacements do not match total replacement will be required.
    b.    Professionally clean carpet however, if carpet grades a "C/Moderate" on the opening evaluation, carpet must be replaced. Minimum of 32-ounce wall-to-wall carpet with padding is required.
    c.    Refinish wood wainscoting.
    d.    Replace accordion style dividers. Room dividers must be soundproof to 50STC decibel requirements. Accordion type folding partitions are not acceptable.

---

## GUESTROOMS/BATHS (Rooms Inspected): 124, 116, 112, 132, 155, 133, 122, 117, 213, 204, 212, 218, 232, 234, 245, 239, 241, 231.

1.     Install electronic locks on all guestroom entrance doors per Company specifications.

2.     Install a one-way, doorknob latch set where missing in addition to the separate, non-keyed, 1" deadbolt lock on all connecting room doors. Operating knobs must be located on room side only with flush plates on inside of doors.

3.     Install a backup system in addition to the existing hardwired smoke detectors. This system may be a battery within the unit or a generator system that is capable of restoring electrical service in case of an outage.

4.     Renovate guestrooms to include the following:
    a.    All furniture, finishes and fixtures must coordinate with other room furnishings.
    b.    Replace/install wallcovering. Eliminate inoperable message lights at this time and repair sheetrock. Company requires either vinyl wallcovering (minimum of 14 ounce) or an approved textured finish. Painted walls are not acceptable. The same wall finish is required on all walls within the room.
    c.    Replace carpet where stained, worn or burned. Company requires minimum 28-ounce cut pile carpet with padding. Carpet must also be wall to wall. Newer carpet as in room #155 is acceptable.

9

Young's Plantation Inn
Florence, SC

## GUESTROOMS/BATHS CONTINUED

    d.    Replace furniture package to include chairs and sofas. A minimum of one credenza/armoire, a framed wall mirror, one headboard per bed, and one freestanding nightstand for a two-bedded room, two for a single-bedded room is required. A writing surface is required to consist of either a desk or an activity table. Two armed chairs per room are required. If a desk is furnished in addition to an activity table, a desk chair is required. Chairs and sofas must be fabric covered.

    e.    *Replace lamp package. Replace drop lamps with floor lamps in leisure area and refinish ceilings to a "like new" condition. Provide light sources where missing. Provide 2 lamps per headboard wall, a credenza lamp and a floor lamp at leisure area. All wall-mounted lamps must have wire covers or molding, loose cords are not acceptable. Lamp package must be neutral and contemporary (i.e. brass). The use of red or other colors of anodized metal is not recommended. Replacement of drop lamps with ceiling mounted lamps as in room #124 is acceptable. Drop lamps are not acceptable.*

    f.    Replace 20" televisions. Minimum 25" remote-controlled type TVs are required. Recommend 27" screens.

    g.    Replace softgood package (drapes and bedspreads) where worn, stained, damaged or faded. New draperies must have blackout capability, be pleated to double fullness, provide for overlapping of panels and must be baton or mechanically operated. Each bed must have a quilted bedspread of an appropriate size for the bed. New drapes and spreads as in room #155 are acceptable.

    h.    Replace bedsets (mattress and boxsprings) to eliminate all that are stained, sagging or have loss of support.

    i.    *Remove television stands and relocate new televisions to the credenzas/armoires.*

5.    Renovate bath areas to include the following:

    a.    Install a GFI (Ground Fault Intruder) outlet in each vanity area.

    b.    Replace colored vanities as in room #232. Eliminate support legs. *Repair/refinish/replace vanities where chipped, burned or damaged. Corian, cultured marble or a light, neutral laminate are acceptable options. Ensure vanities have adequate skirting and a concealed support system.*

    c.    Replace cracked or burned sinks.

    d.    Replace vanity mirrors where desilvered or damaged. Mirrors must extend the length of the vanity.

    e.    Install wallcovering. Company requires either vinyl wallcovering (minimum of 14 ounce) or an approved textured finish. Painted walls are not acceptable.

    f.    Replace stack type towel racks with towel bars/shelves.

    g.    Replace bathroom flooring. Company requires minimum 2" single color ceramic tile: recommend minimum of 6"- 8" tiles.

10

Young's Plantation Inn
Florence, SC

## GUESTROOMS/BATHS CONTINUED

h.   Replace plumbing fixtures/trim (sinks or tubs) where tarnished or corroded (faucets, drain rings, etc.).

(Page 46 of 46)

11

Young's Plantation Inn
Florence, SC

**HANDWRITTEN OR UNAUTHORIZED REVISIONS TO THIS PUNCHLIST ARE NOT
VALID AND DO NOT BIND THE FRANCHISOR. ANY AND ALL REVISIONS TO THIS
PUNCHLIST MUST BE MADE AND APPROVED BY THE FRANCHISOR'S QUALITY
ASSURANCE DEPARTMENT.**

This Punchlist identifies items that require action due to meet the Franchisor's standards. The
Franchisor does not warrant that completion of the items on this Punchlist will cause the
converting facility to be in compliance with any applicable federal, state, local codes, ordinances
or regulations. You (and your architect, contractor and engineer, if applicable) are solely
responsible for conforming the Facility to the requirements of federal, state and local codes,
ordinances and regulations that may apply to your site.

This Punchlist has been prepared on the basis of a random sample inspection of the Facility on
the date specified. The owner is responsible for meeting all Franchisor Standards. All repairs,
replacements and improvements must cause the item to meet or exceed the Franchisor's standards
published in the Standards of Operation and Design Manual.

This Punchlist will be subject to revision at the discretion of the Franchisor if the condition of the
facility changes materially or the License (Franchise) Agreement to which this is attached is
executed more than 90 days after the date of the Punchlist. Note, that ordinary wear and tear,
particularly during busy seasons, may result in the need for additional work to meet entry
standards of the Franchisor. Also, this Punchlist may become null and void if the property does
not enter the System within 180 days after the punchlist date or as otherwise specified by the
license (franchise) agreement.

**This Punchlist is subject to revision by the Franchise Review Committee and should not be
considered to be final until the License Agreement for the inspected facility is executed by
the Company.**

**NOTE:** Any item on this Punchlist that is not required to be completed prior to opening as a
Ramada will continue to be evaluated for appearance and condition during all Quality Assurance
inspections conducted before the date when completion is required.

Signed: _____        Date: _8/5/04_

Print Name: HAROLD G. COKER

SC FLORENCE YOUNG'S PLANTATION INN CV RI
JD

# EXHIBIT B

(Page 35 of 46)

## GUARANTY

To induce Ramada Franchise Systems, Inc., its successors and assigns ("you") to sign the License Agreement (the "Agreement") with the party named as the "Licensee," to which this Guaranty is attached, the undersigned, jointly and severally ("we," "our" or "us"), irrevocably and unconditionally (i) warrant to you that Licensee's representations and warranties in the Agreement are true and correct as stated, and (ii) guaranty that Licensee's obligations under the Agreement, including any amendments, will be punctually paid and performed.

Upon default by Licensee and notice from you we will immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the Agreement. Without affecting our obligations under this Guaranty, you may without notice to us extend, modify or release any indebtedness or obligation of Licensee, or settle, adjust or compromise any claims against Licensee. We waive notice of amendment of the Agreement. We acknowledge that Section 17 of the Agreement, including Remedies, Venue and Dispute Resolution, and WAIVER OF JURY TRIAL, applies to this Guaranty.

Upon the death of an individual guarantor, the estate of the guarantor will be bound by this Guaranty for obligations of Licensee to you existing at the time of death, and the obligations of all other guarantors will continue in full force and effect.

IN WITNESS WHEREOF, each of us has signed this Guaranty effective as of the date of the Agreement.

**WITNESSES:**                                    **GUARANTORS:**

_____                 _____(Seal)
                                                       Edward L. Young

_____                 _____(Seal)
                                                       Harold G. Coker

_____                 _____(Seal)
                                                       Dr. James W. Young

# EXHIBIT C

(Page 1 of 9)



**HOTEL GROUP**

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 • fax (800) 880-9445
www.wyndhamworldwide.com

January 15, 2013

<u>VIA CERTIFIED MAIL</u>

Ms. Kathy Taylor
YOUNG BROTHERS PROPERTIES INC.
PO BOX 3806
Florence, SC 29502-3806

7001 0360 0003 3357 3878

RE:   NOTICE OF MONETARY DEFAULT RELATING TO RAMADA® UNIT #15122-
     80144-1 LOCATED IN FLORENCE, SC (THE "FACILITY")

Dear Ms. Taylor:

I write on behalf of RAMADA WORLDWIDE INC. ("we," "our," or "us") regarding the
License Agreement dated August 10, 2004, between YOUNG BROTHERS PROPERTIES INC.
("you" or "your") and us (the "Agreement"). We write to give you formal notice that you are in
default under the Agreement.

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to
your operation of the Facility under the System. Our Financial Services Department advises us
that as of January 10, 2013, your account is past due in the amount of **$72,301.62**. We have
enclosed an itemized statement detailing the fees past due. Under the Agreement, you have ten
(10) days to pay this amount to us in order to cure your default. If you do not pay this amount
within the time permitted, we reserve all rights under the terms of the Agreement including but
not limited to termination of the Agreement and your right to operate in the Ramada System.

This Notice does not modify, replace, or affect any default under the Agreement, or any other
default and termination notices, if any, from us or any of our affiliates regarding the Facility. We
also reserve the right to take any interim steps permitted under the Agreement because of your
default. By copy of this letter, we are also informing your guarantors of your default.



(Page 2 of 9)

We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please call Operations Support Desk at (800) 221-7312.

Sincerely yours,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:     Edward L. Young (Guarantor)
        Harold G. Coker (Guarantor)
        Mark Young
        Mona Christian

(Page 3 of 9)

Report Date : 10-JAN-13

ITEMIZED STATEMENT
------------------

As of Date (DD-MMM-YYYY): 10-JAN-2013
Customer No              : 15122-80144-01-RAM
Category Set             :
Category Group           :
Group No                 :
Bankruptcy               : No Bankruptcy Sites
Disputed                 : No
Finance Charges Included : Yes

Page 1 of 6

Report Date : 10-JAN-13

ITEMIZED STATEMENT
------------------

Customer No :  15122-80144-01-RAM
Address :      PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date:    10-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| FEB-2012 | 30666012 | 21-FEB-12 | CIT-PAYOFF | | 10000.63 | 0.00 | 1259.73 | 11260.36 |
| | | | | Sub Total | 10000.63 | 0.00 | 1259.73 | 11260.36 |
| MAR-2012 | 42099101 | 31-MAR-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 28.95 | 281.66 |
| | 42100992 | 31-MAR-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 19.79 | 192.59 |

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=1601888816                1/10/2013

(Page 4 of 9)

Page 2 of 7

|  | 42100406 | 31-MAR-12 | 5052A-HARDWARE | 90.30 | 7.22 | 11.15 | 108.67 |
|---|---|---|---|---|---|---|---|
|  |  | Sub Total | | 484.29 | 38.74 | 59.89 | 582.92 |
| APR-2012 | 30678928 | 06-APR-12 | CPS REACTIVATIO | 500.00 | 0.00 | 55.75 | 555.75 |
|  | 25065630 | 22-APR-12 | WYNREWARDS 5% | 1053.37 | 0.00 | 109.03 | 1162.40 |
|  | 42128243 | 30-APR-12 | 5052A-HARDWARE | 90.30 | 7.22 | 9.69 | 107.21 |
|  | 42127979 | 30-APR-12 | 5066A-DIRECWAY | 160.00 | 12.80 | 17.19 | 189.99 |
|  | 42152206 | 30-APR-12 | Actual-1230A-RI | 3839.15 | 0.00 | 382.01 | 4221.16 |
|  | 42150744 | 30-APR-12 | Actual-1000A-RO | 3412.58 | 0.00 | 339.54 | 3752.12 |
|  | 42127956 | 30-APR-12 | 5022A-BRILLIANT | 234.00 | 18.72 | 25.15 | 277.87 |
|  |  | Sub Total | | 9289.40 | 38.74 | 938.36 | 10266.50 |
| MAY-2012 | 30688339 | 16-MAY-12 | 04/12 INC SIGN | (107.14) | 0.00 | 0.00 | (107.14) |
|  | 25067036 | 22-MAY-12 | WYNREWARDS CRDT | (164.63) | 0.00 | 0.00 | (164.63) |
|  | 25066861 | 22-MAY-12 | WYNREWARDS 5% | 929.94 | 0.00 | 82.29 | 1012.23 |
|  | TM0294008 | 25-MAY-12 | MEMBER BENEFIT | 38.34 | 0.00 | 3.33 | 41.67 |
|  | TA0294008 | 25-MAY-12 | T/A COMMISSIONS | 32.76 | 0.00 | 2.85 | 35.61 |
|  | 1294008 | 25-MAY-12 | GDS & INTERNET | 195.80 | 0.00 | 17.03 | 212.83 |
|  | TC0294008 | 25-MAY-12 | T/A COMM SERVIC | 5.33 | 0.00 | 0.46 | 5.79 |
|  | 42177696 | 31-MAY-12 | Actual-1000A-RO | 2774.53 | 0.00 | 233.08 | 3007.61 |
|  | 42179781 | 31-MAY-12 | Actual-1230A-RI | 3121.35 | 0.00 | 262.19 | 3383.54 |
|  | 42158772 | 31-MAY-12 | 5066A-DIRECWAY | 160.00 | 12.80 | 14.52 | 187.32 |
|  | 42159865 | 31-MAY-12 | 5022A-BRILLIANT | 233.99 | 18.72 | 21.24 | 273.95 |
|  | 42157274 | 31-MAY-12 | 5099A-RAMADA CI | (107.14) | 0.00 | 0.00 | (107.14) |

Page 2 of 6

Report Date : 10-JAN-13

ITEMIZED STATEMENT
------------------

Customer No :   15122-80144-01-RAM
Address :       PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date:     10-JAN-2013

(Page 5 of 9)

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 7113.13 | 31.52 | 636.99 | 7781.64 |
| JUN-2012 | 25068076 | 22-JUN-12 | WYNREWARDS CRDT | | (220.57) | 0.00 | 0.00 | (220.57) |
| | 25067747 | 22-JUN-12 | WYNREWARDS 5% | | 1270.24 | 0.00 | 92.72 | 1362.96 |
| | 1300139 | 26-JUN-12 | GDS & INTERNET | | 413.65 | 0.00 | 29.36 | 443.01 |
| | 7R0300139 | 26-JUN-12 | TMC / CONSORTIA | | 100.25 | 0.00 | 7.10 | 107.35 |
| | TM0300139 | 26-JUN-12 | MEMBER BENEFIT | | 26.72 | 0.00 | 1.89 | 28.61 |
| | TA0300139 | 26-JUN-12 | T/A COMMISSIONS | | 561.38 | 0.00 | 39.85 | 601.23 |
| | TC0300139 | 26-JUN-12 | T/A COMM SERVIC | | 44.39 | 0.00 | 3.16 | 47.55 |
| | 42193379 | 30-JUN-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 11.92 | 184.72 |
| | 42191055 | 30-JUN-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42210004 | 30-JUN-12 | Actual-1230A-RI | | 2550.62 | 0.00 | 175.98 | 2726.60 |
| | 42208903 | 30-JUN-12 | Actual-1000A-RO | | 2267.22 | 0.00 | 156.44 | 2423.66 |
| | 42193607 | 30-JUN-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 17.44 | 270.15 |
| | | | | Sub Total | 7300.75 | 31.52 | 535.86 | 7868.13 |
| JUL-2012 | 25068943 | 22-JUL-12 | WYNREWARDS CRDT | | (118.49) | 0.00 | 0.00 | (118.49) |
| | 25068804 | 22-JUL-12 | WYNREWARDS 5% | | 1607.65 | 0.00 | 93.24 | 1700.89 |
| | 1306394 | 25-JUL-12 | GDS & INTERNET | | 343.25 | 0.00 | 19.40 | 362.65 |
| | TC0306394 | 25-JUL-12 | T/A COMM SERVIC | | 9.82 | 0.00 | 0.56 | 10.38 |
| | TA0306394 | 25-JUL-12 | T/A COMMISSIONS | | 54.56 | 0.00 | 3.09 | 57.65 |
| | TM0306394 | 25-JUL-12 | MEMBER BENEFIT | | 76.98 | 0.00 | 4.34 | 81.22 |
| | TR0306394 | 25-JUL-12 | TMC / CONSORTIA | | 14.72 | 0.00 | 0.83 | 15.55 |
| | 42225958 | 30-JUL-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42227439 | 30-JUL-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 13.65 | 266.36 |
| | 42227100 | 30-JUL-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 9.33 | 182.13 |
| | 42244465 | 31-JUL-12 | Actual-1230A-RI | | 2582.25 | 0.00 | 138.14 | 2720.39 |
| | 42243675 | 31-JUL-12 | Actual-1000A-RO | | 2295.34 | 0.00 | 122.80 | 2418.14 |
| | | | | Sub Total | 7152.83 | 31.52 | 405.38 | 7589.73 |

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=1601888816

1/10/2013

(Page 6 of 9)

Report Date : 10-JAN-13

ITEMIZED STATEMENT
--------------------

Customer No :   Y5122-B0144-01-RAM
Address :       PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date:     10-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|-------------|-------------|---------|---------|-----|---------------|-------|
| AUG-2012 | 25069066 | 22-AUG-12 | WYNREWARDS CRDT | | (61.51) | 0.00 | 0.00 | (61.51) |
| | 25069512 | 22-AUG-12 | WYNREWARDS 5% | | 1218.99 | 0.00 | 51.80 | 1270.79 |
| | TM0312762 | 24-AUG-12 | TMC / CONSORTIA | | 9.10 | 0.00 | 0.38 | 9.48 |
| | TM0312762 | 24-AUG-12 | MEMBER BENEFIT | | 113.34 | 0.00 | 4.71 | 118.05 |
| | TC0312762 | 24-AUG-12 | T/A COMM SERVIC | | 26.03 | 0.00 | 1.08 | 27.11 |
| | 1312762 | 24-AUG-12 | GDS & INTERNET | | 588.00 | 0.00 | 24.40 | 612.40 |
| | TA0312762 | 24-AUG-12 | T/A COMMISSIONS | | 95.42 | 0.00 | 3.96 | 99.38 |
| | 42274232 | 31-AUG-12 | Actual-1230A-RI | | 1958.35 | 0.00 | 74.42 | 2032.77 |
| | 42254523 | 31-AUG-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 6.57 | 179.37 |
| | 42252809 | 31-AUG-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42273450 | 31-AUG-12 | Actual-1000A-RO | | 1740.76 | 0.00 | 66.15 | 1806.91 |
| | 42253131 | 31-AUG-12 | 5022A-BRILLIANT | | 233.99 | 13.72 | 9.61 | 262.32 |
| | | | | Sub Total | 5975.33 | 31.52 | 243.08 | 6249.93 |
| SEP-2012 | 30715454 | 10-SEP-12 | O/A REINSPECTIO | | 1900.00 | 0.00 | 62.70 | 1962.70 |
| | 30716085 | 10-SEP-12 | 2013 Ramada RMA | | 1800.00 | 0.00 | 0.00 | 1800.00 |
| | 25070082 | 22-SEP-12 | WYNREWARDS 5% | | 910.41 | 0.00 | 24.58 | 934.99 |
| | TM0319544 | 25-SEP-12 | MEMBER BENEFIT | | 93.60 | 0.00 | 1.36 | 94.96 |
| | TA0319544 | 25-SEP-12 | T/A COMMISSIONS | | 65.14 | 0.00 | 1.66 | 66.80 |
| | 1319544 | 25-SEP-12 | GDS & INTERNET | | 293.50 | 0.00 | 7.48 | 300.98 |
| | TC0319544 | 25-SEP-12 | T/A COMM SERVIC | | 9.07 | 0.00 | 0.24 | 9.31 |
| | 42288750 | 30-SEP-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 3.97 | 176.77 |
| | 42289030 | 30-SEP-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 5.81 | 258.52 |
| | 42303887 | 30-SEP-12 | Actual-1230A-RI | | 1315.12 | 0.00 | 30.25 | 1345.37 |
| | 42286886 | 30-SEP-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42300925 | 30-SEP-12 | Actual-1000A-RO | | 1169.00 | 0.00 | 26.89 | 1195.89 |
| | | | | Sub Total | 7802.69 | 31.52 | 164.94 | 7999.15 |

| | | | | | ============= | ============ | ============= | ============= |
|---|---|---|---|---|---|---|---|---|
| OCT-2012 | 30723833 | 02-OCT-12 | ONLINE LRNG LIB | | 50.00 | 0.00 | 1.10 | 51.10 |
| | 25071478 | 22-OCT-12 | WYNREWARDS 5% | | 459.17 | 0.00 | 5.51 | 464.68 |
| | TM0325613 | 23-OCT-12 | MEMBER BENEFIT | | 24.80 | 0.00 | 0.22 | 25.02 |
| | TR0325613 | 28-OCT-12 | TMC / CONSORTIA | | 3.36 | 0.00 | 0.03 | 3.39 |
| | TC0325613 | 28-OCT-12 | T/A COMM SERVIC | | 5.64 | 0.00 | 0.05 | 5.69 |

Page 4 of 6

Report Date : 10-JAN-13

ITEMIZED STATEMENT
------------------

Customer No :  15122-80144-01-RAM
Address :      PO BOX 3806,FLORENCE,SC,29502-3806,US
As of Date:    10-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | 1325613 | 28-OCT-12 | GDS & INTERNET | | 160.25 | 0.00 | 1.44 | 161.69 |
| | TA0325613 | 28-OCT-12 | T/A COMMISSIONS | | 50.92 | 0.00 | 0.46 | 51.38 |
| | 42316947 | 31-OCT-12 | 5066A-DIRECWAY | - | 160.00 | 12.80 | 1.30 | 174.10 |
| | 42337062 | 31-OCT-12 | Actual-1230A-RE | | 2313.67 | 0.00 | 17.39 | 2336.06 |
| | 42316158 | 31-OCT-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42314735 | 31-OCT-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 1.90 | 254.61 |
| | 42337331 | 31-OCT-12 | Actual-1000A-RO | | 2061.04 | 0.00 | 15.46 | 2076.50 |
| | | | | | ============ | ============ | ============= | ============= |
| | | | | Sub Total | 5420.70 | 31.52 | 44.86 | 5497.08 |
| | | | | | ============ | ============ | ============= | ============= |
| | | | | | | | | |
| NOV-2012 | TM0332667 | 19-NOV-12 | MEMBER BENEFIT | | 9.90 | 0.00 | 0.00 | 9.90 |
| | 1332667 | 19-NOV-12 | GDS & INTERNET | | 142.50 | 0.00 | 0.00 | 142.50 |
| | TC0332667 | 19-NOV-12 | T/A COMM SERVIC | | 4.86 | 0.00 | 0.00 | 4.86 |
| | TA0332667 | 19-NOV-12 | T/A COMMISSIONS | | 52.94 | 0.00 | 0.00 | 52.94 |
| | 25071680 | 22-NOV-12 | WYNREWARDS 5% | | 575.12 | 0.00 | 0.00 | 575.12 |
| | TM0337638 | 26-NOV-12 | MEMBER BENEFIT | | 75.39 | 0.00 | 0.00 | 75.39 |
| | TA0337638 | 26-NOV-12 | T/A COMMISSIONS | | 55.23 | 0.00 | 0.00 | 55.23 |
| | 42349916 | 30-NOV-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 0.00 | 172.80 |

(Page 8 of 9)

Page 6 of 7

| | 42368262 | 30-NOV-12 | Actual-1000A-RO | 1223.59 | 0.00 | 0.00 | 1223.59 |
| | 42350634 | 30-NOV-12 | 5099A-RAMADA CI | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42363681 | 30-NOV-12 | Actual-1230A-RI | 1376.54 | 0.00 | 0.00 | 1376.54 |
| | 42349072 | 30-NOV-12 | 5022A-BRILLIANT | 233.99 | 18.72 | 0.00 | 252.71 |

Sub Total 3302.92 31.52 0.00 3834.44

| DEC-2012 | 1345388 | 19-DEC-12 | GDS & INTERNET | 118.50 | 0.00 | 0.00 | 118.50 |
| | 7C0345388 | 19-DEC-12 | T/A COMM SERVIC | 3.85 | 0.00 | 0.00 | 3.85 |
| | TM0345388 | 19-DEC-12 | MEMBER BENEFIT | 23.20 | 0.00 | 0.00 | 23.20 |
| | TA0345388 | 19-DEC-12 | T/A COMMISSIONS | 29.22 | 0.00 | 0.00 | 29.22 |
| | 25073460 | 22-DEC-12 | WYNREWARDS 5% | 540.50 | 0.00 | 0.00 | 540.50 |
| | 42350142 | 31-DEC-12 | 5066A-DIRECWAY | 160.00 | 12.80 | 0.00 | 172.80 |
| | 42379456 | 31-DEC-12 | 5022A-BRILLIANT | 233.99 | 18.72 | 0.00 | 252.71 |
| | 42397849 | 31-DEC-12 | Accrual-1000A-R | 1100.28 | 0.00 | 0.00 | 1100.28 |
| | 42379344 | 31-DEC-12 | 5099A-RAMADA CI | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42398949 | 31-DEC-12 | Accrual-1230A-R | 1237.82 | 0.00 | 0.00 | 1237.32 |

Page 5 of 6

Report Date : 10-JAN-13

ITEMIZED STATEMENT
------------------

Customer No : 1512Z-30144-01-RAM
Address : PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date: 10-JAN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|

Sub Total 3340.22 31.52 0.00 3371.74

Grand Total 67682.89 329.64 4289.09 72301.62

(Page 9 of 9)

------------ ------------ ------------ ------------

Requested By: Yelena Danishevsky

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

········ END OF REPORT ········

Page 6 of 6

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=1601888816

1/16/2013

# EXHIBIT D

(Page 1 of 9)



**WYNDHAM**

HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 • fax (800) 880-9445
www.wyndhamworldwide.com

February 15, 2013

**VIA CERTIFIED MAIL**

Ms. Kathy Taylor
YOUNG BROTHERS PROPERTIES INC.
PO BOX 3806
Florence, SC 29502-3806

7001 0360 0003 3363 169

RE:   NOTICE OF CONTINUING MONETARY DEFAULT RELATING TO RAMADA® UNIT #15122-80144-1 LOCATED IN FLORENCE, SC (THE "FACILITY")

Dear Ms. Taylor:

I write on behalf of RAMADA WORLDWIDE INC. ("we," "our," or "us") regarding the License Agreement dated August 10, 2004, between YOUNG BROTHERS PROPERTIES INC. ("you" or "your") and us (the "Agreement"). You will recall that, on January 15, 2013, we sent you a default notice because of your failure to meet your financial obligations to us. That notice required you to cure the default within ten (10) days. However, you did not cure your default within the time permitted.

Your failure to cure your default within the time permitted also allows us to terminate the Agreement (including your License to operate the Facility as a Ramada facility) immediately upon written notice to you. We would prefer, however, to keep our affiliation with you. Accordingly, we will allow you an additional period of ten (10) days from the date of this letter to cure your default. Please be advised that as of February 11, 2013, your account is now past due in the amount of **$76,353.43**. We have enclosed the statement detailing the fees past due. Please understand that we are not waiving this default or any other default under the Agreement by extending your cure period. We are simply giving you a final opportunity to avoid termination. By copy of this letter, we are also informing your guarantors of your default.

**WYNDHAM**
HOTEL GROUP

                 

(Page 2 of 9)

We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please call Operations Support Desk at (800) 221-7312.

Sincerely yours,

Suzanne Fennimore
Senior Director
Contracts Compliance, Legal

Enclosure

cc:     Edward L. Young (Guarantor)
        Harold G. Coker (Guarantor)
        Mark Young
        Mona Christian

(Page 3 of 9)

Report Date : 11-FEB-13

ITEMIZED STATEMENT
------------------

As of Date (DD-MMM-YYYY): 11-FEB-2013
Customer No          : 15122-30144-01-RAM
Category Set         :
Category Group       :
Group No             :
Bankruptcy           : No Bankruptcy Sites
Disputed             : No
Finance Charges Included: Yes

Page 1 of 6

Report Date : 11-FEB-13

ITEMIZED STATEMENT
------------------

Customer No : 15122-30144-01-RAM
Address :     PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date:   11-FEB-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| FEB-2012 | 30666012 | 21-FEB-12 | CIT PAYOFF | | 10000.63 | 0.00 | 1392.69 | 11393.32 |
| | | | Sub Total | | 10000.63 | 0.00 | 1392.69 | 11393.32 |
| MAR-2012 | 42099101 | 31-MAR-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 32.81 | 285.52 |
| | 42100982 | 31-MAR-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 22.43 | 195.23 |

(Page 4 of 9)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 42100406 | 31-MAR-12 | 5052A-HARDWARE | 90.30 | 7.22 | 12.64 | 110.16 |
| | | | Sub Total | 484.29 | 38.74 | 67.88 | 590.91 |
| APR-2012 | 30678929 | 06-APR-12 | CRS REACTIVATIO | 500.00 | 0.00 | 63.38 | 563.38 |
| | 25065630 | 22-APR-12 | WYNREWARDS 5% | 1053.37 | 0.00 | 125.36 | 1178.73 |
| | 42128243 | 30-APR-12 | 5052A-HARDWARE | 90.30 | 7.22 | 11.20 | 108.72 |
| | 42127979 | 30-APR-12 | 5066A-DIRECWAY | 160.00 | 12.80 | 19.87 | 192.67 |
| | 42152206 | 30-APR-12 | Actual-1230A-RI | 3839.15 | 0.00 | 441.52 | 4280.67 |
| | 42150744 | 30-APR-12 | Actual-1000A-RO | 3412.58 | 0.00 | 392.43 | 3905.01 |
| | 42127956 | 30-APR-12 | 5022A-BRILLIANT | 234.00 | 18.72 | 29.01 | 281.73 |
| | | | Sub Total | 9289.40 | 38.74 | 1082.77 | 10419.91 |
| MAY-2012 | 30688339 | 16-MAY-12 | 04/12 INC SIGN | (107.14) | 0.00 | 0.00 | (107.14) |
| | 25067036 | 22-MAY-12 | WYNREWARDS CRDT | (164.63) | 0.00 | 0.00 | (164.63) |
| | 25066861 | 22-MAY-12 | WYNREWARDS 5% | 929.94 | 0.00 | 96.70 | 1026.64 |
| | TH0294008 | 25-MAY-12 | MEMBER BENEFIT | 38.34 | 0.00 | 3.92 | 42.26 |
| | TH0294008 | 25-MAY-12 | T/A COMMISSIONS | 32.76 | 0.00 | 3.35 | 36.11 |
| | 1294006 | 25-MAY-12 | ODS & INTERNET | 195.80 | 0.00 | 20.06 | 215.86 |
| | TC0294008 | 25-MAY-12 | T/A COMM SERVIC | 5.33 | 0.00 | 0.54 | 5.87 |
| | 42177696 | 21-MAY-12 | Actual-1000A-RO | 2774.53 | 0.00 | 276.09 | 3050.62 |
| | 42179781 | 31-MAY-12 | Actual-1230A-RI | 3121.35 | 0.00 | 310.57 | 3431.92 |
| | 42158772 | 31-MAY-12 | 5066A-DIRECWAY | 160.00 | 12.80 | 17.20 | 190.00 |
| | 42159865 | 31-MAY-12 | 5022A-BRILLIANT | 233.99 | 18.72 | 25.16 | 277.87 |
| | 42157274 | 31-MAY-12 | 5099A-RAMADA CI | (107.14) | 0.00 | 0.00 | (107.14) |

Page 2 of 6

Report Date : 11-FEB-13

ITEMIZED STATEMENT
-------------------

Customer No :  15122-30144-01-RAM
Address :      PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date:    11-FEB-2013

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FND/WRR.exe?temp_id=3928367396

2/11/2013

(Page 5 of 9)

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 7113.13 | 31.52 | 753.59 | 7898.24 |
| JUN-2012 | 25068076 | 22-JUN-12 | WYNREWARDS CRDT | | (220.57) | 0.00 | 0.00 | (220.57) |
| | 25067747 | 22-JUN-12 | WYNREWARDS 5% | | 1270.24 | 0.00 | 35.77 | 1382.65 |
| | 1300139 | 26-JUN-12 | GDS & INTERNET | | 413.65 | 0.00 | 35.77 | 449.42 |
| | TR0300139 | 26-JUN-12 | TMC / CONSORTIA | | 100.25 | 0.00 | 8.65 | 108.90 |
| | TM0300139 | 26-JUN-12 | MEMBER BENEFIT | | 26.72 | 0.00 | 2.30 | 29.02 |
| | TA0300139 | 26-JUN-12 | T/A COMMISSIONS | | 561.38 | 0.00 | 48.55 | 609.93 |
| | TC0300139 | 26-JUN-12 | T/A COMM SERVIC | | 44.39 | 0.00 | 3.85 | 48.24 |
| | 42193379 | 30-JUN-12 | 5066A-DIRECWAY | | 160.00 | 0.00 | 14.80 | 137.40 |
| | 42191055 | 30-JUN-12 | 5099A-RAMADA CI | | 12.80 | 0.00 | 14.80 | 137.40 |
| | 42210004 | 30-JUN-12 | Actual-1230A-RI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42208903 | 30-JUN-12 | Actual-1000A-RO | | 2550.62 | 0.00 | 215.51 | 2766.13 |
| | 42193607 | 30-JUN-12 | 5022A-BRILLIANT | | 2267.22 | 0.00 | 191.58 | 2458.80 |
| | | | | | 233.99 | 18.72 | 21.36 | 274.07 |
| | | | | Sub Total | 7300.75 | 31.52 | 654.58 | 7986.85 |
| JUL-2012 | 25068943 | 22-JUL-12 | WYNREWARDS CRDT | | (118.49) | 0.00 | 0.00 | (118.49) |
| | 25068804 | 22-JUL-12 | WYNREWARDS 5% | | 1607.65 | 0.00 | 118.16 | 1725.81 |
| | 1306394 | 25-JUL-12 | GDS & INTERNET | | 343.25 | 0.00 | 24.72 | 367.97 |
| | TC0306394 | 25-JUL-12 | T/A COMM SERVIC | | 9.82 | 0.00 | 0.71 | 10.53 |
| | TA0306394 | 25-JUL-12 | T/A COMMISSIONS | | 54.56 | 0.00 | 3.94 | 58.50 |
| | TR0306394 | 25-JUL-12 | TMC / CONSORTIA | | 76.88 | 0.00 | 5.53 | 82.41 |
| | 42225958 | 30-JUL-12 | 5099A-RAMADA CI | | 14.72 | 0.00 | 1.06 | 15.78 |
| | 42227439 | 30-JUL-12 | 5022A-BRILLIANT | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42227150 | 30-JUL-12 | 5066A-DIRECWAY | | 233.99 | 18.72 | 17.57 | 270.28 |
| | 42244465 | 31-JUL-12 | Actual-1230A-RI | | 160.00 | 12.80 | 12.01 | 184.81 |
| | 42243575 | 31-JUL-12 | Actual-1000A-RO | | 2582.25 | 0.00 | 178.16 | 2760.41 |
| | | | | | 2295.34 | 0.00 | 158.38 | 2453.72 |
| | | | | Sub Total | 7152.93 | 31.52 | 520.24 | 7704.69 |

Page 3 of 6

2/11/2013

(Page 6 of 9)

Report Date : 11-FEB-13

ITEMIZED STATEMENT
----------------------

Customer No :  15122-80144-01-RAM
Address    :  PO BOX 3806,FLORENCE,SC,29502-3806,US
As of Date:  11-FEB-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| AUG-2012 | 25069066  | 22-AUG-12    | WYNREWARDS CRDT |     | (61.51)  | 0.00  | 0.00   | (61.51)  |
|          | 25069512  | 22-AUG-12    | WYNREWARDS 5%   |     | 1218.99  | 0.00  | 70.69  | 1289.68  |
|          | TR0312762 | 24-AUG-12    | TNC / CONSORTIA |     | 9.10     | 0.00  | 0.52   | 9.62     |
|          | TM0312762 | 24-AUG-12    | MEMBER BENEFIT  |     | 113.34   | 0.00  | 6.47   | 119.81   |
|          | TC0312762 | 24-AUG-12    | T/A COMM SERVIC |     | 26.03    | 0.00  | 1.48   | 27.51    |
|          | 1312762   | 24-AUG-12    | GDS & INTERNET  |     | 588.00   | 0.00  | 33.51  | 621.51   |
|          | TR0312762 | 24-AUG-12    | T/A COMMISSIONS |     | 95.42    | 0.00  | 5.44   | 100.86   |
|          | 42274232  | 31-AUG-12    | Actual-1230A-RI |     | 1958.35  | 0.00  | 104.77 | 2063.12  |
|          | 42254523  | 31-AUG-12    | 5066A-DIRECWAY  |     | 160.00   | 0.00  | 9.25   | 132.05   |
|          | 42252809  | 31-AUG-12    | 5099A-RAMADA CI |     | (107.14) | 0.00  | 0.00   | (107.14) |
|          | 42273450  | 31-AUG-12    | Actual-1000A-RO |     | 1740.76  | 0.00  | 93.13  | 1833.89  |
|          | 42253131  | 31-AUG-12    | 5022A-BRILLIANT |     | 233.99   | 18.72 | 13.53  | 266.24   |

|          |           |              | Sub Total       |     | 5975.33  | 31.52 | 338.79 | 6345.64  |

| SEP-2012 | 30715454  | 10-SEP-12    | O/A REINSPECTIO |     | 1900.00  | 0.00  | 92.15  | 1992.15  |
|          | 30716085  | 10-SEP-12    | 2013 Ramada RMA |     | 1800.00  | 0.00  | 0.00   | 1800.00  |
|          | TM0319544 | 22-SEP-12    | WYNREWARDS 5%   |     | 910.41   | 0.00  | 38.69  | 949.10   |
|          | TM0319544 | 25-SEP-12    | MEMBER BENEFIT  |     | 53.60    | 0.00  | 2.19   | 55.79    |
|          | 1319544   | 25-SEP-12    | GDS & INTERNET  |     | 65.14    | 0.00  | 2.67   | 67.81    |
|          | TC0319544 | 25-SEP-12    | T/A COMM SERVIC |     | 293.50   | 0.00  | 12.03  | 305.53   |
|          | 42288780  | 30-SEP-12    | 5066A-DIRECWAY  |     | 9.07     | 0.00  | 0.38   | 9.45     |
|          | 42289030  | 30-SEP-12    | 5022A-BRILLIANT |     | 160.00   | 12.80 | 6.65   | 179.45   |
|          | 42303887  | 30-SEP-12    | Actual-1230A-RI |     | 233.99   | 18.72 | 9.73   | 262.44   |
|          | 42286886  | 30-SEP-12    | 5099A-RAMADA CI |     | 1315.12  | 0.00  | 50.63  | 1365.75  |
|          | 42300925  | 30-SEP-12    | Actual-1000A-RO |     | (107.14) | 0.00  | 0.00   | (107.14) |
|          |           |              |                 |     | 1169.00  | 0.00  | 45.01  | 1214.01  |

|          |           |              | Sub Total       |     | 7802.69  | 31.52 | 260.13 | 8094.34  |

(Page 7 of 9)

| OCT-2012 | 30723833 | 02-OCT-12 | ONLINE LRNG LIB | 50.00 | 0.00 | 1.88 | 51.88 |
| | 25071478 | 22-OCT-12 | WYNREWARDS 5% | 459.17 | 0.00 | 12.63 | 471.80 |
| | TM0325613 | 28-OCT-12 | MEMBER BENEFIT | 24.80 | 0.00 | 0.60 | 25.40 |
| | TR0325613 | 28-OCT-12 | TMC / CONSORTIA | 3.36 | 0.00 | 0.08 | 3.44 |
| | TC0325613 | 28-OCT-12 | T/A COMM SERVIC | 5.64 | 0.00 | 0.14 | 5.78 |

Page 4 of 6

Report Date : 11-FEB-13

ITEMIZED STATEMENT
-------------------

Customer No : 15122-80144-01-RAM
Address : PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date: 11-FEB-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | Finance Charges | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1325613 | 28-OCT-12 | GDS & INTERNET | | 160.25 | 0.00 | 3.92 | 164.17 |
| | TA0325613 | 28-OCT-12 | T/A COMMISSIONS | | 50.92 | 0.00 | 1.25 | 52.17 |
| | 42316947 | 31-OCT-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 3.99 | 176.79 |
| | 42337062 | 31-OCT-12 | Actual-1230A-RI | | 2318.67 | 0.00 | 53.33 | 2372.00 |
| | 42316159 | 31-OCT-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42314735 | 31-OCT-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 5.82 | 258.53 |
| | 42337331 | 31-OCT-12 | Actual-1000A-RO | | 2061.04 | 0.00 | 47.41 | 2108.45 |
| | | | | Sub Total | 5420.70 | 31.52 | 131.04 | 5583.26 |
| NOV-2012 | TC0332667 | 19-NOV-12 | T/A COMM SERVIC | | 4.86 | 0.00 | 0.07 | 4.93 |
| | 1332667 | 19-NOV-12 | GDS & INTERNET | | 142.50 | 0.00 | 1.92 | 144.42 |
| | TM0332667 | 19-NOV-12 | MEMBER BENEFIT | | 9.90 | 0.00 | 0.13 | 10.03 |
| | TA0332667 | 19-NOV-12 | T/A COMMISSIONS | | 52.94 | 0.00 | 0.71 | 53.65 |
| | 25071680 | 22-NOV-12 | WYNREWARDS 5% | | 575.12 | 0.00 | 6.90 | 582.02 |
| | TM0337618 | 26-NOV-12 | T/A COMMISSIONS | | 55.23 | 0.00 | 0.55 | 55.78 |
| | TM0337618 | 26-NOV-12 | MEMBER BENEFIT | | 75.39 | 0.00 | 0.75 | 76.14 |
| | 42350634 | 30-NOV-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |

(Page 8 of 9)

| | | | | | | |
|---|---|---|---|---|---|---|
| 42349072 | 30-NOV-12 | 5022A-BRILLIANT | 233.99 | 18.72 | 2.02 | 254.73 |
| 42363681 | 30-NOV-12 | Actual-1230A-RI | 1376.54 | 0.00 | 11.01 | 1387.55 |
| 42368262 | 30-NOV-12 | Actual-1000A-RO | 1223.59 | 0.00 | 9.79 | 1233.38 |
| 42549916 | 30-NOV-12 | 5066A-DIRECWAY | 160.00 | 12.80 | 1.38 | 174.18 |

Sub Total 3802.92  31.52  35.23  3869.67

| DEC-2012 | 1345388 | 19-DEC-12 | GDS & INTERNET | 118.50 | 0.00 | 0.00 | 118.50 |
|---|---|---|---|---|---|---|---|
| | TC0345388 | 19-DEC-12 | T/A COMM SERVIC | 3.85 | 0.00 | 0.00 | 3.85 |
| | TA0345388 | 19-DEC-12 | T/A COMMISSIONS | 29.22 | 0.00 | 0.00 | 29.22 |
| | TM0345388 | 19-DEC-12 | MEMBER BENEFIT | 23.20 | 0.00 | 0.00 | 23.20 |
| | 25073460 | 22-DEC-12 | WYNREWARDS 5% | 540.50 | 0.00 | 0.00 | 540.50 |
| | 42398849 | 31-DEC-12 | Accrual-1230A-R | 1237.82 | 0.00 | 0.00 | 1237.82 |
| | 42397849 | 31-DEC-12 | Accrual-1000A-R | 1100.28 | 0.00 | 0.00 | 1100.28 |
| | 42379456 | 31-DEC-12 | 5022A-BRILLIANT | 233.99 | 18.72 | 0.00 | 252.71 |
| | 42379344 | 31-DEC-12 | 5099A-RAMADA CI | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42380142 | 31-DEC-12 | 5066A-DIRECWAY | 160.00 | 12.80 | 0.00 | 172.80 |

Page 5 of 6

Report Date : 11-FEB-13

ITEMIZED STATEMENT

Customer No : 15122-80144-01-RAM
Address : PO BOX 3806, FLORENCE, SC, 29502-3606, US
As of Date: 11-FEB-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | Finance Charges | Total |
|---|---|---|---|---|---|---|---|---|

Sub Total  3340.22  31.52  0.00  3371.74

| JAN-2013 | 25073900 | 22-JAN-13 | WYNREWARDS 5% | | 1064.38 | 0.00 | 0.00 | 1064.38 |
|---|---|---|---|---|---|---|---|---|
| | 1351823 | 25-JAN-13 | GDS & INTERNET | | 10.50 | 0.00 | 0.00 | 10.50 |
| | 42427667 | 31-JAN-13 | Accrual-1000A-R | | 805.04 | 0.00 | 0.00 | 805.04 |

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=3928367396

2/11/2013

(Page 9 of 9)

| | | | | | | |
|---|---|---|---|---|---|---|
| 42430324 | 31-JAN-13 | Accrual-1230A-R | 905.67 | 0.00 | 0.00 | 905.67 |
| 42412056 | 31-JAN-13 | 3022A-BRILLIANT | 233.99 | 18.72 | 0.00 | 252.71 |
| 42411731 | 31-JAN-13 | 5066A-DIRECWAY | 160.00 | 12.80 | 0.00 | 172.80 |
| 42411060 | 31-JAN-13 | 5099A-RAMADA C1 | (107.14) | 0.00 | 0.00 | (107.14) |
| | | Sub Total | 3072.44 | 31.52 | 0.00 | 3103.96 |
| | | Grand Total | 70755.33 | 361.16 | 5236.94 | 76353.43 |

Requested By: Yelena Danishevsky

· Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

······· END OF REPORT ·······

# EXHIBIT E

(Page 1 of 10)



## WYNDHAM
### HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 ● fax (800) 880-9445
www.wyndhamworldwide.com

June 17, 2013

**VIA CERTIFIED MAIL**

Ms. Kathy Taylor
Young Brothers Properties Inc.
P.O. Box 3806
Florence, SC  29502-3806

Re:   **NOTICE OF CONTINUING MONETARY DEFAULT** relating to Ramada® System Unit #15122-80144-01 located in Florence, SC (the "Facility")

Dear Ms. Taylor:

I write on behalf of Ramada Worldwide Inc., successor in interest to Ramada Franchise Systems, Inc., ("we," "us," or "our") regarding the Franchise Agreement dated August 10, 2004, as amended, between Young Brothers Properties Inc., ("you" or "your") and us (the "Agreement"). You will recall that, on January 15, 2013, and February 15, 2013, we sent you default notices because of your failure to meet your financial obligations to us. The notices required you to cure the default within ten (10) days. However, you did not cure your defaults within the time permitted.

Your failure to cure your defaults within the time permitted also allows us to terminate the Agreement immediately upon written notice to you. We would prefer, however, to keep our affiliation with you. Accordingly, we will allow you an additional period of ten (10) days from the date of this letter to cure your default. Please be advised that as of June 17, 2013, your account is now past due in the amount of $106,011.94. We have enclosed an itemized statement detailing the fees past due. Please understand that we are not waiving this default or any other default under the Agreement by extending your cure period. We are simply giving you a final opportunity to avoid termination. By copy of this Notice, we are also informing your Guarantors of your default.

We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please contact Operations Support Desk at (888) 575-4822.

Sincerely yours,

Suzanne Fenimore
Senior Director
Contracts Compliance

cc:   Edward L. Young (Guarantor)
      Harold G. Coker (Guarantor)
      Kathy Taylor (Facility's address-overnight delivery) ~ 3339 Meadors Road, Florence, SC  29501-8118
      Mark Young
      Mona Christian
      Mike Piccola
      Joe Maida

## WYNDHAM
### HOTEL GROUP



    

         

(Page 2 of 10)

ITEMIZED STATEMENT

As of Date (DD-MMM-YYYY): 17-JUN-2013
Customer No                 : 15122-80144-01-RAM
Category Set                :
Category Group              :
Group No                    :
Bankruptcy                  : No Bankruptcy Sites
Disputed                    : No
Finance Charges Included:   Yes

Page 1 of 8

(Page 3 of 10)

Report Date : 17-JUN-13

ITEMIZED STATEMENT
------------------

Customer No :  15122-80144-01-RAM
Address    :   PO BOX 3806,FLORENCE,SC,29502-3806,US
As of Date:    17-JUN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| FEB-2012 | 30666012 | 21-FEB-12 | CIT PAYOFF | | 10000.63 | 0.00 | 2025.47 | 12026.10 |
| | | | | Sub Total | 10000.63 | 0.00 | 2025.47 | 12026.10 |
| MAR-2012 | 42099101 | 31-MAR-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 51.60 | 304.31 |
| | 42100406 | 31-MAR-12 | 5052A-HARDWARE | | 90.10 | 7.22 | 19.89 | 117.41 |
| | 42130982 | 31-MAR-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 35.28 | 208.08 |
| | | | | Sub Total | 484.29 | 18.74 | 106.77 | 629.80 |
| APR-2012 | 30678938 | 06-APR-12 | CRE REACTIVATIO | | 300.00 | 0.00 | 100.56 | 400.56 |
| | 35065630 | 22-APR-12 | WYNREWARDS 5% | | 1053.37 | 0.00 | 204.90 | 1258.27 |
| | 42150744 | 30-APR-12 | Actual-1000A-RO | | 3412.58 | 0.00 | 650.07 | 4062.65 |
| | 42152206 | 30-APR-12 | Actual-1230A-RI | | 3839.15 | 0.00 | 731.39 | 4570.54 |
| | 42127956 | 30-APR-12 | 5022A-BRILLIANT | | 234.00 | 18.72 | 47.81 | 300.53 |
| | 42127979 | 30-APR-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 32.92 | 205.72 |
| | 42128243 | 30-APR-12 | 5052A-HARDWARE | | 90.30 | 7.22 | 18.56 | 116.08 |
| | | | | Sub Total | 9289.40 | 38.74 | 1786.21 | 11114.35 |
| MAY-2012 | 30688339 | 16-MAY-12 | 04/12 INC SIGN | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 35067036 | 22-MAY-12 | WYNREWARDS CRDT | | (164.63) | 0.00 | 0.00 | (164.63) |
| | 35066861 | 22-MAY-12 | WYNREWARDS 5% | | 929.94 | 0.00 | 166.90 | 1096.84 |
| | TM0294008 | 25-MAY-12 | T/A COMMISSIONS | | 32.76 | 0.00 | 5.78 | 38.54 |
| | TM0294008 | 25-MAY-12 | MEMBER BENEFIT | | 38.34 | 0.00 | 6.81 | 45.15 |
| | TC0294008 | 25-MAY-12 | T/A COMM SERVIC | | 5.33 | 0.00 | 0.93 | 6.26 |
| | 1294008 | 25-MAY-12 | GDS & INTERNET | | 195.80 | 0.00 | 34.81 | 230.61 |
| | 42158772 | 31-MAY-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 30.25 | 203.05 |
| | 42159065 | 31-MAY-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 44.25 | 296.96 |
| | 42157274 | 31-MAY-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42179781 | 31-MAY-12 | Actual-1230A-RI | | 3121.35 | 0.00 | 546.23 | 3667.58 |
| | 42177696 | 31-MAY-12 | Actual-1000A-RO | | 2774.53 | 0.00 | 485.58 | 3260.11 |

Page 2 of 8

(Page 4 of 10)

Report Date : 17-JUN-13

ITEMIZED STATEMENT
-------------------

Customer No : 15122-80144-01-RAM
Address : PO BOX 3806,FLORENCE,SC,29502-3806,US
As of Date: 17-JUN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 7113.13 | 31.52 | 1321.56 | 8466.21 |
| JUN-2012 | 25067747 | 22-JUN-12 | WYNREWARDS 5% | | 1230.24 | 0.00 | 248.31 | 1478.55 |
| | 25068076 | 22-JUN-12 | WYNREWARDS CRDT | | (220.57) | 0.00 | 0.00 | (220.57) |
| | 1300139 | 26-JUN-12 | TMC / CONSORTIA | | 100.25 | 0.00 | 16.20 | 116.45 |
| | TC0300139 | 26-JUN-12 | GDS & INTERNET | | 413.65 | 0.00 | 66.99 | 480.64 |
| | TA0300139 | 26-JUN-12 | T/A COMM SERVIC | | 44.39 | 0.00 | 7.21 | 51.60 |
| | TM0300139 | 26-JUN-12 | T/A COMMISSIONS | | 561.38 | 0.00 | 90.93 | 652.31 |
| | 42193379 | 26-JUN-12 | MEMBER BENEFIT | | 26.72 | 0.00 | 4.30 | 31.02 |
| | 42191355 | 30-JUN-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 27.65 | 200.45 |
| | 42191607 | 30-JUN-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42208903 | 30-JUN-12 | 5022A-BRILLIANT | | 233.89 | 18.72 | 40.55 | 293.16 |
| | 42210004 | 30-JUN-12 | Actual-1060A-RO | | 2267.22 | 0.00 | 362.75 | 2629.97 |
| | | | Actual-1230A-RI | | 2550.62 | 0.00 | 408.07 | 2958.69 |
| | | | | Sub Total | 7300.75 | 31.52 | 1232.86 | 8565.13 |
| JUL-2012 | 25068943 | 22-JUL-12 | WYNREWARDS CRDT | | (118.49) | 0.00 | 0.00 | (118.49) |
| | 25068804 | 22-JUL-12 | WYNREWARDS 5% | | 1607.65 | 0.00 | 239.54 | 1847.19 |
| | 1306394 | 25-JUL-12 | GDS & INTERNET | | 343.25 | 0.00 | 50.64 | 393.89 |
| | TC0306394 | 25-JUL-12 | T/A COMM SERVIC | | 9.82 | 0.00 | 1.45 | 11.27 |
| | TM0306394 | 25-JUL-12 | TMC / CONSORTIA | | 14.72 | 0.00 | 2.18 | 16.90 |
| | TA0306394 | 25-JUL-12 | MEMBER BENEFIT | | 76.88 | 0.00 | 11.33 | 88.21 |
| | 42227150 | 30-JUL-12 | T/A COMMISSIONS | | 54.56 | 0.00 | 8.07 | 62.63 |
| | 42227439 | 30-JUL-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 25.06 | 197.86 |
| | 42225958 | 30-JUL-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 36.66 | 289.37 |
| | 42244665 | 31-JUL-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42243576 | 31-JUL-12 | Actual-1230A-RI | | 2582.25 | 0.00 | 373.10 | 2955.35 |
| | | | Actual-1060A-RO | | 2295.34 | 0.00 | 331.68 | 2627.02 |
| | | | | Sub Total | 7152.83 | 31.52 | 1079.71 | 8264.06 |

Page 3 of 8

(Page 5 of 10)

ITEMIZED STATEMENT
--------------------

Report Date : 17-JUN-13

Customer No : 15122-80144-01-RAM
Address     : PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date  : 17-JUN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| AUG-2012 | 25069512 | 22-AUG-12 | WYNREWARDS 5% | | 1218.99 | 0.00 | 162.91 | 1381.70 |
| | 25069066 | 22-AUG-12 | WYNREWARDS CRDT | | (61.51) | 0.00 | 0.00 | (61.51) |
| | 1312762 | 24-AUG-12 | GDS & INTERNET | | 588.00 | 0.00 | 77.89 | 665.89 |
| | TM0312762 | 24-AUG-12 | MEMBER BENEFIT | | 113.34 | 0.00 | 15.04 | 128.38 |
| | TA0312762 | 24-AUG-12 | T/A COMMISSIONS | | 95.42 | 0.00 | 12.65 | 108.07 |
| | TC0312762 | 24-AUG-12 | TMC / CONSORTIA | | 9.10 | 0.00 | 1.21 | 10.31 |
| | 42251131 | 31-AUG-12 | T/A COMM SERVIC | | 26.03 | 0.00 | 3.43 | 29.46 |
| | 42262809 | 31-AUG-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 32.62 | 285.33 |
| | 42264535 | 31-AUG-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42274232 | 31-AUG-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 22.30 | 195.10 |
| | 42273450 | 31-AUG-12 | Actual-1000A-RO | | 1958.35 | 0.00 | 252.62 | 2210.97 |
| | | | | | 1740.76 | 0.00 | 224.55 | 1965.31 |
| | | | Sub Total | | 5975.33 | 31.52 | 805.02 | 6811.87 |
| SEP-2012 | 30715454 | 10-SEP-12 | Q/A REINSPECTIO | | 1900.00 | 0.00 | 235.60 | 2135.60 |
| | 30716085 | 10-SEP-12 | 3013 Ramada RMA | | 1800.00 | 0.00 | 120.60 | 1920.60 |
| | 25070082 | 22-SEP-12 | WYNREWARDS 5% | | 910.41 | 0.00 | 107.43 | 1017.84 |
| | TC0313544 | 25-SEP-12 | T/A COMM SERVIC | | 9.07 | 0.00 | 1.07 | 10.14 |
| | 1313544 | 25-SEP-12 | GDS & INTERNET | | 293.50 | 0.00 | 34.19 | 327.69 |
| | TM0313544 | 25-SEP-12 | MEMBER BENEFIT | | 53.60 | 0.00 | 6.23 | 59.83 |
| | TA0313544 | 25-SEP-12 | T/A COMMISSIONS | | 65.14 | 0.00 | 7.59 | 72.73 |
| | 42300925 | 10-SEP-12 | Actual-1000A-RO | | 1169.90 | 0.00 | 133.38 | 1302.28 |
| | 42103887 | 10-SEP-12 | Actual-1230A-RI | | 1315.12 | 0.00 | 149.91 | 1465.03 |
| | 42289030 | 10-SEP-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 28.82 | 281.53 |
| | 42286886 | 10-SEP-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42288780 | 30-SEP-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 19.70 | 192.50 |
| | | | Sub Total | | 7802.69 | 31.52 | 844.42 | 8678.63 |
| OCT-2012 | 30723833 | 02-OCT-12 | ONLINE LRNG LIB | | 50.00 | 0.00 | 5.67 | 55.67 |
| | 25071478 | 22-OCT-12 | WYNREWARDS 5% | | 459.17 | 0.00 | 47.31 | 506.48 |
| | TC0325613 | 28-OCT-12 | T/A COMM SERVIC | | 5.64 | 0.00 | 0.57 | 6.21 |
| | TA0325613 | 28-OCT-12 | T/A COMMISSIONS | | 50.92 | 0.00 | 5.09 | 56.01 |
| | 1325613 | 28-OCT-12 | GDS & INTERNET | | 160.25 | 0.00 | 16.00 | 176.25 |

Page 4 of 8

(Page 6 of 10)

Report Date : 17-JUN-13

ITEMIZED STATEMENT
------------------

Customer No :  15122-80144-01-RAM
Address    :  PO BOX 3826,FLORENCE,SC,29502-3806,US
As of Date :  17-JUN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
| | TM0325613 | 28-OCT-12 | MEMBER BENEFIT | | 24.80 | 0.00 | 2.46 | 27.26 |
| | TM0325613 | 28-OCT-12 | TMC / CONSORTIA | | 3.36 | 0.00 | 0.33 | 3.69 |
| | 42337062 | 31-OCT-12 | Actual-1230A-RI | | 2318.67 | 0.00 | 228.39 | 2547.06 |
| | 42316947 | 31-OCT-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 17.03 | 189.83 |
| | 42314735 | 31-OCT-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 24.91 | 277.62 |
| | 42337331 | 31-OCT-12 | Actual-1000A-RO | | 2061.04 | 0.00 | 203.03 | 2264.07 |
| | 42316158 | 31-OCT-12 | 5096A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | | | Sub Total | | 5420.70 | 31.52 | 550.79 | 6003.01 |
| NOV-2012 | TC0332667 | 19-NOV-12 | T/A COMM SERVIC | | 4.86 | 0.00 | 0.45 | 5.31 |
| | 1332667 | 19-NOV-12 | GDS & INTERNET | | 142.50 | 0.00 | 12.69 | 155.19 |
| | TM0332667 | 19-NOV-12 | MEMBER BENEFIT | | 9.90 | 0.00 | 0.87 | 10.77 |
| | TA0332667 | 19-NOV-12 | T/A COMMISSIONS | | 52.94 | 0.00 | 4.70 | 57.64 |
| | 25071680 | 22-NOV-12 | WYNREWARDS 5% | | 375.12 | 0.00 | 50.31 | 425.43 |
| | TA0337638 | 26-NOV-12 | T/A COMMISSIONS | | 55.23 | 0.00 | 4.71 | 59.94 |
| | TM0337638 | 26-NOV-12 | MEMBER BENEFIT | | 75.39 | 0.00 | 6.45 | 81.84 |
| | 42350634 | 30-NOV-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42361681 | 30-NOV-12 | Actual-1230A-RI | | 1376.54 | 0.00 | 114.95 | 1491.49 |
| | 42349072 | 30-NOV-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 21.11 | 273.82 |
| | 42349916 | 30-NOV-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 14.43 | 187.23 |
| | 42364262 | 30-NOV-12 | Actual-1000A-RO | | 1223.59 | 0.00 | 102.18 | 1325.77 |
| | | | Sub Total | | 3802.92 | 31.52 | 333.87 | 4167.31 |
| DEC-2012 | TM0345388 | 19-DEC-12 | MEMBER BENEFIT | | 23.20 | 0.00 | 1.71 | 24.91 |
| | TC0345388 | 19-DEC-12 | T/A COMM SERVIC | | 3.85 | 0.00 | 0.28 | 4.13 |
| | 1345388 | 19-DEC-12 | GDS & INTERNET | | 118.50 | 0.00 | 8.78 | 127.28 |
| | TA0345388 | 19-DEC-12 | T/A COMMISSIONS | | 29.22 | 0.00 | 2.16 | 31.38 |
| | 25073460 | 22-DEC-12 | WYNREWARDS 5% | | 540.50 | 0.00 | 39.20 | 579.70 |
| | 42379344 | 31-DEC-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42379456 | 31-DEC-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 17.19 | 269.90 |
| | 42397849 | 31-DEC-12 | Actual-1000A-RO | | 1119.75 | 0.00 | 76.00 | 1195.75 |
| | 42398142 | 31-DEC-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 11.75 | 184.55 |
| | 42398849 | 31-DEC-12 | Actual-1230A-RI | | 1259.72 | 0.00 | 85.50 | 1345.22 |

Page 5 of 8

(Page 7 of 10)

ITEMIZED STATEMENT
-------------------

Report Date : 17-JUN-13

Customer NO :  15122-80144-01-RAM
Address   :  PO BOX 3806,FLORENCE,SC,29502-3806,US
As of Date:   17-JUN-2013

| Mon-Year | Invoice No | Invoice Date | Description Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|---------------------|---------|------------|----------------|-------|
| | | | Sub Total | 3381.59 | 31.52 | 242.57 | 3655.68 |
| JAN-2013 | 25075900 | 22-JAN-13 | WYNREWARDS 5% | 1064.38 | 0.00 | 60.68 | 1125.06 |
| | 1351823 | 25-JAN-13 | GDS & INTERNET | 10.50 | 0.00 | 0.58 | 11.08 |
| | 42411050 | 31-JAN-13 | 5099A-RAMADA CI | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42411731 | 31-JAN-13 | 5066A-DIRECWAY | 160.00 | 12.80 | 9.07 | 181.87 |
| | 42412056 | 31-JAN-13 | 5022A-BRILLIANT | 233.39 | 18.72 | 13.27 | 265.38 |
| | 42427567 | 31-JAN-13 | Actual-1000A-RO | 821.46 | 0.00 | 43.12 | 864.58 |
| | 42430324 | 31-JAN-13 | Actual-1230A-RI | 924.14 | 0.00 | 48.51 | 972.65 |
| | | | Sub Total | 3107.33 | 31.52 | 175.23 | 3314.08 |
| FEB-2013 | 35071442 | 22-FEB-13 | WYNREWARDS 5% | 626.77 | 0.00 | 26.00 | 652.77 |
| | 42440378 | 28-FEB-13 | 5022A-BRILLIANT | 245.69 | 19.66 | 10.21 | 275.56 |
| | 42439876 | 28-FEB-13 | 5066A-DIRECWAY | 160.00 | 12.80 | 6.65 | 179.45 |
| | 42459711 | 28-FEB-13 | Actual-1000A-RO | 1045.98 | 0.00 | 40.27 | 1086.25 |
| | 42450890 | 28-FEB-13 | Actual-1230A-RI | 1176.73 | 0.00 | 45.30 | 1222.03 |
| | | | Sub Total | 3255.17 | 32.46 | 128.43 | 3416.06 |
| MAR-2013 | 35072177 | 11-MAR-13 | Kayak Commissio | (6.00) | 0.00 | 0.00 | (6.00) |
| | 25075488 | 22-MAR-13 | WYNREWARDS 5% | 623.12 | 0.00 | 17.14 | 640.26 |
| | 42439906 | 31-MAR-13 | 5066A-DIRECWAY | 160.00 | 12.80 | 3.98 | 176.78 |
| | 42486588 | 31-MAR-13 | Accrual-1230A-R * | 2871.18 | 0.00 | 66.03 | 2937.21 |
| | 42469483 | 31-MAR-13 | 5022A-BRILLIANT | 245.69 | 19.66 | 6.10 | 271.45 |
| | 42486587 | 31-MAR-13 | Accrual-1000A-R * | 2552.16 | 0.00 | 58.70 | 2610.86 |
| | | | Sub Total | 6446.15 | 32.46 | 151.95 | 6630.56 |
| APR-2013 | 30782605 | 05-APR-13 | GLOBAL CONFEREN | 1049.00 | 0.00 | 0.00 | 1049.00 |

Page 6 of 8

(Page 8 of 10)

Report Date : 17-JUN-13

ITEMIZED STATEMENT
------------------

Customer No : 15122-80144-01-RAM
Address : PO BOX 3806,FLORENCE,SC 29502-3806,US
As of Date: 17-JUN-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|-------------|-------------|---------|---------|-----------|----------------|-------|
| | 30786924 | 15-APR-13 | Q/A RETINSPECTIO | | 1900.00 | 0.00 | 29.45 | 1929.45 |
| | 25077194 | 22-APR-13 | WYNREWARDS 5% | | 1301.32 | 0.00 | 15.62 | 1316.94 |
| | 42521621 | 30-APR-13 | Actual-1230A-RI | | 2970.07 | 0.00 | 23.76 | 2993.83 |
| | 42500991 | 30-APR-13 | 5066A-DIRECWAY | | 160.00 | 12.80 | 1.38 | 174.18 |
| | 42521581 | 30-APR-13 | Actual-1000A-RO | | 2640.06 | 0.00 | 21.12 | 2661.18 |
| | 42499510 | 30-APR-13 | 5022A-BRILLIANT | | 245.69 | 19.66 | 2.12 | 267.47 |
| | | | Sub Total | | 10366.14 | 32.46 | 93.45 | 10342.05 |
| MAY-2013 | 25077998 | 22-MAY-13 | WYNREWARDS 5% | | 896.21 | 0.00 | 0.00 | 896.21 |
| | 42549302 | 31-MAY-13 | Accrual-1230A-R | * | 1314.16 | 0.00 | 0.00 | 1314.16 |
| | 42533099 | 31-MAY-13 | 5022A-BRILLIANT | | 245.69 | 19.66 | 0.00 | 265.35 |
| | 42533065 | 31-MAY-13 | 5066A-DIRECWAY | | 160.00 | 12.80 | 0.00 | 172.80 |
| | 42549301 | 31-MAY-13 | Accrual-1000A-R | * | 1168.32 | 0.00 | 0.00 | 1168.32 |
| | | | Sub Total | | 3784.58 | 32.46 | 0.00 | 3817.04 |
| JUN-2013 | 30805396 | 13-JUN-13 | ONLINE LRNG LIB | | 60.00 | 0.00 | 0.00 | 60.00 |
| | | | Sub Total | | 60.00 | 0.00 | 0.00 | 60.00 |
| | | | Grand Total | | 34643.61 | 491.00 | 10877.31 | 106011.94 |

Requested By: Patrick Yeu

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

Page 7 of 8

(Page 9 of 10)

Report Date : 17-JUN-13

ITEMIZED STATEMENT
------------------------

******* END OF REPORT *******

Page 8 of 8

(Page 10 of 10)

UPS CampusShip: Shipment Receipt                                                    Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 17 Jun 2013                     **Tracking Number:**          1Z22445X0196729433

| 1 | Address Information |
|---|---|

Ship To:                    Ship From:                        Return Address:
Young Brothers Properties Inc.   Wyndham Hotel Group - 22 Sylvan   Wyndham Hotel Group - 22 Sylvan
Kathy Taylor                Patrick Yeu                       Patrick Yeu
3339 Meadors Road           22 Sylvan Way                     22 Sylvan Way
FLORENCE SC 295018118       Parsippany NJ 07054               Parsippany NJ 07054
                            Telephone:973-753-7831            Telephone:973-753-7831

| 2 | Package Information |
|---|---|

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1. Letter | UPS Letter | | Reference # 1 - 006-1696 |

| 3 | UPS Shipping Service and Shipping Options |
|---|---|

Service:                    UPS Next Day Air
Guaranteed By:              10:30 AM Tuesday, Jun 18, 2013
Shipping Fees Subtotal:            29.43 USD
    Transportation                 26.75 USD
    Fuel Surcharge                  2.68 USD

| 4 | Payment Information |
|---|---|

Bill Shipping Charges to:              Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

Total Charged:                                                           29.43 USD
Negotiated Total:                                                         6.72 USD

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

USPS Cert mail # 7001 0360 0003 3366 5980

# EXHIBIT F

(Page 1 of 17)





## WYNDHAM

### HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 • fax (800) 880-9445
www.wyndhamworldwide.com

September 16, 2013

**VIA CERTIFIED MAIL**

Mr. Harold G. Coker
Young Brothers Properties Inc.
P.O. Box 3806
Florence, SC 29502

Re:   **NOTICE OF TERMINATION** of License Agreement, dated August 10, 2004, as amended, (the "Agreement") between Young Brothers Properties Inc. ("you" or "your") and Ramada Worldwide Inc., successor in interest to Ramada Franchise Systems, Inc., ("we", "our" or "us") for the Ramada® System Unit #15122-80144-01 located in Florence, SC (the "Facility")

Dear Mr Coker:

We write to give you formal notice of the termination of the License granted under the Agreement to operate the Facility as part of the Ramada System (the "Notice"). This termination is a result of your failure to cure your default under the Agreement, due to your failure to meet your financial obligations. The termination of your Agreement is effective as of the date of this Notice (the "Termination Date").

Because the Agreement has terminated, you must now perform your post-termination obligations such as the removal of all items that display or refer to the Ramada brand at the Facility. The de-identification procedures are specified in the attachment to this Notice. These de-identification procedures must be completed within ten (10) days from the Termination Date.

You must also immediately pay us the full amount of all Recurring Fees and other charges due under the Agreement through the date you complete the de-identification process. We estimate that, as of September 13, 2013, you owe us $124,322.97 in Recurring Fees. This amount is described in more detail in the attached itemized statement. Additionally, you must pay us Liquidated Damages of $120,000.00 as specified in section 18.1 of the Agreement. You must also pay de-commission fees of $326.00 for the termination of the Satellite Connectivity Services Addendum (the "Addendum"). Please note that the Satellite Connectivity Services Addendum has also terminated on the Termination Date.

Please know that, because the Agreement is terminated, you also have lost the right to continue to use the seamless interface version of your property management system. You must now make arrangements with the software vendor for a new license to use the property management system. If the Facility has WynGuest system installed, please be advised that due to the termination you will have no functionality from the system. Should you wish to continue using an independent version of the software, please contact Sabre at 877-520-3646. If your property is planning to migrate to another property management system, please contact your provider to expedite the installation. If you would like to inquire about the data maintained in the system, please contact Hotel Technology Client Support at 506-646-2521 to obtain reporting of that data.



(Page 2 of 17)

Mr. Harold G. Coker
September 16, 2013
Page Two

If within the ten (10) day period described above, you do not timely remove the exterior signage which bears the Ramada name and marks, we may exercise our rights under the Agreement and send an independent contractor to the Facility to remove all such signage at and around the Facility. The cost of sign removal will be added to your final invoice from us.  If you object to the removal of the signage by our independent contractor, you must notify us within ten (10) days of the date of this Notice.

If you do not timely complete each of these post-termination obligations, we will refer this matter to our legal department to ensure that we recover from you all amounts owed and that all of your post-termination obligations to us are performed.

This Notice does not modify, replace or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility.  Please consider this letter to be a notice and demand for payment under any Guaranty of the Agreement, directed to your Guarantor.

If you have any questions regarding your obligations under this Notice, please contact Charlene Martin, Senior Manager of Settlements, at (973) 753- 7602.

Sincerely,

Suzanne Fenimore
Senior Director
Contracts Compliance

Enclosure

cc:      Edward L. Young (Guarantor)
         Harold G. Coker (Hotel's Address) ~ 3311 Meadors Road, Florence, SC  29501
         Kathy Taylor (Site Principle)
         Mark Young
         Larry Geer
         Charlene Martin
         Joe Maida
         Mike Piccola

(Page 3 of 17)

Report Date : 13-SEP-13

ITEMIZED STATEMENT
------------------

As of Date (DD-MMM-YYYY): 13-SEP-2013
Customer No            : 15123-80144-01-RAM
Category Set           :
Category Group         :
Group No               :
Bankruptcy             : No Bankruptcy Sites
Disputed               : No
Finance Charges Included: Yes

Page 1 of 8

(Page 4 of 17)

ITEMIZED STATEMENT
------------------

Customer No :  15122-80144-01-RAW
Address :      PO BOX 3806,FLORENCE,SC,29502-3806,US
As of Date:    13 SEP-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| FEB-2012 | 30666012 | 21-FEB-12 | CIT PAYOFF | | 10000.63 | 0.00 | 2280.39 | 12281.02 |
| | | | | Sub Total | 10000.63 | 0.00 | 2280.39 | 12281.02 |
| | | | | | | | | |
| MAR-2012 | 42094101 | 31-MAR-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 59.19 | 311.90 |
| | 42100982 | 31-MAR-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 40.47 | 213.27 |
| | 42100406 | 31-MAR-12 | 5052A-HARDWARE | | 90.30 | 7.22 | 22.82 | 120.34 |
| | | | | Sub Total | 484.29 | 38.74 | 122.48 | 645.51 |
| | | | | | | | | |
| APR-2012 | 30678928 | 06-APR-12 | CRS REACTIVATIO | | 500.00 | 0.00 | 115.58 | 615.58 |
| | 25066630 | 22-APR-12 | WYNREWARDS 5% | | 1053.37 | 0.00 | 237.03 | 1290.40 |
| | 42128243 | 30-APR-12 | 5052A-HARDWARE | | 90.30 | 7.22 | 21.53 | 119.05 |
| | 42127979 | 30-APR-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 38.19 | 210.99 |
| | 42132206 | 30-APR-12 | Actual-1230A-R1 | | 3839.15 | 0.00 | 848.49 | 4687.64 |
| | 42156464 | 30-APR-12 | Actual-1000A-RO | | 3412.58 | 0.00 | 754.15 | 4166.73 |
| | 42127956 | 30-APR-12 | 5022A-BRILLIANT | | 234.00 | 18.72 | 55.40 | 308.12 |
| | | | | Sub Total | 9289.40 | 38.74 | 2070.37 | 11398.51 |
| | | | | | | | | |
| MAY-2012 | 30688339 | 16-MAY-12 | 04/12 INC SIGN | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 25067016 | 22-MAY-12 | WYNREWARDS CRDT | | (164.63) | 0.00 | 0.00 | (164.63) |
| | 25066861 | 22-MAY-12 | WYNREWARDS 5% | | 929.94 | 0.00 | 195.26 | 1125.20 |
| | T90264008 | 25-MAY-12 | MEMBER BENEFIT | | 38.34 | 0.00 | 7.98 | 46.32 |
| | T90294008 | 25-MAY-12 | T/A COMMISIONS | | 32.76 | 0.00 | 6.76 | 39.52 |
| | 1294000B | 25-MAY-12 | GDS & INTERNET | | 195.80 | 0.00 | 40.80 | 236.60 |
| | TC0294000B | 25-MAY-12 | T/A COMM SERVIG | | 5.33 | 0.00 | 1.09 | 6.42 |
| | 42171696 | 31-MAY-12 | Actual-1000A-RO | | 2774.53 | 0.00 | 570.21 | 3344.74 |
| | 42179781 | 31-MAY-12 | Actual-1230A-RI | | 3121.35 | 0.00 | 641.43 | 3762.78 |
| | 42158772 | 31-MAY-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 35.32 | 208.32 |
| | 42159865 | 31-MAY-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 51.96 | 304.67 |
| | 42157274 | 31-MAY-12 | 5099A-RAMADA CT | | (107.14) | 0.00 | 0.00 | (107.14) |

Page 2 of 8

(Page 5 of 17)

Report Date : 13-SEP-13

ITEMIZED STATEMENT
-----------------

Customer No :   15122-80144-01-RAM
Address     :   PO BOX 3806,FLORENCE,SC,29502-3806,US
As of Date  :   13-SEP-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 7113.13 | 31.52 | 1551.01 | 8695.66 |
| JUN-2012 | 25068076 | 22-JUN-12 | WYNREWARDS CRDT | | (220.57) | 0.00 | 0.00 | (220.57) |
| | 25067747 | 22-JUN-12 | WYNREWARDS 5% | | 1270.24 | 0.00 | 247.05 | 1517.29 |
| | LC00139 | 26-JUN-12 | GDS & INTERNET | | 413.65 | 0.00 | 79.60 | 493.25 |
| | TM0300139 | 26-JUN-12 | TNC / CONSORTIA | | 100.25 | 0.00 | 19.25 | 119.50 |
| | TMC0300139 | 26-JUN-12 | MEMBER BENEFIT | | 26.72 | 0.00 | 5.11 | 31.83 |
| | TA0300139 | 26-JUN-12 | T/A COMMISSIONS | | 561.38 | 0.00 | 108.05 | 669.43 |
| | TC0300139 | 26-JUN-12 | T/A COMM SERVIC | | 44.39 | 0.00 | 8.57 | 52.96 |
| | 42193379 | 30-JUN-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 32.92 | 205.72 |
| | 42191055 | 30-JUN-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42210004 | 30-JUN-12 | Actual-1230A-RI | | 2550.62 | 0.00 | 485.86 | 3036.48 |
| | 42208903 | 30-JUN-12 | Actual-1000A-KO | | 2267.22 | 0.00 | 431.90 | 2699.12 |
| | 42193607 | 30-JUN-12 | 5022A-BRILLIANT | | 233.89 | 18.72 | 48.16 | 300.87 |
| | | | | Sub Total | 7300.75 | 31.52 | 1466.47 | 8798.74 |
| JUL-2012 | 25068943 | 22-JUL-12 | WYNREWARDS CRDT | | (118.49) | 0.00 | 0.00 | (118.49) |
| | 25068804 | 22-JUL-12 | WYNREWARDS 5% | | 1607.65 | 0.00 | 288.57 | 1896.22 |
| | 1306394 | 25-JUL-12 | GDS & INTERNET | | 343.25 | 0.00 | 61.11 | 404.36 |
| | TC0306394 | 25-JUL-12 | T/A COMM SERVIC | | 9.82 | 0.00 | 1.75 | 11.57 |
| | TA0306394 | 25-JUL-12 | T/A COMMISSIONS | | 54.56 | 0.00 | 9.74 | 64.30 |
| | TM0306394 | 25-JUL-12 | MEMBER BENEFIT | | 76.88 | 0.00 | 13.67 | 90.55 |
| | TMC0306394 | 25-JUL-12 | TNC / CONSORTIA | | 14.72 | 0.00 | 2.63 | 17.35 |
| | 42225958 | 30-JUL-12 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42227439 | 30-JUL-12 | 5022A-BRILLIANT | | 233.99 | 18.72 | 44.37 | 297.08 |
| | 42227150 | 30-JUL-12 | 5066A-DIRECWAY | | 160.00 | 12.80 | 30.33 | 203.13 |
| | 42244465 | 31-JUL-12 | Actual-1230A-RI | | 2582.25 | 0.00 | 451.85 | 3034.10 |
| | 42243575 | 31-JUL-12 | Actual-1000A-KO | | 2295.34 | 0.00 | 401.69 | 2697.03 |
| | | | | Sub Total | 7152.83 | 31.52 | 1305.71 | 8490.06 |

Page 3 of 8

(Page 6 of 17)

Report Date : 13-SEP-13

ITEMIZED STATEMENT
------------------

Customer No : 15122-90144-01-RAM
Address :    PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date:  13-SEP-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| AUG-2012 | 25069066  | 22-AUG-12    | WYNREWARDS CRDT   |  | (61.51)  | 0.00   | 0.00    | (61.51)  |
|          | 25069512  | 22-AUG-12    | WYNREWARDS 5%     |  | 1218.99  | 0.00   | 199.88  | 1418.87  |
|          | TK0312762 | 24-AUG-12    | TMC / CONSORTIA   |  | 9.10     | 0.00   | 1.49    | 10.59    |
|          | TM0312762 | 24-AUG-12    | MEMBER BENEFIT    |  | 113.34   | 0.00   | 18.50   | 131.84   |
|          | TC0312762 | 24-AUG-12    | T/A COMM SERVIC   |  | 26.03    | 0.00   | 4.22    | 30.25    |
|          | 1312762   | 24-AUG-12    | GDS & INTERNET    |  | 589.00   | 0.00   | 95.82   | 683.82   |
|          | T40312762 | 24-AUG-12    | T/A COMMISSIONS   |  | 95.42    | 0.00   | 15.56   | 110.98   |
|          | 42274232  | 31-AUG-12    | Actual-1230A-RI   |  | 1958.35  | 0.00   | 312.35  | 2270.70  |
|          | 42254523  | 31-AUG-12    | 5066A-DIRECWAY    |  | 160.00   | 12.80  | 27.57   | 200.37   |
|          | 42252809  | 31-AUG-12    | 5099A-RAMADA CI   |  | (107.14) | 0.00   | 0.00    | (107.14) |
|          | 42273450  | 31-AUG-12    | Actual-1000A-RO   |  | 1740.76  | 0.00   | 277.64  | 2018.40  |
|          | 42253131  | 31-AUG-12    | 5022A-BRILLIANT   |  | 233.99   | 18.72  | 40.33   | 293.04   |
|          |           |              | Sub Total         |  | 5975.33  | 31.52  | 393.36  | 7000.21  |
| SEP-2012 | 30715454  | 10-SEP-12    | O/A REINSPECTIO   |  | 1900.00  | 0.00   | 293.55  | 2193.55  |
|          | 30716085  | 10-SEP-12    | 2913 Ramada RMA   |  | 1800.00  | 0.00   | 175.50  | 1975.50  |
|          | 35070082  | 22-SEP-12    | WYNREWARDS 5%     |  | 910.41   | 0.00   | 135.20  | 1045.61  |
|          | TM0319544 | 25-SEP-12    | MEMBER BENEFIT    |  | 53.60    | 0.00   | 7.86    | 61.46    |
|          | TA0319544 | 25-SEP-12    | T/A COMMISSIONS   |  | 65.14    | 0.00   | 9.58    | 74.72    |
|          | 1319544   | 25-SEP-12    | GDS & INTERNET    |  | 293.50   | 0.00   | 43.14   | 336.64   |
|          | TC0319544 | 25-SEP-12    | T/A COMM SERVIC   |  | 9.07     | 0.00   | 1.35    | 10.42    |
|          | 42288780  | 30-SEP-12    | 5066A-DIRECWAY    |  | 160.00   | 12.80  | 24.97   | 197.77   |
|          | 42285030  | 30-SEP-12    | 5022A-BRILLIANT   |  | 233.99   | 18.72  | 36.53   | 289.24   |
|          | 42303887  | 30-SEP-12    | Actual-1230A-RI   |  | 1315.12  | 0.00   | 190.02  | 1505.14  |
|          | 42286886  | 30-SEP-12    | 5099A-RAMADA CI   |  | (107.14) | 0.00   | 0.00    | (107.14) |
|          | 42300925  | 30-SEP-12    | Actual-1000A-RO   |  | 1169.00  | 0.00   | 168.94  | 1337.94  |
|          |           |              | Sub Total         |  | 7802.69  | 31.52  | 1086.64 | 8920.85  |
| OCT-2012 | 30723833  | 02-OCT-12    | ONLINE LANG LIB   |  | 50.00    | 0.00   | 7.20    | 57.20    |
|          | 25071478  | 22-OCT-12    | WYNREWARDS 5%     |  | 459.17   | 0.00   | 61.32   | 520.49   |
|          | TM0325613 | 28-OCT-12    | MEMBER BENEFIT    |  | 24.80    | 0.00   | 3.21    | 28.01    |
|          | TK0325613 | 28-OCT-12    | TMC / CONSORTIA   |  | 3.36     | 0.00   | 0.43    | 3.79     |
|          | TC0325613 | 28-OCT-12    | T/A COMM SERVIC   |  | 5.64     | 0.00   | 0.74    | 6.38     |

(Page 7 of 17)

```
                                                              Report Date : 13-SEP-13

                              ITEMIZED STATEMENT
                              ------------------

        Customer No :   15122-80144-01-RAM
        Address     :   PO BOX 3806,FLORENCE,SC,29502-3806,US
        As of Date:     13-SEP-2013

Mon-Year  Invoice No     Invoice Date  Description   Accrued      Billing      Amount      FinanceCharges      Total
                                                                               Tax
--------  ----------     ------------  -----------   -------      -------      ------      --------------      -----
          1325613        28-OCT-12     GDS & INTERNET            160.25        0.00          20.88          181.13
          TAO325613      28-OCT-12     T/A COMMISSIONS            50.92        0.00           6.84           57.56
          42314947       31-OCT-12     5066A-DIRECWAY            160.50       12.80          22.30          195.10
          42337062       31-OCT-12     Actual-1230A-RI          2318.67        0.00         299.11         2617.78
          42316158       31-OCT-12     5099A-RAMADA CI          (107.14)       0.00           0.00         (107.14)
          42314735       31-OCT-12     5022A-BRILLIANT           233.99       18.72          32.62          285.33
          42337331       31-OCT-12     Actual-1000A-RO          2081.01        0.00         265.90         2326.84

                                       Sub Total                 5420.70       31.52         720.25         6172.57
                                                               ==========   ==========   ==========      ==========

NOV-2012  TM0332667      19-NOV-12     MEMBER BENEFIT              9.90        0.00           1.17           11.07
          1332667        19-NOV-12     GDS & INTERNET            142.50        0.00          17.04          159.54
          TC0332667      19-NOV-12     T/A COMM SERVIC             4.86        0.00           0.60            5.46
          TA0332667      19-NOV-12     T/A COMMISSIONS            52.94        0.00           6.31           59.25
          25071680       22-NOV-12     4YHREWARDS 5%            575.12        0.00          67.85          642.97
          TM0337628      26-NOV-12     MEMBER BENEFIT             75.39        0.00           8.75           84.14
          TA0337628      26-NOV-12     T/A COMMISSIONS            55.23        0.00           6.42           61.65
          42349916       30-NOV-12     5066A-DIRECWAY           160.00       12.80          19.70          192.50
          42368262       30-NOV-12     Actual-1000A-RO         1223.39        0.00         139.50         1363.09
          42350634       30-NOV-12     5099A-RAMADA CI         (107.14)       0.00           0.00         (107.14)
          42352681       30-NOV-12     Actual-1230A-RI         1376.54        0.00         156.94         1533.48
          42349072       30-NOV-12     5022A-BRILLIANT          233.99       18.72          28.82          281.53

                                       Sub Total                 3802.92       31.52         453.10         4287.54
                                                               ==========   ==========   ==========      ==========

DEC-2012  1245388        19-DEC-12     GDS & INTERNET            118.50        0.00          12.40          130.90
          TC0345388      19-DEC-12     T/A COMM SERVIC             3.85        0.00           0.40            4.25
          TM0345388      19-DEC-12     MEMBER BENEFIT             23.20        0.00           2.42           25.62
          TA0345388      19-DEC-12     T/A COMMISSIONS            29.22        0.00           3.05           32.27
          25073460       22-DEC-12     4YHREWARDS 5%            540.50        0.00          55.69          596.19
          42380162       31-DEC-12     5066A-DIRECWAY           160.00       12.30          17.02          189.02
          42379656       31-DEC-12     5022A-BRILLIANT          233.99       18.72          24.90          277.61
          42397849       31-DEC-12     Actual-1000A-RO         1119.75        0.00         110.16         1229.91
          42379344       31-DEC-12     5099A-RAMADA CI         (107.14)       0.00           0.00         (107.14)
          42398849       31-DEC-12     Actual-1230A-RI         1259.72        0.00         123.93         1383.65

                                                         Page 5 of 8
```

(Page 8 of 17)

Report Date : 13-SEP-13

ITEMIZED STATEMENT
--------------------

Customer No :  15122-80144-01-RAM
Address :       PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date:     13-SEP-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|---------------|-------|
| | | | | | | | | |
| | | | | Sub Total | 3381.59 | 31.52 | 349.97 | 3763.08 |
| | | | | | | | | |
| JAN-2013 | 25033900 | 22-JAN-13 | WYNREWARDS 5% | | 1064.38 | 0.00 | 93.15 | 1157.53 |
| | 1351823 | 25-JAN-13 | GDS & INTERNET | | 10.50 | 0.00 | 0.90 | 11.40 |
| | 42427667 | 31-JAN-13 | Actual-1000A-RO | | 821.46 | 0.00 | 68.17 | 889.63 |
| | 42430324 | 31-JAN-13 | Actual-1230A-RI | | 924.14 | 0.00 | 76.69 | 1000.83 |
| | 42431060 | 31-JAN-13 | 5099A-RAMADA CI | | (107.14) | 0.00 | 0.00 | (107.14) |
| | 42431731 | 31-JAN-13 | 5066A-DIRECWAY | | 160.00 | 12.90 | 14.34 | 187.14 |
| | 42432056 | 31-JAN-13 | 5022A-BRILLIANT | | 233.99 | 18.72 | 20.98 | 273.69 |
| | | | | | | | | |
| | | | | Sub Total | 3107.33 | 31.52 | 274.23 | 3413.08 |
| | | | | | | | | |
| FEB-2013 | 25074442 | 22-FEB-13 | WYNREWARDS 5% | | 626.77 | 0.00 | 45.11 | 671.88 |
| | 42439876 | 28-FEB-13 | 5066A-DIRECWAY | | 160.00 | 12.80 | 11.92 | 184.72 |
| | 42459990 | 28-FEB-13 | Actual-1230A-RI | | 1176.73 | 0.00 | 81.19 | 1257.92 |
| | 42459711 | 28-FEB-13 | Actual-1000A-RO | | 1045.98 | 0.00 | 72.17 | 1118.15 |
| | 42440378 | 29-FEB-13 | 5022A-BRILLIANT | | 245.69 | 19.66 | 18.30 | 283.65 |
| | | | | | | | | |
| | | | | Sub Total | 3255.17 | 32.46 | 228.69 | 3516.32 |
| | | | | | | | | |
| MAR-2013 | 30792177 | 11-MAR-13 | Kayak Commissio | | (6.00) | 0.00 | 0.00 | (6.00) |
| | 25075488 | 22-MAR-13 | WYNREWARDS 5% | | 623.12 | 0.00 | 36.15 | 659.27 |
| | 42469306 | 31-MAR-13 | 5066A-DIRECWAY | | 160.00 | 12.80 | 9.25 | 182.05 |
| | 42469483 | 31-MAR-13 | 5022A-BRILLIANT | | 245.69 | 19.66 | 14.19 | 279.54 |
| | 42486587 | 31-MAR-13 | Accrual-1000A-R | · | 2552.16 | 0.00 | 136.54 | 2688.70 |
| | 42486589 | 31-MAR-13 | Accrual-1230A-R | · | 2871.18 | 0.00 | 153.60 | 3024.78 |
| | | | | | | | | |
| | | | | Sub Total | 6446.15 | 32.46 | 349.73 | 6828.34 |
| | | | | | | | | |
| APR-2013 | 30782605 | 05-APR-13 | GLOBAL CONFEREN | | 1049.00 | 0.00 | 0.00 | 1049.00 |

Page 6 of 8

(Page 9 of 17)

```
                                                          Report Date : 13-SEP-13

                              ITEMIZED STATEMENT
                              ------------------

     Customer No :  15122-80144-01-RAH
     Address :      PO BOX 3806, FLORENCE,SC,29502-3806,US
     As of Date :   13-SEP-2013

     Mon-Year  Invoice No    Invoice Date  Description    Accrued                    Amount                        Total
                                                                    Billing          Tax      FinanceCharges
     --------- ----------    ------------  -----------    -------  -----------     --------   --------------     -----------
               30786924      15-APR-13     O/A REINSPECTIO          1900.00          0.00         87.40            1987.40
               25077194      22-APR-13     WYNREWARDS 5%            1301.32          0.00         55.31            1356.63
               42500991      30-APR-13     5066A-DIRECWAY            160.00         12.80          6.65             179.45
               42521981      30-APR-13     Actual-1030A-RQ          2640.06          0.00        101.64            2741.70
               42499510      30-APR-13     5022A-BRILLIANT           245.69         19.66         10.21             275.56
               42521621      30-APR-13     Actual-1230A-RI          2970.07          0.00        114.35            3084.42
                                                                  -----------     --------   --------------     -----------
                                           Sub Total              10266.14         32.46        375.56           10674.16
                                                                  -----------     --------   --------------     -----------

     MAY-2013  25077998      22-MAY-13     WYNREWARDS 5%             896.21          0.00         24.64             920.85
               42533065      31-MAY-13     5066A-DIRECWAY            160.00         12.80          3.98             176.78
               42533094      31-MAY-13     5022A-BRILLIANT           245.69         19.66          6.10             271.45
               42549302      31-MAY-13     Accrual-1230A-R  *       1314.36          0.00         10.23            1344.59
               42549301      31-MAY-13     Accrual-1000A-R  *       1168.32          0.00         26.87            1195.19
                                                                  -----------     --------   --------------     -----------
                                           Sub Total               3784.58         32.46         91.82            3908.86
                                                                  -----------     --------   --------------     -----------

     JUN-2013  30805396      13-JUN-13     ONLINE LONG LIS            60.00          0.00          0.99              60.99
               TN0384726     20-JUN-13     MEMBER BENEFIT             5.40          0.00          0.07               5.47
               25078955      22-JUN-13     WYNREWARDS 5%            842.55          0.00         10.11             852.66
               42579979      30-JUN-13     Accrual-1230A-R  *       1373.09          0.00         10.98            1384.07
               42557904      30-JUN-13     5066A-DIRECWAY            160.00         12.80          1.38             174.18
               42579970      30-JUN-13     Accrual-1000A-R  *       1220.52          0.00          9.76            1230.28
               42555890      30-JUN-13     5022A-BRILLIANT           245.69         19.66          2.12             267.47
                                                                  -----------     --------   --------------     -----------
                                           Sub Total               3907.25         32.46         35.41            3975.12
                                                                  -----------     --------   --------------     -----------

     JUL-2013  25079676      22-JUL-13     WYNREWARDS 5%            1178.62          0.00          0.00            1178.62
               42601868      31-JUL-13     Accrual-1230A-R  *       1950.84          0.00          0.00            1950.84
               42592250      31-JUL-13     5022A-BRILLIANT           245.69         19.66          0.00             265.35
               42592703      31-JUL-13     5066A-DIRECWAY            160.00         12.80          0.00             172.80
               42607867      31-JUL-13     Accrual-1000A-R  *       1734.08          0.00          0.00            1734.08
```

Page 7 of 8

(Page 10 of 17)

Report Date : 13-SEP-13

ITEMIZED STATEMENT
-----------------------

Customer No : 15122-90144-01-RAM
Address   : PO BOX 3806, FLORENCE, SC, 29502-3806, US
As of Date : 13-SEP-2013

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
| | | | Sub Total | | 5269.23 | 32.46 | 0.00 | 5301.69 |
| AUG-2013 | 10928816 | 22-AUG-13 | On Site Fee | | 100.00 | 0.00 | 0.00 | 100.00 |
| | 25080904 | 22-AUG-13 | WYNDREWARDS 5% | | 1729.59 | 0.00 | 0.00 | 1729.59 |
| | 42617722 | 31-AUG-13 | 5068A-DIRECWAY | | 160.00 | 12.80 | 0.00 | 172.80 |
| | 42639587 | 31-AUG-13 | Accrual-1000A-R | * | 1027.72 | 0.00 | 0.00 | 1027.72 |
| | 42639588 | 31-AUG-13 | Accrual-1220A-R | * | 1156.19 | 0.00 | 0.00 | 1156.19 |
| | 42620776 | 31-AUG-13 | 5022A-BRILLIANT | | 245.69 | 19.66 | 0.00 | 265.35 |
| | | | Sub Total | | 4419.19 | 32.46 | 0.00 | 4451.65 |
| SEP-2013 | 30834561 | 10-SEP-13 | 2014 Ramada RMA | | 1800.00 | 0.00 | 0.00 | 1800.00 |
| | | | Sub Total | | 1800.00 | 0.00 | 0.00 | 1800.00 |
| | | | Grand Total | | 109979.30 | 588.38 | 13755.29 | 124322.97 |

Requested By: Patrick Yeu

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

******* END OF REPORT *******

Page 8 of 8

(Page 11 of 17)

## DE-IDENTIFICATION PROCEDURES

You must complete each of the following within 10 days after the Termination Date:

1.      Remove, replace or cover with an opaque cover the primary Facility signage.

2.      Remove all interior signage that contains Ramada Marks.

3.      Change advertising billboards to remove Ramada Marks.

4.      Stop answering Facility telephone as Ramada guest lodging facility.

5.      Remove Ramada name and Marks from any domain name, advertising and brochures.

6.      Return to us all confidential operations and training manuals.

7.      Remove the Ramada name and Marks from the following items:

> Stationery, pads and pens
> Directories and brochures
> Business cards
> Folios and registration cards
> Do-not-disturb cards
> Comment cards
> Telephone plates
> Telephone dialing instructions
> TV channel ID plates
> Rate/law cards
> Door signage
> Soap/shampoo
> Key tags
> Credit card imprinter
> Laundry bags
> Name tags/uniforms
> Ice buckets/trays
> Ashtrays/matches
> Plaques
> Guest checks/receipts
> Menus

8.      Paint over or remove any distinctive Ramada trade dress, paint schemes or architectural features.

9.      It is prohibited to re-name the Facility with a confusingly similar name or color scheme as a Ramada facility.

10.     Our quality assurance inspectors will visit the Facility at any time after 10 days after the Termination Date to verify that you have performed these de-identification obligations.

(Page 12 of 17)

UPS CampusShip: Shipment Receipt

 **Shipment Receipt**

Transaction Date: 03 Sep 2013      Tracking Number:      1Z22445X0290124925

**1 Address Information**

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Young Brothers Properties Inc. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Harold G. Coker | Patrick Yeu | Patrick Yeu |
| 3311 Meadors Road | 22 Sylvan Way | 22 Sylvan Way |
| FLORENCE SC 295018118 | Parsippany NJ 07054 | Parsippany NJ 07054 |
|  | Telephone:973-753-7831 | Telephone:973-753-7831 |

**2 Package Information**

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |
| | | | | Reference # 2 - |
| | | | | Reference # 3 - |

**3 UPS Shipping Service and Shipping Options**

| | |
|---|---|
| Service: | UPS 2nd Day Air |
| Guaranteed By: | End of Day Thursday, Sep 5, 2013 |
| Shipping Fees Subtotal: | 14.53 USD |
|    Transportation | 13.15 USD |
|    Fuel Surcharge | 1.38 USD |

**4 Payment Information**

Bill Shipping Charges to:      Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

| | |
|---|---|
| Total Charged: | 14.53 USD |
| Negotiated Total: | 5.65 USD |

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

USPS # 7001 03W 0003 3365 0887

(Page 13 of 17)

UPS CampusShip: Shipment Receipt

Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 03 Sep 2013

**Tracking Number:**                    1Z22445X0291813509

## 1   Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Young Brothers Properties Inc. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Kathy Taylor | Patrick Yeu | Patrick Yeu |
| 3311 Meadors Road | 22 Sylvan Way | 22 Sylvan Way |
| FLORENCE SC 295018118 | Parsippany NJ 07054 | Parsippany NJ 07054 |
| | Telephone:973-753-7831 | Telephone:973-753-7831 |

## 2   Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-1696 |
| | | | | Reference # 2 - |
| | | | | Reference # 3 - |

## 3   UPS Shipping Service and Shipping Options

Service:                           UPS 2nd Day Air
Guaranteed By:                     End of Day Thursday, Sep 5, 2013
Shipping Fees Subtotal:            14.53 USD
    Transportation                 13.15 USD
    Fuel Surcharge                 1.38 USD

## 4   Payment Information

Bill Shipping Charges to:                    Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

Total Charged:                                                              14.53 USD
Negotiated Total:                                                           5.65 USD

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for
International services.

# EXHIBIT G



April 24, 2014

**VIA FEDERAL EXPRESS**

Young Brothers Properties, Inc.
Harold G. Coker
Edward L. Young
3339 Meadors Road
Florence, South Carolina 29501

Young Brothers Properties, Inc.
Harold G. Coker
Edward L. Young
P.O. Box 3806
Florence, SC 29502

Re:   **Demand to Cease and Desist Ongoing Infringement of Ramada Worldwide Inc.'s Trade Name and Service Marks at Facility located at 3339 Meadors Road, Florence, South Carolina 29501, Former Ramada Site No. 15122-80144-01**

Dear Mr. Coker and Mr. Young:

We represent Ramada Worldwide Inc., formerly known as Ramada Franchise Systems, Inc. ("RWI"), relative to issues relating to the guest lodging facility located at 3339 Meadors Road, Florence, South Carolina 29501 (the "Facility") operating as a Ramada®. We write to demand that you cease and desist from using the Ramada® trade name, trademarks or service marks (collectively, the "Ramada Marks®"), and/or names and marks that are confusingly similar to the Ramada Marks®.

The License Agreement between Young Brothers Properties ("Young Brothers") and RWI was terminated effective September 16, 2013. Thus, the Facility is no longer authorized to operate as a Ramada®. Pursuant to the License Agreement, the Facility was required to immediately cease using all of the Ramada Marks®. Since the termination of the License Agreement, the Facility has used the Ramada Marks® without authorization to rent rooms through, among other things, failure to remove the RWI signage and continuing to utilize the Ramada Marks® throughout the Facility. Specifically, by way of example and not limitation, signage bearing the Ramada Marks®

E-mail: Bryan.Couch@leclairryan.com
Direct Phone: (973) 491-3582
Direct Fax: (973) 491-3632

1037 Raymond Boulevard, Sixteenth Floor
Newark, New Jersey 07102
Phone: 973.491.3600 \ Fax: 973.491.3555

CALIFORNIA \ COLORADO \ CONNECTICUT \ MARYLAND \ MASSACHUSETTS \ MICHIGAN \ NEW JERSEY \ NEW YORK \ PENNSYLVANIA \ VIRGINIA \ WASHINGTON, D.C.

Young Brothers Properties, Inc.
April 24, 2014
Page 2

is located at the Facility, on nearby highways, and in the Facility's public areas, all within view of the traveling public.

As you know, RWI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services. RWI owns and has the exclusive right to license the use of the Ramada Marks®, as well as the distinctive Ramada® System, which provides hotel services to the public under the Ramada name and certain services to its franchisees, including a centralized reservation system, advertising, publicity, and training services. RWI or its predecessors have continuously used each of the Ramada Marks® since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

RWI prides itself on the quality of its services, and its reputation for quality, and the very substantial good will that has become attributable to it. RWI has spent substantial sums in development, and promotion of the good will associated with the Ramada Marks® and views them as substantial proprietary assets. The value of RWI's good will exceeds hundreds of millions of dollars.

The Facility's continued use of the Ramada Marks® constitutes an infringement of RWI's rights. This infringement is: 1) causing confusion among the public as to the affiliation of the Facility with the Ramada System; and 2) damaging contractual relations between RWI and its legitimate franchisees. This has caused dilution and disparagement of the distinctive quality of the Ramada Marks®, and lessened the capacity of the Ramada Marks® to identify and distinguish the goods and services of RWI, all in violation of Section 43(c) of the Lanham Act.

Please be advised that if the Facility does not cease and desist from (1) using all Ramada Marks®; (2) displaying signage confusingly similar to the Ramada Marks®; and (3) otherwise identifying the Facility as a Ramada® by the close of business on Monday, April 28, 2014, RWI will immediately move for injunctive relief and seek to recover damages which, under the Lanham Act, may include an award of treble damages and attorneys' fees. See 15 U.S.C. § 1114, et seq.

Finally, Young Brothers has also failed to satisfy its financial obligations to RWI. Liquidated damages in the amount $120,000.00 and outstanding Recurring Fees, which now total $135,946.25, remain due and owing under the License Agreement. Young Brothers is responsible for the payment of the past due amounts. Mr. Coker and Mr. Young are also responsible for payment of these amounts as personal guarantors of Young Brothers' obligations under the License Agreement.

Young Brothers Properties, Inc.
April 24, 2014
Page 3

We are hopeful that we can reach an amicable resolution to the current problem. However, while RWI generally is desirous of avoiding litigation, it will vigorously enforce its proprietary rights where it believes that infringement is occurring and that litigation cannot otherwise be avoided.  **This letter will be our sole attempt to resolve this matter prior to the institution of legal proceedings seeking all available relief on behalf of our client.**

The foregoing is not intended, nor shall it be construed, as a complete recitation of the facts and events concerning the above-referenced matter or the law or claims of RWI in the event filings with respect thereto, nor shall it be construed as a complete recitation of any of your rights, claims, damages or remedies, legal or equitable.  Nothing hereinabove stated or omitted shall be deemed a waiver or limitation of any right, remedy, claim, or cause of action of any kind whatsoever, all of which are hereby expressly reserved.  This letter is written without prejudice to any claims which RWI may have against you and/or related entities, including but not limited to injunctive relief and money damages, should action against you prove necessary.

Please do not hesitate to contact me if you have any questions about this matter.

Very truly yours,

BRYAN P. COUCH